UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROMFIELD-THOMPSON,

       Plaintiff,

     v.

AMERICAN UNIVERSITY OF
ANTIGUA/MANIPAL EDUCATION
AMERICAS, LLC A/K/A GCLR, LLC, AND
NBME,

       Defendants.

Civil Case No.: 19-CV-6078

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY AMERICAN UNIVERSITY OF ANTIGUA & MANIPAL EDUCATION AMERICAS, LLC

HUGHES HUBBARD & REED LLP
  Robb W. Patryk
  Amina Hassan
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendants Manipal Education Americas, LLC and American University of Antigua*

95579930

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................4

    The Parties ..........................................................................................................4

    Plaintiff Is Admitted to AUA & Provided Exam Accommodations....................5

    Plaintiff Is Unable to Pass the CCSE Despite Increasing Accommodations........6

    AUA Dismisses Plaintiff for Failure to Complete Graduation Requirements......8

    Plaintiff's Claims in this Litigation.....................................................................8

ARGUMENT ..............................................................................................................9

I.     THE COURT LACKS PERSONAL JURISDICTION OVER AUA................................9

    A.    The Court Lacks General Jurisdiction Over AUA.................................10

    B.    The Court Lacks Specific Jurisdiction Over AUA ...............................12

    C.    Plaintiff Cannot Rely on "Bulge Jurisdiction" Over AUA....................15

II.    THE COMPLAINT MUST BE DISMISSED AGAINST AUA FOR FAILURE
    TO SERVE...............................................................................................16

III.  THE COMPLAINT DOES NOT STATE A CLAIM AGAINST AUA OR MEA..........17

    A.    Rule 12(b)(6) Standard .........................................................................17

    B.    All of Plaintiff's Claims Fail Because They Do Not Meet the *Iqbal*
        "Plausibility" Standard..........................................................................18

    C.    The Complaint Does Not State Any Claim Against MEA ....................19

    D.    The Complaint Does Not State a Claim Against AUA or MEA Under the
        ADA.......................................................................................................20

    E.    The Complaint Does Not State a Breach of Contract Claim Against AUA
        or MEA ..................................................................................................20

        1.    There Was No Express Contract With AUA or Any Express or
            Implied Contract with MEA That Allegedly Was Breached...................21

i

2.      AUA Did Not Breach a University's Implied Contract With a Student ...................................................................21

3.      Plaintiff's Breach of Contract Claim is An Improperly Pleaded & Time-Barred Article 78 Challenge..............................24

F.      The Complaint Does Not State a Claim of Breach of Good Faith and Fair Dealing Against AUA or MEA...................................25

G.      The Complaint Does Not State a Claim of Intentional Infliction of Emotional Distress Against AUA and MEA ..........................27

H.      The Complaint Does Not State a Claim of Negligent Infliction of Emotional Distress Against AUA or MEA...........................28

IV.      THE COURT SHOULD DISMISS THE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS ...............................................29

A.      *Forum Non Conveniens* Standard ........................................29

1.      Plaintiff's Choice of Forum is Not Entitled to Deference. ........................30

2.      Antigua is an Adequate Alternative Forum. .............................32

3.      Public and Private Factors Favor Dismissal in Favor of Antigua.............33

B.      Other New York Courts Have Dismissed Cases involving AUA on *Forum Non Conveniens* Grounds ....................................34

CONCLUSION...........................................................................35

95579930

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aina v American Univ. of Antigua*, 161 A.D.3d 508 (2d Dept 2018)..............................34

*Alla v. American Univ. of Antigua*, 965 N.Y.S.2d 469 (1st Dept. 2013)......................34

*Alter v. Bogorician*, No. 97 CIV. 0662(MBM), 1997 WL 691332 (S.D.N.Y. Nov.
6, 1997) .................................................................................................26

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-00494 (NSR), 2019
WL 4039149 (S.D.N.Y. Aug. 27, 2019).........................................28, 29

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .........................................17

*Bent v. Mount Sinai Med. Ctr.*, 882 F. Supp. 353 (S.D.N.Y. 1995) .............20

*Bonkowski v. HP Hood LLC*, No. 15CV4956RRMPK, 2016 WL 4536868
(E.D.N.Y. Aug. 30, 2016)........................................................................12

*Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137
S.Ct. 1773 (2017)...............................................................................14, 15

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ...................11

*Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019) ........................9, 10, 13

*Brown's Bay Resort Ltd (Appellant) v Pozzoni*, Court of Appeal of the Eastern
Caribbean Supreme Court (Antigua and Barbuda) (2016) ......................33

*Campoverde v. Sony Pictures Entertainment*, No. 01 CIV. 7775(LAP), 2002 WL
31163804 (S.D.N.Y. Sept. 30, 2002).......................................................29

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603 (2d
Cir.1998) ..................................................................................................32

*Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y. 2014)..............21, 24

*Chira v. Columbia University in New York City*, 289 F.Supp.2d 477 (S.D.N.Y.
2003) .................................................................................................23, 24

*Chubb Ins. Co. of Europe S.A. v. M/V HUMBOLDT EXPRESS*, No. 02 CV 1294
(GBD), 2003 WL 22434092 (S.D.N.Y. Oct. 24, 2003)...........................32

95579930

*In re Crespo*, 775 N.Y.S.2d 319 (N.Y. Sup. Ct. 1984)...................................................17

*Daimler AG v. Bauman*, 571 U.S. 117 (2017).......................................................10, 11

*Diaz v. City Univ. of New York*, No. 13 CV 2038 PAC MHD, 2014 WL 10417871
      (S.D.N.Y. Nov. 10, 2014)....................................................................................27, 28

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) .....................................9

*Doe v. Colgate Univ.*, 760 F. App'x 22 (2d Cir. 2019) ................................................26

*Doe v. George Washington University*, 366 F. Supp.3d 1 (D.D.C. 2018)....................27

*Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173 (S.D.N.Y. 2006) .......31

*Endraske v American University of Antigua*, No. 157191/2016, 2017 WL
      1210082 (N.Y. Sup. Ct. Apr. 03, 2017)..................................................................17

*Evans v. Columbia Univ. in the City of New York*, No. 14–CV–2658 (NSR), 2015
      WL 1730097 (S.D.N.Y. Apr. 13, 2015)...............................................21, 22, 24, 25

*Feinstein v. Curtain Bluff Resort*, No. 96 CIV. 8860 (RPP), 1998 WL 458060
      (S.D.N.Y. Aug. 5, 1998) .......................................................................................33

*Garcia v American University of Antigua*, 156081/2012, Decision & Order (N.Y.
      Sup. Ct. Oct. 22, 2013) ...................................................................................34, 35

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) ........................12, 13

*Griffiths v. Beverage Marketing Corp.*, 14-CV-137, 2014 WL 1910051 (S.D.N.Y.
      May 9, 2014)....................................................................................................19, 20

*Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) .................................12

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ..........................................................34

*Gumbs v. Bd. of Educ. of the City*, 104277/12, 2013 WL 2369841 (N.Y. Sup. Ct.
      2013) ..............................................................................................................22, 23

*Hernandez v. Teachers College, Columbia University*, 16802015, 2015 WL
      13660373 (N.Y. Sup. Ct. 2015) .......................................................................23, 25

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) ...............................13, 15

*Hudson v. Artuz*, No. 95 CIV. 4768 (JSR), 1998 WL 832708 (S.D.N.Y. Nov. 30,
      1998) .....................................................................................................................9

*Illickal v. Roman*, 236 A.D.2d 247 (1st Dept 1997) ...................................................23

iv

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir.2001) ...................................................30, 33

*Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475 (3d Dept 2012)...............................................23, 24

*Keles v. Trs. of Columbia Univ. in City of N.Y.,* 903 N.Y.S.2d 18 (1st Dept 2010).....................25

*Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391 (S.D.N.Y. 2012) ..................................19

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)..........................................18, 27

*McKibben v. Credit Lyonnais*, No. 98 CIV. 3358 LAP, 1999 WL 604883
  (S.D.N.Y. Aug. 10, 1999) ....................................................................................................17

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003) .......................................16

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) ..................................30

*Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) ..........................20, 35

*Matter of Pell v. Bd. of Educ. of Union Free School Dist. No. 1 of Towns of
  Searsdale & Mamaroneck, Westchester County*, 34 NY2d 222 (1974) ...........................22, 23

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) .............................................11

*Piper Aircraft*, 454 U.S. 235 (1981) ......................................................................................32, 33

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ...............................30

*Richter v. Catholic Univ. of America*, No. 18-00583 (RJL), 2019 WL 481643
  (D.D.C. Feb. 7, 2019) ..........................................................................................................27

*Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312 (S.D.N.Y. 2007) .......................10

*Santana v. Leith*, 117 A.D.3d 711, 985 N.Y.S.2d 147 (2d Dept 2014) .......................................28

*In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017) .................................................................12

*Simon v. Smith & Nephew, Inc.*, 990 F.Supp.2d 395 (S.D.N.Y. 2013)..........................................31

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ......................10, 11

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d
  333 (2d Cir. 2018).................................................................................................................10

*SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163
  (S.D.N.Y. Mar. 30, 2019) ..........................................................................................10, 11, 13

*Stuto v. Fleishman*, 164 F.3d 820 (2d Cir.1999)..........................................................................28

95579930

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) .................................................... 13

*Matter of Susan M. v. New York Law School*, 76 N.Y.2d 241 (1990) .......................................... 25

*Torain v. Casey*, No. 16CIV2682VECJCF, 2016 WL 6780078 (S.D.N.Y. Sept. 16, 2016) .................................................................................................................. 28, 29

*Van Bourgondien-Langeveld v. Van Bourgondien*, No. 10-CV-0077 JFB WDW, 2010 WL 5464890 (E.D.N.Y. Dec. 29, 2010) ........................................................ 32

*Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880 (2d Dept. 1987) ........................ 22

*Walden v. Fiore*, 571 U.S. 277 (2014) ......................................................................................... 13

*Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) .............................................................................. 25, 26

**Statutes and Rules**

42 U.S.C. § 12131 .......................................................................................................................... 20

42 U.S.C. § 12189 .......................................................................................................................... 20

47 U.S.C. § 225 .............................................................................................................................. 20

CPLR § 7801 ................................................................................................................... 21, 24, 25

CPLR § 215 ................................................................................................................................... 27

CPLR § 302 ................................................................................................................................... 13

CPLR § 3211 ................................................................................................................................. 17

Fed. R. Civ. P. 4 ...................................................................................................................... 16, 17

Fed. R. Civ. P. 8 ............................................................................................................................... 9

Fed. R. Civ. P. 12(b)(2) ................................................................................................... 1, 4, 9, 10

Fed. R. Civ. P. 12(b)(5) ....................................................................................................... 1, 4, 16

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... *passim*

Fed. R. Civ. P. 14 .......................................................................................................................... 16

Fed. R. Civ. P. 19 .......................................................................................................................... 16

Federal Rule of Evidence 201 ...................................................................................................... 19

Americans with Disability Act of 1990, 42 U.S.C. § 12101, *et seq.* ..........................................9, 20

Disabilities and Equal Opportunities Act of 2017 (Antigua and Barbuda) ..................................33

New York State Human Rights Law ................................................................................................9

New York City Human Rights Law................................................................................................9

Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*................................................................3, 9

95579930

Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), defendants American University of Antigua ("AUA") and Manipal Education Americas, LLC ("MEA"), respectfully move for dismissal of Plaintiff's Complaint in its entirety as to both defendants.[1]

### PRELIMINARY STATEMENT

This is an action for alleged disability discrimination by a former student of a foreign medical school.  Plaintiff's claims before this Court lack any nexus to New York and are meritless.

Defendant AUA is a medical school that is located, incorporated and operated in Antigua, in the West Indies.  AUA does not have any offices in the United States.  Defendant MEA is a separate and independent New York limited liability company that provides administrative services to various educational institutions worldwide, one of which is AUA.  MEA has no substantive connection to the facts underlying Plaintiff's claims, and none of the relevant conduct took place in New York.

Plaintiff, who has dyslexia, is a former student of AUA and a resident of Washington D.C.  Since Plaintiff's admission to AUA as a transfer student in 2010, AUA consistently provided Plaintiff reasonable accommodations for all her exams.  Because Plaintiff had received an accommodation from her previous medical school under which she was allowed an extra 50 percent of the normally allotted exam time, AUA provided Plaintiff the same accommodation without requiring her to provide any supporting medical documentation.  Plaintiff passed all her exams with this accommodation – until she had to take the Comprehensive Clinical Shelf Exam

---

1.  As explained in AUA's and MEA's prior filings, Plaintiff has incorrectly sued AUA and MEA as "American University of Antigua/ Manipal Education Americas, LLC A/K/A GCLR, LLC."  AUA and MEA are two separate entities and do not know of any entity by that name.  (*See* ECF 27, 28.)

(the "CCSE"), which is subject of this litigation.  Despite several attempts and AUA's consistent efforts to accommodate Plaintiff, Plaintiff was unable to clear the CCSE.

Unlike prior subject-based tests, the CCSE is the first exam that AUA students are required to take that cuts across all subject areas in the M.D. program, and also measures their clinical skills.  AUA students have to achieve a minimum score of 79 on the CCSE to qualify to sit for the Step 2 CK ("Clinical Knowledge") of the United States Medical Licensing Examination (the "USMLE").  The CCSE has a duration of four hours and sixteen minutes, and is administered by the National Board of Medical Examiners ("NBME").  The exam is designed to be taken in one sitting without breaks.

Between 2014 and 2016, AUA allowed Plaintiff to take the CCSE five times.  Despite AUA giving Plaintiff the progressively-increasing accommodations that she asked for, Plaintiff was unable to obtain the minimum score of 79.  In 2014, Plaintiff took the CCSE three times. AUA provided Plaintiff an accommodation of time and a half, *i.e.*, over six hours for the four hours and sixteen minutes exam.  Plaintiff did not pass the CCSE on any of these attempts. Plaintiff then asked AUA for an accommodation of double time.  Notwithstanding that Plaintiff did not provide AUA all the necessary medical documentation, AUA approved Plaintiff's request.  In November 2015, Plaintiff took the CCSE with double time, or more than eight and a half hours.  Plaintiff still could not pass the exam.  Plaintiff then asked AUA to permit her to take the CCSE over two days or provide her additional time to take breaks.  Although Plaintiff did not provide any medical support for her request, AUA worked diligently with NBME and others to try to find a site that would allow Plaintiff to take the CCSE over two days, but to no avail. Instead, AUA arranged for Plaintiff to have more than 2.5 times the regular amount of time for the exam, *i.e.*, more than ten hours and forty minutes.  Although, because of the design of the

exam, the clock would not stop running, Plaintiff would effectively have twice the regular amount of time to take the exam, and more than two hours to take breaks as she saw fit. During this time, Plaintiff could, for instance, get up, walk around, go to the restroom, or use more time for the test itself. On July 1, 2016, Plaintiff took the CCSE for the fifth time. Plaintiff again failed to obtain the minimum score of 79.

During this time, AUA also re-admitted Plaintiff to the M.D. program after Plaintiff had gone on an unauthorized leave of absence and extended Plaintiff's time to graduate.

Ultimately, in July 2016, after multiple attempts and granting progressively-increasing accommodations to assist Plaintiff, AUA's Promotions Committee – based in Antigua – dismissed Plaintiff from the M.D. program for failure to satisfy her graduation requirements. Plaintiff appealed the decision, and AUA's Appeals Committee – also based in Antigua – affirmed.

Plaintiff subsequently filed a complaint against AUA with the U.S. Department of Education, Office of Civil Rights ("OCR"). OCR is responsible for enforcing the anti-disability discrimination provisions of the Rehabilitation Act. Plaintiff alleged in her complaint that AUA had failed to provide her "reasonable accommodations" for the CCSE. After a thorough investigation that included interviewing Plaintiff and reviewing documentation provided by both Plaintiff and AUA, OCR disagreed. OCR ruled in AUA's favor finding that Plaintiff had failed to show that AUA "discriminated against the complainant, on the basis of her disability." OCR also determined that AUA dismissed Plaintiff because Plaintiff had failed to satisfy her re-admission requirements, not, as Plaintiff alleged, because AUA had retaliated against her. Despite the OCR's clear determination, Plaintiff now has filed the instant Complaint, naming AUA, MEA and the NBME. The Complaint should be dismissed.

95579930

All of Plaintiff's claims against AUA and MEA are based on the core allegations that AUA failed to provide Plaintiff "reasonable accommodations" for the CCSE and that Plaintiff's dismissal from AUA was improper.  As set forth more fully below, Plaintiff's claims should be dismissed for the following reasons:  (1) the Court lacks both general and specific jurisdiction over AUA because AUA is neither headquartered nor otherwise present in New York, and the Plaintiff's claims do not arise from any conduct which is alleged to have occurred in New York; (2) Plaintiff also has failed to serve AUA with process and has made no attempt to do so; (3) with regard to MEA, the Complaint contains not a single allegation of purported wrongdoing by MEA giving rise to Plaintiff's alleged claims – indeed, MEA appears to have been named in this action solely in a misguided effort to improperly obtain jurisdiction over AUA and a New York forum; (4) Plaintiff's claims otherwise fail to state a claim for relief against AUA and MEA; and (5) alternatively, this case, which involves conduct and decisions made entirely in Antigua, should be dismissed on *forum non conveniens* grounds in favor of Antigua.

## STATEMENT OF FACTS

**The Parties**[2]

AUA is a medical school located and operated in Antigua.  (Complaint ¶¶ 1, 9.)  It is chartered and incorporated under the laws of Antigua and Barbuda.  (December 8, 2019 Declaration of Vernon Solomon, Vice President for Administrative and Community Affairs at AUA ("Solomon Decl.") ¶ 3.)  It has no offices in New York or the United States.  (*Id.* ¶¶ 3-4.) AUA is not registered in New York State, nor does it have an agent designated to accept service

---

2.   Where this motion to dismiss relies on allegations in the Complaint, those are accepted strictly for purposes of this motion.  As noted elsewhere in this memorandum, for their Rule 12(b)(6) motion to dismiss, AUA and MEA are relying only on the allegations contained in Plaintiff's Complaint or other documents outside the pleadings of which the Court may take judicial notice.  The Court may consider documents outside the pleadings on motions made pursuant to Rules 12(b)(2) & (b)(5).  (*See infra* at 10, 16.)

95579930

of process in New York.  (*See* December 9, 2019 Declaration of Amina Hassan (Hassan Decl.) ¶ 3, Ex. 1.)  AUA contracts with certain vendors and service-providers based in the United States to provide it specific services.  (Solomon Decl. ¶ 5.)

MEA is a separate and independent New York limited liability company that provides back office and administrative services, such as accounting, IT, finance and registrarial services, to various institutions of higher education internationally.  (December 6, 2019 Declaration of Leonard Sclafani, Senior Vice President and General Counsel at MEA ("Sclafani Decl.") ¶ 3.) Under a services contract, MEA provides similar services to AUA.  (*Id*.)  MEA does not make substantive, academic decisions regarding AUA's students (*id*.), and the Complaint does not allege otherwise.

Plaintiff is a resident of Washington D.C. and a former student of AUA.  (Complaint ¶¶ 8-9.)  NBME, the other defendant named in this case, is a non-profit organization with its principal office located in Philadelphia, Pennsylvania.  (*Id*. ¶ 9.)

### Plaintiff Is Admitted to AUA & Provided Exam Accommodations

Students attending AUA complete their first two years in Antigua and thereafter participate in clinical rotations in various hospitals in the United States, with which AUA has affiliations.  (Complaint ¶ 9.)  AUA requires that its students take certain "shelf" exams at the end of core clinical rotations in order to graduate.  (*Id*. ¶ 21.)  This includes the CCSE or Comprehensive Clinical Shelf Examination (*id*.), which is the subject of this litigation.

In 2010, AUA accepted Plaintiff as a fifth semester transfer student from another foreign medical school.  (*Id*. ¶¶ 8, 16.)  At the time of her admission, Plaintiff was a resident of Washington D.C., as she continued to be for her entire tenure at AUA.  (*Id*. ¶ 8.)

In advance of taking her first shelf exam at AUA, Plaintiff requested an accommodation on the grounds of her dyslexia.  (*Id*. ¶¶ 1, 17.)  AUA had no personnel in the United States to

95579930

handle accommodation requests and informed Plaintiff accordingly.  (*See id*. ¶ 17.)  Rather, all of the decisions regarding whether and what accommodations to provide students are made by AUA's clinical psychologist in Antigua.  Accordingly, AUA directed Plaintiff to Dr. James Rice, Chairman of University Counseling Services at AUA, who is based in Antigua.  (*Id*.)  Dr. Rice granted Plaintiff an accommodation of time and a half for the shelf exam, which Plaintiff sat and passed in 2010.  (*Id*.)  AUA similarly granted Plaintiff an accommodation of time and a half for her Family Medicine and OB/GYN shelf exams.  (*Id*. ¶ 23.)  Plaintiff passed these as well.  (*Id*.)

**Plaintiff Is Unable to Pass the CCSE Despite Increasing Accommodations**

In 2014, Plaintiff took the CCSE three separate times – each time in Virginia.  (*Id*. ¶¶ 14, 29.)  Each time, AUA provided Plaintiff an accommodation of time and a half – the same accommodation that had been provided to Plaintiff for previous exams.  (*Id*. ¶ 29.)  Plaintiff did not pass the CCSE on any of these attempts.  (*Id*.)

On June 11, 2015, AUA administratively withdrew Plaintiff from the M.D. program.  (*Id*. ¶ 25.)  AUA explained to Plaintiff that a student who is inactive, *i.e.*, not engaged in an active clinical rotation for more than six months, is subject to administrative withdrawal.  (*Id*.)  Plaintiff asked for re-admission on the grounds that she had been inactive because of her pregnancy and the birth of her second child.  (Complaint ¶¶ 25-26.)  AUA readmitted Plaintiff on June 17, 2015. (*Id*.)  AUA conditioned Plaintiff's readmission on completing the remaining requirements for graduation, including any remaining clinical rotations and passing the CCSE, by March 31, 2016.  (*Id*. ¶ 26.)[3]  Plaintiff was required to pass the CCSE with a minimum score of 79 to qualify to take the USMLE Step 2 CK exam.  (*Id*. ¶ 27)  This is the same minimum score that all

---

3.  AUA requires its students to complete their graduation requirements in a timely fashion.  For example, AUA requires students to complete the M.D. program within 6.75 years.  (*See* Hassan Decl., Ex. 2 (excerpts of AUA Student Handbook).  By the time of her withdrawal, Plaintiff already was in the seventh year of her M.D. program, since she had joined AUA as a fifth semester (3rd year) transfer student.  (*See* Complaint ¶ 16.)

95579930

AUA students have to achieve to qualify for the USMLE Step 2.  (Solomon Decl. ¶ 7; *see also* Hassan Decl., Ex. 2 (excerpts of AUA Student Handbook).)

In advance of taking the CCSE for a fourth time, Plaintiff wrote to Dr. Rice asking for an accommodation of double the regular amount of time provided for the exam.  (Complaint ¶ 31.) Dr. Rice granted the accommodation after receiving a letter from Plaintiff's clinical psychologist. (*Id*. ¶¶ 31-32.)[4]  On November 25, 2015, Plaintiff took the CCSE, for a fourth time, again in Virginia, with an accommodation of double time.  (*Id*. ¶¶ 14, 32.)  Plaintiff again failed to obtain a minimum score of 79.  (*Id*. ¶ 33.)

Plaintiff thereafter asked AUA whether AUA would be willing to find a testing site where Plaintiff could take the exam over a 2-day period.  (*Id*. ¶ 34.)  Dr. Juli Valtschanoff, AUA's Chief Proctor in Antigua, conducted the search, but was unable to find a site that could accommodate the administration of the CCSE over a 2-day period.  (*See id*. ¶ 36.)  Dr. Valtschanoff informed Plaintiff accordingly.[5]  (*Id*.)  Instead, AUA granted Plaintiff an accommodation of more than two times, so that in addition to having double the regular amount of time for the exam, Plaintiff also could have more than one hour to take breaks.  (*See id*. ¶¶ 38- 39.)  AUA also extended the deadline for Plaintiff to complete her graduation requirements from March 31, 2016 to July 31, 2016.  (*Id*. ¶ 37.)

---

4.  Dr. Rice granted Plaintiff's request even though he did not receive, at least at that time, clinical assessments from Plaintiff's psychologist supporting the double-time accommodation request.

5.  Plaintiff has alleged in the Complaint that Dr. Valtschanoff "advised [her] in an email to 'take the exam like any other student.'"  (Complaint ¶ 36.)  Plaintiff has misrepresented Dr. Valtschanoff's email, which reads in full as follow:  "Debbie Ann, All our attempts to get you a 2-day CCSE accommodation at the University of Maryland and at Hopkins have failed.  I believe that your only remaining option it to take the exam in a single day at a Prometric center, *like our other students with accommodations*.  Please let me know if you agree, so we can schedule you as soon as possible."  (Hassan Decl., Ex. 3 (emphasis added).)

On July 1, 2016, Plaintiff took the CCSE for a fifth time, again in Virginia, with an accommodation of more than double time.  (*Id.* ¶ 39.)  Plaintiff again could not obtain a passing score.  (*Id.* ¶ 43.)

### AUA Dismisses Plaintiff for Failure to Complete Graduation Requirements

After multiple attempts to accommodate Plaintiff's testing needs, in July 2016, AUA dismissed Plaintiff from the M.D. program for failure to complete graduation requirements by the July 31, 2016 deadline.  (*See id.* ¶ 44.)  This decision was made by AUA's Promotions Committee, which makes all academic decisions regarding AUA students, and, like other academic functions of the university, is based in Antigua.  (Solomon Decl. ¶¶ 8-9; *see also* Complaint ¶ 44 (Plaintiff was informed that she would be receiving a formal letter of dismissal from the "[P]romotions Committee").)  On July 15, 2016, Plaintiff appealed the Promotions Committee's decision to dismiss her to AUA's Appeals Committee, headed by Dr. Rice (Complaint ¶ 46), and also based in Antigua.  (Solomon Decl. ¶¶ 8-9.)  The Appeals Committee upheld the dismissal.  (Complaint ¶ 46.)

Plaintiff subsequently filed a complaint with the Department of Education, Office of Civil Rights ("OCR").  (Complaint ¶ 15.)  OCR ruled against Plaintiff (*id.*), in a detailed decision based on information provided by both Plaintiff and AUA (*see* Hassan Decl., Ex. 6).[6]

### Plaintiff's Claims in this Litigation

Plaintiff's Complaint alleges five causes of action:  (1) Violation of the Rehabilitation Act, against AUA; (2) Violation of the Americans with Disability Act, against AUA, "its agents" and National Board of Medical Examiners ("NBME"); (3) Breach of Contract, against AUA and

---

6.  Although Plaintiff has alleged in the Complaint that in 2016 she appealed the OCR's determination (Complaint ¶ 15), AUA is aware of no such appeal.

8

"its agents"; (4) Breach of the Duty of Good Faith and Fair Dealing, against AUA and "its agents"; and (5) Intentional/Negligent Infliction of Emotional Distress, against AUA and "its agents."[7]  All the claims are based on the principal allegations that AUA failed to provide her reasonable accommodations for the CCSE and that her dismissal from AUA was a breach of contract and/or otherwise improper.  On November 11, 2019, co-defendant NBME moved to dismiss the Complaint as to NBME.  (*See* ECF. 14-17, "NBME's Motion".)[8]

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER AUA

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted).  The plaintiff must make at least "a *prima facie* showing by its pleadings and affidavits that jurisdiction exists.'" *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) (citations omitted).[9] Although the court must view the facts in the light most favorable to plaintiff, the plaintiff may not rely on "conclusory statements without supporting facts."  *Id* at 430.  Nor is the court required to credit all allegations regardless of their support.  *SPV OSUS Ltd. v. UBS AG*, 114 F.

---

7.   Although, the Complaint states in the introduction that Plaintiff is alleging claims against AUA and MEA under the "New York State and City Human Rights Act" (Complaint ¶¶ 1, 6), the Complaint does not in fact assert any cause of action under either statute (*see id*. ¶¶ 51-78).  Insofar as Plaintiff is purporting to allege claims against AUA and MEA under these statutes, those must be dismissed because the Complaint's cursory reference to them does not satisfy the notice requirements of Rule 8.  *See Hudson v. Artuz*, No. 95 CIV. 4768 (JSR), 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (the purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.") (citation and quotation marks omitted).

8.   As explained in defendants' November 25, 2019 Joint Letter to the Court (ECF 32), in order to reduce the burden of repetitive filings on the Court, AUA and MEA have incorporated here by reference any arguments that NBME already has made in its pending motion that may be common to AUA and/or MEA.

9.   Where a court decides to hold an evidentiary hearing to resolve a Rule 12(b)(2) motion, the plaintiff must prove jurisdiction by a preponderance of evidence.  *See SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163, at *4 (S.D.N.Y. Mar. 30, 2019).

95579930

Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ("resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support") (citation and quotation marks omitted).  On a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings.  *See Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007).

Generally, a New York court may exercise either general or specific jurisdiction over a defendant.  *See Brown*, 394 F. Supp. 3d at 430.  In either case, in order to exercise personal jurisdiction over a foreign or non-domiciliary defendant, (1) the state's long-arm statute must permit the exercise of jurisdiction; and (2) exercise of personal jurisdiction over the defendant must comport with constitutional due process.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal citation omitted).  Here, Plaintiff cannot show that the Court has either general or specific jurisdiction over AUA.

### A.    The Court Lacks General Jurisdiction Over AUA

General or all-purpose jurisdiction permits a court to hear any and all claims against a defendant.  *See Brown*, 394 F. Supp. 3d at 430-31.  Under the Supreme Court's decision in *Daimler AG v. Bauman*, a corporation is subject to general jurisdiction, compatible with constitutional due process, only in its place of incorporation, its principal place of business or in an "exceptional case," "where the corporation's 'contacts with another forum are so substantial as to render it 'at home' in that state."  571 U.S. 117, 139 n.19 (2014); *Sonera Holding B.V.*, 750 F.3d at 223.  "Exceptional case" jurisdiction exists in only very narrow circumstances.  As the Second Circuit has noted, the only example of an "exceptional case" referred to by the Supreme Court in *Daimler* is *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which a foreign company's principal place of business was determined to be Ohio because its headquarters operations had temporarily moved there from the Philippines due to wartime

10

Japanese occupation.  *See Daimler*, 517 U.S. at 129-30; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016).

Here, the Court's exercise of general jurisdiction over AUA would be incompatible with constitutional due process.  AUA is incorporated under the laws of Antigua and its principal place of business is in Antigua.  (*See* Complaint ¶ 9 ("AUA is an offshore medical school headquartered in the country of Antigua."); *see also* Solomon Decl. ¶ 3.)  Nor, as set forth below, does the Complaint allege any facts from which it may reasonably be inferred that this is an "exceptional case" in which general jurisdiction may nonetheless be exercised over AUA.

The Complaint alleges that AUA "regularly transacted business in New York State." (Complaint ¶ 13.)  This bald assertion is insufficient to warrant exercise of general jurisdiction over a non-domiciliary defendant.  *See Daimler*, 517 U.S. at 137-38 ("[S]ubstantial, continuous, and systemic course of business," in and of itself, is insufficient to render a corporation "at home" in a state."); *SPV Osus Ltd. v. Unicredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163 (S.D. N.Y., Mar. 30, 2019) (no general jurisdiction where plaintiff alleged that foreign defendants "and/or their agents regularly transacted business in New York.").

The Complaint also alleges, without support, that the Court has jurisdiction over AUA because AUA "has its principal United States office in New York City."  (Complaint ¶ 12.) Elsewhere, the Complaint alleges that AUA has "corporate offices" or an "administrative office" in New York.  (*Id*. ¶¶ 1, 14.)  These allegations likewise cannot confer general jurisdiction over AUA.  First, Plaintiff's assertions are both conclusory and demonstrably incorrect (when viewed in light of government documents of which the Court may take judicial notice).  AUA has no offices in New York.  (*See* Solomon Decl. ¶ 4; Hassan Decl., Ex. 1 (screenshots from the New York Department of State website showing that AUA is not registered as a New York business

entity).)  MEA has offices in New York, but again, MEA is a separate and independent company.

Second, even if the Court were to treat MEA's offices in New York as an AUA office for

purposes of this motion, "exceptional case" general jurisdiction still could not be exercised over

AUA.  The Second Circuit and other New York courts have found no general jurisdiction based

on defendant having an office in New York (which, as here, is not defendant's principal place of

business) and involving significantly more connections with New York than those alleged here.

*See, e.g.*, *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) (no general jurisdiction

over foreign bank that had four branch offices in New York); *Bonkowski v. HP Hood LLC*, No.

15CV4956RRMPK, 2016 WL 4536868, at *2 (E.D.N.Y. Aug. 30, 2016) (no general jurisdiction

over a Delaware company with its principal place of business in Minnesota, although it had

manufacturing plants and an "administrative office" in New York); *see also In re Sargeant*, 278

F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (that a foreign entity had its "primary business offices" in

New York, could not warrant the exercise of general jurisdiction over it).

    For the foregoing reasons, this Court should not exercise general jurisdiction over AUA.

### B.    The Court Lacks Specific Jurisdiction Over AUA

    Nor does the Court have specific jurisdiction over AUA.  Specific jurisdiction is claim-

specific, *i.e.*, it "is confined to adjudication of issues deriving from, or connected with, the very

controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S.

915, 919 (2011).  Plaintiff "must establish the court's jurisdiction with respect to each claim

asserted."  *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  The Court can

exercise specific jurisdiction over AUA for a particular claim only if doing so complies with the

New York long-arm statute and constitutional due process.  *See Brown*, 394 F. Supp. 3d at 434.

    *New York Long-Arm Statute*:  A non-domiciliary defendant may be subject to personal

jurisdiction under New York's long arm statute where the defendant, directly or through an

95579930

agent, engages in one of the following acts <u>and</u> the asserted claim "arise[s] out" of that act:  (1)

transacts business within the state or contracts anywhere to supply goods or services in the state;

(2) commits a tortious act within the state; (3) commits a tortious act without the state causing

injury to person or property within the state; or (4) owns, uses or possesses real property within

the state.  *See* CPLR § 302(a).  To satisfy the "arise from" requirement, the plaintiff must show

that there was an "articulable nexus" and "substantial relationship" between the transaction and

the claim asserted.  *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016).

*Constitutional Due Process*:  To comport with constitutional due process "the

defendant's suit-related conduct must create a substantial connection with the forum." *Walden v.*

*Fiore*, 571 U.S. 277, 284 (2014).  "This turns on not just the degree of contacts, but whether a

sufficient causal relationship exists between the contacts and the suit-related conduct."  *SPV*

*Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163, at *6 (S.D.N.Y.

Mar. 30, 2019).  Courts require "either proximate or but-for causation" depending on the extent

of "the relationship among the defendant, the forum, and the litigation."  *Id*. (citing *SPV Osus*

*Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)).

Here, the Complaint does not identify the specific provision of the New York long-arm

statute upon which Plaintiff relies.  Regardless, none of Plaintiff's claims "arises from" or has a

"substantial" and "causal" connection with New York.  Thus, as set forth in more detail below,

the Complaint does not satisfy the requirements of New York's long-arm statute or constitutional

due process for the exercise of specific jurisdiction over AUA for any of Plaintiff's claims.

First, the Complaint alleges that AUA did not provide Plaintiff "reasonable

accommodations" to take the CCSE and dismissed her from the M.D. program before she

graduated.  The decisions regarding whether and what accommodations to provide Plaintiff were

taken by AUA in Antigua, in particular by Dr. Rice (Complaint ¶¶ 17, 30-31); Plaintiff sat the CCSE, five times, in Virginia (*id*. ¶¶ 14, 29); and the decision to dismiss Plaintiff for failure to meet her academic requirements was taken in Antigua (Solomon Decl. ¶ 9).  Thus, none of the alleged actions or inactions that gave rise to Plaintiff's claims for failure to accommodate and improper dismissal took place in New York.

Second, the New York-specific conduct that the Complaint alleges is insufficient to confer specific jurisdiction over AUA.  Even accepting the following allegations as true for the purposes of this motion – that the "decision to admit Plaintiff to medical school flowed through AUA's New York's administrative office;"[10] that in 2010, Plaintiff attended an orientation sponsored by AUA in New York City; that Plaintiff completed her first clinical course work at AUA in New York; and that she had "interactions" with "personnel from AUA's New York office" regarding "clinical selection sites" (Complaint ¶ 14) – none of these alleged connections with New York have anything to do with the substance of Plaintiff's claims that AUA did not provide her reasonable accommodations for the CCSE exams or that AUA improperly dismissed Plaintiff before she could graduate (*see id*. ¶¶ 51-78).  Unrelated contacts with the forum state cannot create specific jurisdiction.  *See Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137 S.Ct. 1773, 1782 (2017) (out-of-state defendant's research in the forum state that was unrelated to the claims, was not relevant to the specific jurisdiction analysis).

Third, the Complaint also alleges that, "the decision to terminate Plaintiff from the school came from AUA's New York office."  (Complaint ¶ 14.)  This allegation appears to relate to a later allegation in the Complaint that Kristal Booth, Registrar for AUA, informed Plaintiff by email that Plaintiff had been dismissed from AUA and that Plaintiff will be receiving a formal

---

10.  As noted above, AUA does not have an office in New York.  (*See supra* at 11.)

letter of dismissal from AUA's Promotions Committee.  (*Id.* ¶ 44.)  Even assuming that this email correspondence was sent from New York – which the Complaint does not in fact allege – the mere communication from New York, of a substantive decision made by AUA officials in Antigua, does not confer specific jurisdiction over AUA in New York for that decision.  *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016) (communications with New York that were incidental consequences of the foreign contract were insufficient to confer specific jurisdiction over foreign defendants for breach of that contract).

Finally, the Complaint alleges, "[t]hat the Court may exercise jurisdiction over AUA … because defendant, AUA, has its principal United States office in New York City" and that "AUA and its agents … regularly transact business in New York."  (Complaint ¶¶ 12, 13.)  Even assuming that these allegations are true, which they demonstrably are not, generalized contacts with the forum state cannot confer claim-specific jurisdiction.  *See Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty*., 137 S.Ct. 1773, 1781 (2017) (a defendant's "general connections with the forum are not enough" to confer specific jurisdiction).

For the foregoing reasons, this Court should not exercise specific jurisdiction over AUA for any of Plaintiff's claims.

### C.   Plaintiff Cannot Rely on "Bulge Jurisdiction" Over AUA

The Complaint also appears to rely on Rule 4(k)(1)(B) as grounds for asserting personal jurisdiction over AUA (and the other defendants).  However, as more fully explained in the NBME Motion (ECF 16 at 13), and incorporated here by reference, Rule 4(k)(1)(B), or "bulge jurisdiction," may be used to establish personal jurisdiction only over parties joined under Rules 14 and 19 – not over an original defendant such as AUA or NBME.  Therefore, Plaintiff cannot establish personal jurisdiction over AUA pursuant to Rule 4(k)(1)(B).

## II.     THE COMPLAINT MUST BE DISMISSED AGAINST AUA FOR FAILURE TO SERVE

Plaintiff's claims against AUA should be dismissed, pursuant to Rule 12(b)(5), for the additional and independent reason that Plaintiff did not serve process on AUA.  When a defendant challenges the sufficiency of service of process, it is the plaintiff's burden of proof to show the adequacy of service.  *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citation omitted).  On a Rule 12(b)(5) motion, "a Court must look to matters outside the complaint to determine whether it has jurisdiction."  *See id.* (citation omitted).

Here, Plaintiff never served process on AUA.  (Solomon Decl. ¶ 6.)  AUA does not have offices in New York.  (*Id*. ¶ 4.)  Nor does it have a designated agent to accept service of process in New York.  (*Id.* ¶ 6.)  Both facts easily can be ascertained on the New York Department of State website, which shows that AUA has no registered offices or agents to accept service of process in this state.  (*See* Hassan Decl. ¶ 3, Ex. 1.)  Thus, Plaintiff was required to serve AUA, a foreign entity, as prescribed under Rules 4(h)(2) and 4(f).[11]  Plaintiff did not do so.  In fact, Plaintiff did not serve AUA at all.

Rather, as Plaintiff's October 8, 2019 Service of Proof shows, Plaintiff served the Summons and Complaint on Anita O'Brien.  (*See* ECF 11 (Proof of Service).)  Ms. O'Brien is an administrative assistant at MEA and works in MEA's New York offices.  (Sclafani Decl. ¶ 4.)  Ms. O'Brien is not authorized to accept service on behalf of AUA, which is one of MEA's

---

11. Rule 4(h)(2) states:  "Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served … at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Rule 4(f) provides that an entity may be served "at a place not within any judicial district of the United States" by:  (1) any internationally agreed means of service that is reasonably calculated to give notice; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice; or (3) ) by other means not prohibited by international agreement, as the court orders.  Fed. R. Civ. P. 4(f).

95579930

clients.  (*Id*.; Solomon Decl. ¶¶ 5-6.)  Plaintiff cannot satisfy service on AUA by serving MEA, a

separate and distinct entity.  *See McKibben v. Credit Lyonnais*, No. 98 CIV. 3358 LAP, 1999

WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("service of process on one corporation does not

confer jurisdiction over another, 'even where one corporation may wholly own another, or where

they may share the same principals.'") (quoting *In re Crespo*, 775 N.Y.S.2d 319, 323 (N.Y. Sup.

Ct. 1984)).  Indeed, in another case by a former student against AUA, the New York Supreme

Court dismissed the case for lack of personal jurisdiction under CPLR § 3211(a)(8), because the

plaintiff's process server went to "a third party's [MEA's] office" and left the papers with an

MEA employee who was not authorized to accept service for her employer or the defendant.  *See*

*Endraske v American University of Antigua*, No. 157191/2016, 2017 WL 1210082, at *4 (N.Y.

Sup. Ct. Apr. 03, 2017).  In dismissing the case, the court noted that MEA was "not authorized to

accept service for defendant" and that "Defendant is not even located in New York."  *Id*.

Similarly, here, the Court should dismiss the Complaint as to AUA for Plaintiff's failure to serve

process on AUA.

## III.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST AUA OR MEA

### A.    Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim, the Complaint must "state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  In assessing the sufficiency of a claim, the court must accept as true all of the allegations

made, except the court should not accept as true legal conclusions and threadbare recitals of the

elements of a cause of action that are supported by mere conclusory statements.  *See L-7*

*Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  Crediting only well-pleaded

factual allegations, the court must determine whether they plausibly give rise to an entitlement to

relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plausibility depends on a "host of

considerations," including, "the full factual picture presented by the complaint, the particular

cause of action and its elements, and the existence of alternative explanations so obvious that

they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc.*, 647 F.3d at 430.  Although

plausibility is not the same as a "probability requirement," it asks for more than "a sheer

possibility" or "conceivability" that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556

U.S. at 678.

> **B.      All of Plaintiff's Claims Fail Because They Do Not Meet the *Iqbal*
>           "Plausibility" Standard**

Here, all of Plaintiff's claims against AUA and MEA should be dismissed because they

are facially implausible.  The allegations in the Complaint concede that over the course of almost

two years, AUA provided Plaintiff five opportunities to take the CCSE, with progressively-

increasing accommodations; that Plaintiff was unable to pass the exam; and finally, when AUA

was unable to provide further accommodations and Plaintiff was running up against her deadline

to graduate, that AUA finally dismissed Plaintiff from their medical program.  (*See* Complaint ¶¶

29, 32, 38-40, 44-45.)  Under these circumstances, the Complaint fails to assert any claims that

meet the "plausibility" requirement.  *See Ashcroft v. Iqbal*, 556 U.S. at 683 (to survive a motion

to dismiss, a plaintiff must "nudge[ ] their claims across the line from conceivable to plausible.")

(internal citation omitted).[12]

---

12. Indeed, Plaintiff's similar claims – that AUA failed to provide her reasonable accommodations for the CCSE
    and then retaliated against her – were rejected in 2016 by the OCR after the OCR's independent investigation.
    (*See* Hassan Decl., Ex. 6 (OCR Determination).)  The Court does not need to rely on the OCR Determination to
    decide this motion to dismiss.  Regardless, pursuant to FRE 201, the Court may take judicial notice of the OCR
    Determination as the record of a public agency.  *See* FRE 201(b)(2) ("The court may judicially notice a fact that
    is not subject to reasonable dispute because it can be accurately and readily determined from sources whose
    accuracy cannot reasonably be questioned."); *see also, e.g.*, *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d
    391, 394 (S.D.N.Y. 2012) (taking judicial notice on a Rule 12(b)(6) motion of plaintiff's EEOC and New York
    State Division of Human Rights' charges and determinations).

95579930

As set forth below, Plaintiff's claims also fail to state a claim for additional, specific reasons.

### C.     The Complaint Does Not State Any Claim Against MEA

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.  Here the Complaint does not allege any misconduct by MEA. Indeed, the two allegations in the Complaint that specifically reference MEA – "Manipal Education Americas, LLC is listed on AUA's website as an entity to be contacted for any questions concerning the University, making this entity in effect its agent" and "Plaintiff brings this action against American University of Antigua and its agent Manipal Education Americas, LLC" (Complaint ¶¶ 6, 10) – do not attribute any misconduct to MEA.[13]  Therefore, the Complaint must be dismissed in its entirety as to MEA.  *See Griffiths v. Beverage Marketing Corp.*, 14-CV-137, 2014 WL 1910051, at *3 (S.D.N.Y. May 9, 2014) (granting motion to dismiss for failure to state a cause of action against the non-BMC defendants because Plaintiff "d[id] not allege any wrongful conduct" by them); *see also Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) (in an action filed against AUA and MEA, dismissing the complaint against MEA because MEA's administrative services for AUA had nothing to do with the substance of the action).

---

13.  The Complaint also makes a few vague and conclusory references to AUA's unnamed "agent" or "agents." (*See* Complaint ¶ 12 ("This Court may exercise jurisdiction over AUA and its agent"); ¶ 13 ("This Court has personal jurisdiction over AUA and its agents … AUA and its agents and NBME regularly transact business in New York State"); SECOND to FIFTH CLAIM FOR RELIEF, indicates that it is being asserted against "AUA its agents and NBME"); REQUEST FOR RELIEF ("Declaratory relief, including but not limited to a declaration that AUA, its agents and NBME discriminated against Plaintiff by failing to grant reasonable accommodation under ADA.")).  None of these attributes any specific misconduct to MEA either.

19

### D. The Complaint Does Not State a Claim Against AUA or MEA Under the ADA

The Complaint does not identify the specific statutory grounds for Plaintiff's claim against AUA and MEA under the ADA (the "ADA Claim").  However, Plaintiff may be attempting to assert her ADA Claim under Title III.[14]  Plaintiff's core allegation is that AUA violated the ADA because the accommodation it provided for her last CCSE attempt (more than double the regular amount of time, including over an hour of breaks) was not reasonable. (Complaint ¶¶ 62, 65.)  As set forth in NBME's Motion (ECF 16, III.B), and incorporated here, CCSE is not the type of exam covered by the ADA.  *See* 42 U.S.C. §12189.  Therefore, the ADA Claim, insofar as it relates to the accommodations that AUA provided to Plaintiff for the CCSE exams, must be dismissed with prejudice for that reason.[15]

### E. The Complaint Does Not State a Breach of Contract Claim Against AUA or MEA

Plaintiff's purported breach of contract claim against AUA and MEA also is not actionable.  The reasons are many:  (1) there is no actionable breach of an express contract because the Complaint does not allege the existence of such a contract between Plaintiff and AUA or MEA; (2) there is no actionable breach of AUA's alleged implied contract with Plaintiff to award her a degree if she complies with all the terms and course requirements prescribed by

---

14. Insofar as Plaintiff has alleged a claim under Title I of the ADA, such claim is barred for failure to exhaust administrative remedies, to wit, filing an administrative claim with the Equal Employment Opportunity Commission and doing so within the requisite time-period.  *See Bent v. Mount Sinai Med. Ctr.*, 882 F. Supp. 353, 355 (S.D.N.Y. 1995).  Titles II and IV of the ADA do not apply to AUA and MEA because they apply to states and local governments and telecommunications companies, respectively.  *See* 42 U.S.C. § 12131(1), 47 U.S.C. § 225.

15.  Even assuming that CCSE is the type of exam covered by the ADA, the Complaint does not state a claim under the ADA against MEA because MEA did not offer the CCSE, AUA did.  *See* 42 U.S.C. § 12189 (applying the ADA to "[a]ny person that offers" certain examinations or courses).  Indeed, the Complaint does not even allege that MEA is covered by the ADA for the purposes of this action.  (*See* Complaint ¶ 65 (stating that "[b]oth AUA and NBME are covered by the ADA").)  Nor does it assert any violative conduct by MEA with regard to the ADA Claim.  (*See id.* ¶¶ 60-65; *see also supra* at 19.)

the university because Plaintiff concedes that she did not complete her graduation requirements; (3) Plaintiff has not alleged the existence of any other enforceable implied agreement with AUA or MEA; and (4) Plaintiff's breach of contract claim is an improperly pleaded and time-barred Article 78 challenge, and should be dismissed with prejudice on that independent ground.

        1.      <u>There Was No Express Contract With AUA or Any Express or Implied Contract with MEA That Allegedly Was Breached</u>

Under New York law, the elements of a claim for breach of contract are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014). Here, the Complaint does not allege the existence of an express agreement between Plaintiff and AUA or MEA, therefore, there can be no breach of express contract. Nor does the Complaint allege the existence of an implied contract between Plaintiff and MEA, thus also warranting dismissal of a breach of implied contract claim against MEA.[16]

        2.      <u>AUA Did Not Breach a University's Implied Contract With a Student</u>

"[A]n implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him [or her] a degree." *Evans v. Columbia Univ. in the City of New York*, No. 14-CV-2658 NSR, 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (citations omitted). "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student, become a part of this contract." *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (2d Dept. 1987).

---

16. The implied contract between a university and a student (discussed below) does not apply to MEA because MEA is not a university and Plaintiff was not a student of MEA.

Here, the Complaint alleges that AUA breached its contract by dismissing her "for failure to complete all of the course requirements within a fixed time." (Complaint ¶ 68.) This cannot constitute a breach of the implied contract between a student and a university. As Plaintiff concedes, she did not complete all of the course requirements within the time fixed by AUA. (*See id.* ¶¶ 26-27, 36, 43.) Therefore, Plaintiff was not entitled to graduate. *See Evans*, 2015 WL 1730097, at *4 (implicit in the implied contract between a student and university is the requirement that "the student must fulfill [her] end of the bargain by satisfying the university's academic requirements and complying with its procedures.").

Plaintiff attempts to escape this conclusion by alleging that the "long wait for clinical sites was the fault of AUA, not Plaintiff, and therefore, no arbitrary settling of deadlines to complete course work should have been instituted." (Complaint ¶ 69.) This cannot help Plaintiff. First, regardless of how long it took Plaintiff to complete (or not complete) her clinical rotations, by the time of her dismissal, Plaintiff also had indisputably failed to satisfy another condition of her graduation, *i.e.*, passing the CCSE with a minimum required grade of 79. (*See id.* ¶ 27, 29, 32, 43.) Second, the Court should not credit Plaintiff's conclusory allegation of "arbitrary" conduct by AUA. "It is well settled that a determination is arbitrary and capricious when it is made 'without sound basis in reason and is generally taken without regard to the fact.'" *Gumbs v. Bd. of Educ. of the City*, 104277/12, 2013 WL 2369841 (N.Y. Sup. Ct. 2013) (*quoting Matter of Pell v. Bd. of Educ. of Union Free School Dist. No. 1 of Towns of Searsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 (1974)). As the Complaint alleges, AUA gave Plaintiff five chances to take the same exam; worked with her to obtain increasing accommodations to take the CCSE; and extended her original deadline to complete all graduation requirements from of March 31, 2016 to July 31, 2016. (Complaint ¶¶ 29, 32-33, 38-

40, 43.)  Nothing in the Complaint approaches the "arbitrary" standard.  *See, e.g.*, *Illickal v. Roman*, 236 A.D.2d 247 (1st Dept 1997) (nothing arbitrary about school's dismissal of student where he was advised of his academic deficiencies, given several opportunities to correct those deficiencies, and an opportunity to appeal the dismissal).

The Complaint similarly fails to point to any other implied contract between Plaintiff and AUA that AUA allegedly breached.  Plaintiff alleges that, "AUA promises that AUA had clinical sites scattered around the United States for the completion of course work required to graduate," but that "AUA had few sites."  (Complaint ¶¶ 66-67.)  First, Plaintiff cannot sustain a breach of implied contract by vaguely alleging the existence of an implied promise.  Plaintiff needs to set forth the specific agreement that AUA allegedly breached, which must be included in the university's bulletins, circulars and regulations made available to her.  *See Hernandez v. Teachers College, Columbia University*, 16802015, 2015 WL 13660373 (N.Y. Sup. Ct. 2015) (dismissing former student's breach of contract claim where "defendant did not breach any of its academic standards" or "obligations … as specifically set forth in the school's bulletins, circulars, student handbook and regulations.");  *Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475, 477 (3d Dept 2012) (lower court properly determined that plaintiff's failure to identify the specific "internal rule, regulation or code" that the college allegedly breached was "fatal to his claim");  *see also Chira v. Columbia University in New York City*, 289 F.Supp.2d 477, 486 (S.D.N.Y. 2003) (failure to identify the specific contract that Columbia allegedly breached was "fatal" to *pro se* plaintiff's complaint).  Second, Plaintiff's assertion is not plausible.  Elsewhere in the Complaint, Plaintiff alleges that it took her a long time to start her initial clinical rotation because she wanted a rotation in New York, which was closer to her Washington D.C. residence.  (Complaint ¶ 16.)  The Complaint certainly does not allege that AUA contracted with Plaintiff to

find Plaintiff clinical rotations in New York or close to her residence.

Finally, Plaintiff appears to allege that her dismissal, on or around July 3, 2016, before the July 31, 2016 deadline, was a breach of contract.  (Complaint ¶ 70.)  Plaintiff's claim is not plausible.  Once Plaintiff failed the CCSE for a fifth time on July 1, 2016, AUA knew that Plaintiff would not be able to meet the July 31, 2016 deadline because she had failed to obtain a passing grade on the CCSE – one of the requirements for her graduation – and AUA was unable to let Plaintiff sit the CCSE for a sixth time.  (*See id*. ¶¶ 40, 43, 44.)  Nor can Plaintiff plausibly allege that she was damaged as a result of being advised of her inevitable dismissal on or around July 3, 2016 as opposed to on or after July 31, 2016.  *See Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d at 313 (damages are an essential element of a breach of contract claim).

### 3. Plaintiff's Breach of Contract Claim is An Improperly Pleaded & Time-Barred Article 78 Challenge.

Plaintiff's breach of contract claim should be dismissed with prejudice for the independent and additional reason that it is an improperly pleaded and a time-barred Article 78 claim.  Although couched as a breach of contract claim, Plaintiff is ultimately challenging academic and administrative decisions made by AUA – *i.e.*, what requirements Plaintiff had to satisfy to graduate and by when.  (*See* Complaint ¶¶26-27, 68-69.)  As this court has observed, absent a specific promise that was breached – as here – "an Article 78 proceeding is the proper path for judicial review of an educational institutions' decisions."  *Evans v. Columbia Univ. in the City of New York*, 2015 WL 1730097, at *5; *see also Keles v. Trs. of Columbia Univ. in City of N.Y.,* 903 N.Y.S.2d 18, 18–19 (1st Dept 2010) (although styled as contract and tort claims, plaintiff's complaint was targeted at "core academic determinations" such as academic progress and the award of a professional degree, and should appropriately have been brought as an Article

78 claim).[17]  New York courts also routinely dismiss such claims with prejudice where

converting them to an Article 78 proceeding would be moot because they are time barred.  Here,

AUA informed Plaintiff in July 2016 of its decision to dismiss her.  Therefore, Plaintiff's Article

78 challenge – improperly couched as a breach of contract claim – is time barred and should be

dismissed with prejudice.  *See, e.g.*, *Keles*, 903 N.Y.S.2d at 19 (lower court properly declined to

convert student's improper breach of contract and tort action into an Article 78 proceeding, since

plaintiff's claims would have been barred by the four-month statute of limitations); *Hernandez*,

2015 WL 13660373, at *5, 7 (dismissing former student's breach of contract and breach of duty

of good faith claims because they were reviewable in an Article 78 proceeding only, which was

now time barred).

**F.      The Complaint Does Not State a Claim of Breach of Good Faith and
          Fair Dealing Against AUA or MEA**

To state a claim for breach of the duty of good faith and fair dealing under New York

law, a plaintiff must plead that (1) the defendant owes the plaintiff a duty to act in good faith and

conduct fair dealing; (2) the defendant breached that duty; and (3) the breach of duty proximately

caused the plaintiff's damages.  *See Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB),

2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009) (citation omitted).  There is no independent

claim in New York for breach of good faith and fair dealing where it relies on the same facts as

plaintiff's breach of contract claim.  *See id.*

Plaintiff appears to allege that AUA breached its duty of good faith and fair dealing

because:  (1) "Plaintiff did not receive the bargained for education" and was terminated when she

---

17.  *See also Keles,* 903 N.Y.S.2d at 18 ("'Strong policy considerations militate against the intervention of courts in controversies relating to an educational institution's judgment" on core academic policy regarding a student's academic performance and examinations.'") (quoting *Matter of Susan M. v. New York Law School*, 76 N.Y.2d 241, 245 (1990)).

was only three credits from graduating; and (2) "Plaintiff rarely was accorded accommodation without struggle," *e.g.*, Plaintiff allegedly had to find extra funds to subsidize appropriate rooms for taking the CCSE.  (Complaint ¶¶ 74-75.)  These allegations cannot state a breach of good faith and fair dealing claim.

Plaintiff's allegation that she did not receive the "bargained for education" essentially is the same as her breach of contract claim that she was dismissed before she could graduate (*see* Complaint ¶¶ 68, 73).  Accordingly, Plaintiff's claim for the breach of the duty of good faith and fair dealing must be dismissed as a duplicative claim insofar as it relates to her dismissal.  *See Doe v. Colgate Univ.*, 760 F. App'x 22, 34 (2d Cir. 2019) (affirming dismissal of breach of duty of good faith and fair dealing claim as duplicative of student's breach of contract claim); *Alter v. Bogorician*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of the implied covenant of good faith and fair dealing has dismissed the latter claim as duplicative.").

Nor does Plaintiff point to any duty that AUA allegedly breached because Plaintiff had to work with AUA to obtain her accommodations or find funds to subsidize appropriate rooms for taking the CCSE.  (*See* Complaint ¶¶ 74-75.)  Moreover, the Complaint does not allege any facts that plausibly support Plaintiff's conclusory assertion that "AUA[] acted in bad faith" with regard to the accommodations.  Rather, the Complaint shows that over the course of almost two years, AUA worked with Plaintiff to allow her to take the CCSE five times, with progressively-increased accommodations.  *See* Complaint ¶¶ 29, 32, 38-40, 44-45; *see also L-7 Designs,* 647

26

F.3d at 430 (2d Cir. 2011) (plausibility depends on a "host of considerations," including, "the full factual picture presented by the complaint").[18, 19]

### G.    The Complaint Does Not State a Claim of Intentional Infliction of Emotional Distress Against AUA and MEA

Plaintiff's intentional infliction of emotion distress claim against AUA and MEA must be dismissed with prejudice because it is barred by the one-year statute of limitations applicable to such claims. *See Diaz v. City Univ. of New York*, No. 13 CV 2038 PAC MHD, 2014 WL 10417871, at *28 (S.D.N.Y. Nov. 10, 2014) (dismissing former student's/pro se plaintiff's intentional infliction of emotional distress claim as untimely under the one-year statute of limitations);[20] *see also* CPLR. § 215 (3).

Even if Plaintiff's claim were not time-barred, it should be dismissed because the Complaint fails to state a claim for intentional infliction of emotion distress.  To maintain an action for intentional infliction of emotional distress under New York law, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal

---

18. In the introductory section of the Complaint, Plaintiff asserts that she "grounds her Complaint ... under the doctrine of good faith and fair dealing in the District of Columbia."  (Complaint ¶ 5.)  Elsewhere in the Complaint, including in the relevant Cause of Action (Fourth Claim for Relief), Plaintiff does not allege that she is bringing any claim other than under the laws of the state in which she has filed this action.  Regardless, the Complaint fails to state a claim for the breach of the duty of good faith and fair dealing under the laws of the District of Columbia as well because:  (1) Plaintiff's claim that she did not receive the "bargained for education" is duplicative of her breach of contract claim; and (2) Plaintiff has not plausibly alleged any bad faith or arbitrary and capricious actions by AUA in providing her accommodations for the CCSE.  *See Doe v. George Washington University*, 366 F. Supp.3d 1 (D.D.C. 2018) (dismissing claim for breach of the duty of good faith and fair dealing as duplicative of the contract claim); *Richter v. Catholic Univ. of America*, No. 18-00583 (RJL), 2019 WL 481643 (D.D.C. Feb. 7, 2019) ("[T]o show that a university breached the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious.") (citation and quotation marks omitted).

19. In addition to the fact that the Complaint does not allege any wrongdoing on the part of MEA (*see supra* at 19), the Complaint also does not allege that MEA owed any duty of good faith and fair dealing to Plaintiff or on what grounds.  (*See* Complaint ¶¶ 72-75.)  Plaintiff's claim against MEA for breach of the duty of good faith and fair dealing should be dismissed for this additional reason.

20. Report and recommendation adopted in part (including dismissal of claim for intentional infliction of emotional distress), No. 13 CIV. 2038 PAC MHD, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015).

relationship between the conduct and the resulting injury; and (4) severe emotional distress. *See Diaz*, 2014 WL 10417871, at *28. "To satisfy the requirement of 'extreme and outrageous conduct', the plaintiff must allege 'conduct [that is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded [a]s atrocious, and utterly intolerable in a civilized society.'" *Id.* (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999).)

Here, the Complaint states in a conclusory fashion that "AUA's conduct was extreme and outrageous," but does not allege any facts that meet that stringent standard. *See, e.g.*, *Diaz*, 2014 WL 10417871, at *28 (dismissing *pro se* former graduate student and adjunct lecturer's claim for intentional infliction of emotional distress because "the termination of plaintiff's teaching positions at CUNY, and the refusal to hire him for academic jobs, even if done for discriminatory or retaliatory purposes, do not remotely meet [the] stringent standard" for a claim for intentional infliction of emotional distress).

### H.   The Complaint Does Not State a Claim of Negligent Infliction of Emotional Distress Against AUA or MEA

To maintain an action for negligent infliction of emotional distress under New York law, a plaintiff must premise the claim on a "breach of a duty owed to [him or her] which either unreasonably endangers plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-00494 (NSR), 2019 WL 4039149, at *18 (S.D.N.Y. Aug. 27, 2019) (quoting *Santana v. Leith*, 117 A.D.3d 711, 985 N.Y.S.2d 147, 149 (2d Dept 2014)); *see also Torain v. Casey*, No. 16CIV2682VECJCF, 2016 WL 6780078, at *6 (S.D.N.Y. Sept. 16, 2016) (dismissing *pro se* plaintiff's claim for negligent infliction of emotional distress because the complaint did not plausibly allege that plaintiff was in any "immediate" physical danger).

28

Plaintiff's claim should be dismissed because the Complaint does not contain any facts from which a plausible inference may be drawn that AUA or MEA endangered Plaintiff's physical safety or caused her to fear for her imminent safety.  *See Alvarado*, 2019 WL 4039149, at *18 (dismissing with prejudice former teacher's negligent infliction of emotional distress because the complaint "contains no facts indicating, among other things, that Defendants endangered Plaintiff's physical safety or caused her to fear for her safety.").[21, 22]

## IV.  THE COURT SHOULD DISMISS THE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS

In the event that the Court does not dismiss all claims against AUA and MEA for the reasons set forth above, the Court should dismiss this case on *forum non conveniens* grounds in favor of Antigua.  Plaintiff is not a resident of New York and her choice of forum is not entitled to deference; AUA is an Antiguan medical school, all the decisions relevant to Plaintiff's claims were made in Antigua; most of the key witnesses are located in Antigua; and New York has no interest in, or nexus to, the subject matter of this case, whereas Antigua does.

### A.  *Forum Non Conveniens* Standard

The Second Circuit has instituted a three-step test for Rule 12(b)(6) motions to dismiss on *forum non conveniens* grounds:  (1) first, the court should determine the degree of deference properly accorded to plaintiff's choice of forum; (2) second, the court should consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute;

---

21.  Many courts in New York have applied the "extreme and outrageous" conduct requirement for intentional infliction of emotional distress claims to negligent infliction of emotional distress claims as well.  *See, e.g.*, *Campoverde v. Sony Pictures Entertainment*, No. 01 CIV. 7775(LAP), 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002).  Plaintiff's claim for negligent infliction of emotional distress must fail for the additional reason that the Complaint does not allege any "extreme and outrageous" conduct.  (*See supra* at 27-28.)

22.  In addition to the fact that the Complaint does not allege any wrongdoing on the part of MEA (*see supra* at 19; Complaint ¶¶ 76, 78 (alleging emotional distress because of the conduct of AUA)), the Complaint also does not allege that MEA owed any duty to Plaintiff that was breached or on what grounds.  The claims against MEA for negligent infliction of emotional distress should be dismissed for that additional reason.

and (3) finally, the court should balance the public and private interests implicated by the choice

of forum.  *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)

(citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir.2001) (en banc)).  Applied

here, this three-step analysis decidedly favors dismissal of this case in favor of Antigua.

        1.     Plaintiff's Choice of Forum is Not Entitled to Deference.

Generally, "a plaintiff's choice of forum is entitled to substantial deference."  *Pollux*

*Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).  This, however, is not

necessarily the case where a U.S. citizen brings suit in a district other than her home district.

*Iragorri*, 274 F.3d at 71.  The more it appears that plaintiff's choice of forum was based on

"forum shopping reasons," such as "attempts to win a tactical advantage resulting from local

laws," or "for a higher damage award or for some other litigation advantage," the less deference

is afforded to the plaintiff's choice.  *Pollux*, 329 F.3d at 71; *See Iragorri*, 274 F.3d at 72.  Thus,

in determining the degree of deference afforded to plaintiff's choice, courts look at the plaintiff's

"*bona fide*" connections to the forum state.  *See Pollux*, 329 F.3d at 71.  Courts also consider

other factors of convenience, such as availability of evidence and witnesses.  *See Iragorri*, 274

F.3d at 72.  Here, Plaintiff's choice of forum in New York should not be afforded deference

because neither Plaintiff, nor her claims, have any "*bona fide*" connections to New York and

Antigua is a more practical and logical forum for this dispute.

First, none of the relevant and proper parties to this dispute are located in New York.

Plaintiff is a resident of Washington D.C., as she was "throughout her tenure at AUA."

(Complaint ¶ 8.)  AUA is an "offshore medical school headquartered offshore in the country of

Antigua."  (*Id*. ¶ 9.)  Contrary to the allegations in the Complaint, AUA does not have an office

in New York.  (*See* Hassan Decl. ¶ 3, Ex. 1 (attaching screenshots from the New York

95579930

Department of State website showing that AUA is not a business registered in New York).)[23] NBME has its "principal office" in Philadelphia, Pennsylvania.  (Complaint ¶ 9.)  The only New York party is MEA, which, as discussed above, is not a proper party to this litigation.  (*See supra* at 19.)

Second, the key operative facts underlying Plaintiff's claim did not occur in New York: Plaintiff took the CCSE exams in Virginia (Complaint ¶ 14); the decision regarding whether and what accommodations were to be provided to Plaintiff for the CCSE exam were made by Dr. James Rice, in Antigua (*id.* ¶¶ 30-31); Dr. James Rice is the primary witness regarding Plaintiff's failure to accommodate claims and is based in Antigua (*id.*); "Dr. Juli Valtschanoff, AUA's Chief Proctor, in Antigua" conducted the search for a site where Plaintiff could take the CCSE exam over a 2-day period (*id.* ¶ 36); Plaintiff was dismissed by the Promotions Committee, based in Antigua;[24] and the Appeals Committee that Plaintiff's dismissal was headed by Dr. Rice, also based in Antigua (*id.* ¶ 46).

On the other hand, Plaintiff has not – and cannot – allege any connections to New York that are relevant to her claims.  Even accepting Plaintiff's allegations for the purposes of this motion, the fact that the "[d]ecision to admit Plaintiff to medical school flowed through AUA's New York's administrative office," that Plaintiff attended an orientation in New York in 2010;

---

23. On a Rule 12(b)(6) motion, a court is permitted to take judicial notice of information available on a party's public website, where the website's authenticity is not in dispute.  *See*, *e.g.*, *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website as long as the website's authenticity is not in dispute and "it is capable of accurate and ready determination."); *Simon v. Smith & Nephew, Inc.*, 990 F.Supp.2d 395, 401 n2 (S.D.N.Y. 2013) (taking judicial notice of public records contained on the FDA website).

24. As explained in the AUA Student Handbook, academic decisions, including those regarding dismissal, are taken by AUA's Promotions Committee, which is comprised of AUA's senior faculty, and thus is necessarily based in Antigua where the AUA campus is located.  (*See* Hassan Decl., Ex. 2 (excerpts of AUA Student Handbook), available at https://files.auamed.org/uploads/AUA-Student-Handbook-Spring-2017-final-update.pdf).  On a Rule 12(b)(6) motion to dismiss for *forum non conveniens*, a court may take judicial notice of documents available on a party's public website.  (*See supra* at n. 23.)

that she completed her first clinical rotations after joining AUA in New York; that she had

"interactions" with "AUA's New York office" regarding her clinical selection sites (*id*. ¶ 14) are

all irrelevant to the substance of Plaintiff's claims that she was not given reasonable

accommodations to take the CCSE and that AUA breached its alleged contract with her by

dismissing her before she could graduate.  Nor does Plaintiff's allegation that the "decision to

terminate Plaintiff from the school came from AUA's New York office" change this assessment.

None of Plaintiff's claims arise from the administrative or ministerial act of the communication

of the decision to dismiss plaintiff, a decision which was taken in Antigua.  *See Chubb Ins. Co.*

*of Europe S.A. v. M/V HUMBOLDT EXPRESS*, No. 02 CV 1294 (GBD), 2003 WL 22434092, at

*1 (S.D.N.Y. Oct. 24, 2003) ("The weight to be given plaintiff's choice of forum is further

diminished where the operative facts underlying the action have no material connection with the

chosen forum.").

Accordingly, Plaintiff's choice of forum in New York should be given limited, if any

deference.  *See Van Bourgondien-Langeveld v. Van Bourgondien*, No. 10-CV-0077 JFB WDW,

2010 WL 5464890, at *4 (E.D.N.Y. Dec. 29, 2010) ("little deference" was owed to the plaintiffs'

choice of forum, because none of the plaintiffs lived in the forum, only one of the two defendants

lived in the forum district, "operative events" in the action took place in the Netherlands, and one

key witness was located there).

2.     Antigua is an Adequate Alternative Forum.

An alternative forum is adequate if the defendants are amenable to service of process

there, and if it permits litigation of the subject matter of the dispute.  *Capital Currency Exch.,*

*N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998) (citing *Piper Aircraft*, 454

U.S. 235, 254 n. 22 (1981)).  The forum does not need to be identical.  *Id*. ("The availability of

an adequate alternate forum does not depend on the existence of an identical cause of action in

32

the other forum."); *Piper Aircraft*, 454 U.S. at 250 ("[D]ismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery.").

Here, Antigua is an adequate alternative forum.  In the event that NBME is dismissed, AUA, the only proper defendant in this dispute as between AUA and MEA, is an Antiguan school, and, therefore, amenable to service of process in Antigua.  Antigua also is an adequate forum to resolve the pending dispute.  Antigua has instituted the Disabilities and Equal Opportunities Act of 2017, which affords relief for discrimination based on a disability,[25] and Antiguan law also provides for breach of contract and negligence claims.  *See Feinstein v. Curtain Bluff Resort*, No. 96 CIV. 8860 (RPP), 1998 WL 458060, at *5 (S.D.N.Y. Aug. 5, 1998) (finding Antigua to be an adequate alternative forum for negligence claims); *Brown's Bay Resort Ltd (Appellant) v Pozzoni*, Court of Appeal of the Eastern Caribbean Supreme Court (Antigua and Barbuda) (2016) (resolving breach of contract claim) (attached to Hassan Decl., Ex. 4.)

3.    Public and Private Factors Favor Dismissal in Favor of Antigua.

Finally, the balance of public and private factors favors dismissal of this case in favor of Antigua.[26]  Here, the relevant public factors weigh in favor of dismissal on the grounds of *forum non conveniens*.  Antigua has a stronger local interest in the dispute since it relates to alleged

---

25.  *See* http://legalaffairs.gov.ag/pdf/bills/DISABILITIES_EQUAL_OPPORTUNITIES_BILL_2017-PV.pdf.

26.  For a *forum non conveniens* analysis, public interest considerations include, for instance:  "[a]dministrative difficulties" for U.S. courts when litigation is piled up in congested centers instead of being handled at its origin; the fact that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation;" "a local interest in having localized controversies decided at home;" and "an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."  *Iragorri*, 274 F.3d at 74.  "Private interest factors include:  the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at 73–74 (quotation marks omitted).

33

discrimination by AUA, an Antiguan medical school against one of its students.  New York, on the other hand, has no local interest in the dispute since New York's only connection to the case is MEA, which provides certain administrative services to AUA and against which no specific allegations have been made.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.").  Private factors, such as the location of proof and key witnesses, also favor dismissal.  Dr. James Rice, who assessed and granted accommodations to Plaintiff is based in Antigua, as are members of the Promotions and Appeals Committee who made the decisions regarding Plaintiff's graduation requirements and dismissal.  The majority of relevant witnesses and the most relevant documents, therefore, are located in Antigua as well.

### B.    Other New York Courts Have Dismissed Cases involving AUA on *Forum Non Conveniens* Grounds

The argument for dismissing this case on *forum non conveniens* grounds is further bolstered by the fact that many New York courts have dismissed cases against AUA on similar grounds.  *See, e.g.*, *Aina v American Univ. of Antigua*, 161 A.D.3d 508, 508-09 (2d Dept 2018) (affirming dismissal on *forum non conveniens* grounds of former student's racial discrimination claim against AUA where plaintiff was an out of state resident, "the underlying conduct took place in Georgia or Antigua, where the vast majority of witnesses and documents are located," and the "fact that defendant retains a New York firm to provide administrative support is not sufficient to render New York an appropriate forum."); *Alla v. American Univ. of Antigua*, 965 N.Y.S.2d 469, 469 (1st Dept. 2013) (affirming dismissal on *forum non conveniens* grounds of student's Article 78 proceeding against AUA because the trial court "properly balanced the appropriate factors" such as "the nonresidency of both parties" – noting that the "evidence does not support petitioner's contention that respondent [AUA] has its principal office in New York"

– and "the location of the events giving rise to the action and of the potential witnesses and documents, which center almost entirely in Antigua."); *Garcia v American University of Antigua*, 156081/2012, Decision & Order (N.Y. Sup. Ct. Oct. 22, 2013) (dismissing on *forum non conveniens* grounds former New Jersey student's fraud and misrepresentation claims against AUA because neither party was a resident of New York, most of the relevant documents and witnesses, particularly school officials, were in Antigua, outside the reach of New York's subpoena power, and AUA's  only connection with New York was through [MEA], but [MEA]'s role was limited to administrative services) (attached to Hassan Decl., Ex. 5.); *Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) (dismissing on *forum non conveniens* grounds personal injury case against AUA and MEA after dismissing MEA where, among others, the accident did not occur in New York and relevant witnesses and documentary evidence were located in Antigua).  A balancing of similar considerations weighs in favor of dismissing this case on grounds of *forum non conveniens* as well, in favor of Antigua.

## CONCLUSION

For the reasons set forth above, AUA and MEA respectfully request that the Court dismiss the Complaint in its entirety as to AUA and MEA, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 9, 2019

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s  Robb W. Patryk
    Robb W. Patryk
Amina Hassan
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000
*Attorneys for Defendants Manipal Education Americas, LLC and American University of Antigua*

35

95579930