## SERVICES AGREEMENT

THIS SERVICES AGREEMENT (this "Agreement") is made as of March 19, 2012 by and between AMERICAN UNIVERSITY OF ANTIGUA INC. a corporation organized under the laws of Antigua and Barbuda, ("AUA") and MANIPAL EDUCATION AMERICAS, LLC., a New York limited liability company ("MEA").

### Recitals

AUA is an institution of higher education located on the island of Antigua that, inter alia, offers medical degree programs through both classroom and clinical instruction that prepare students to sit for the U.S. Medical Licensing Examination ("USMLE") and provide a foundation for students' postgraduate specialty training in the United States (the Business"). AUA wishes to obtain from MEA, and MEA is willing to provide to AUA, certain services relating to the Business on the terms and conditions set forth in this agreement.

### Agreement

AUA and MEA hereby agree as follows:

1. Provision of Services.

    (a) Services. During the term of this agreement, and subject to the terms and conditions of this agreement, MEA shall perform the admissions, clinical administration, financial aid servicing, legal, management, bursarial, registrarial, accounting and other services described on Schedule A, together with such additional services as AUA may reasonable request from time to time (collectively, the "Services").

    (b) Facilities. MEA shall use all reasonable efforts to provide the services of qualified personnel, and the use of sufficient and proper equipment and facilities, for the provision of the Services to AUA. If MEA is not reasonably able to perform the requested Services in a timely manner, then (i) MEA shall promptly notify AUA of such inability and of the reasons for such inability and (ii) the parties shall agree upon the time and manner of the Services to be provided.

    (c) Licenses and Permits. MEA shall be fully responsible for obtaining and complying with all governmental licenses, permits, and similar requirements with respect to its provision of the Services.

      (d)    <u>Insurance</u>. MEA shall maintain usual and customary general liability and other business insurance policies covering its provision of the services.

2. <u>Compensation</u>.

      (a)    <u>Amount</u>. AUA shall pay for each month during the term of this agreement a fee equal to MEA's costs incurred during each said month for providing the Services hereunder including an allocation of costs for all applicable time and overhead attributable to MEA'S employees plus four (4%) percent except that, for Executive Management Services provided by MEA, the fee shall include an allocation of costs for all applicable time and overhead attributable to MEA's executives plus twelve and one half (12 ½%) percent. Said fees shall be paid on the fifteenth (15th) day of each subsequent month or by such time both MEA/AUA agree on.

      Annually, AUA shall subject the fee structure paid hereunder to MEA in the preceding fiscal year to be audited by an independent auditor using a "Net Cost Plus" ("NCP") analysis. In the event that the audit results in a finding that either of the fees paid for all services provided by MEA other than Executive Management Services or the fees paid for Executive Management Services during the audited year were in excess of the highest limit of the interquartile range of three-year weighted average NCP'S established by comparable service providers, AUA shall be entitled to claw back from MEA the difference(s) between the fees paid and the such amount as would have been paid as fees hereunder if said fees were calculated by use of the highest limit of the said three-year interquartile range of NCP's established by comparable service providers for the audited year.

      (b)    <u>Transfer Pricing</u>. The parties agree that the compensation to be paid pursuant to this Section 2 is intended to satisfy the standard prescribed by U.S. Treasury Regulation §1.482-2(b). If it is subsequently discovered that such pricing does not produce an arm's length result, the parties agree to make, on or before the due date (including extensions) of MEA's U.S. federal income tax return for the tax year of the erroneously-priced Services, whatever compensating adjustments are necessary in order to achieve an arm's length result under U.S. Treasury Regulation §1.482-2(b). Such adjustments may be made in the form of an actual cash payment or an adjustment to the books and records of the parties for the year of the transaction.

      3.    <u>Warranty; Limitation of Liability</u>. MEA shall provide the Services under this Agreement in a professional and workmanlike manner and in accordance with applicable industry standards. EXCEPT AS PROVIDED IN THE PRECEDING SENTENCE, MEA MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES. Notwithstanding anything contained in this Agreement to the contrary, neither party shall have any liability to the other party under this Agreement for any loss of profits or special or consequential damages, even if such party is apprised of the possibility of such damages.

      4.    <u>Indemnification</u>. Each of MEA and AUA agrees to indemnify the other party and such other party's officers, agents, contractors, and employees and hold them

harmless from and against any and all claims, actions, damages, liabilities and expenses (including reasonable attorneys' fees) resulting from the gross negligence or intentional malfeasance of such party, its officers, agents, contractors or employees.

5. <u>Records and Confidential Information.</u>

(a) <u>Redelivery of Records.</u> All memoranda, notes, reports, records or other documents made or compiled by MEA, or made available to MEA, concerning the Business shall be ADA's property and shall be delivered to AUA on the termination of this Agreement or at any other reasonable time upon the request of AUA.

(b) <u>Confidentiality</u>. MEA shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others, all confidential or non-public proprietary knowledge or information pertaining to AUA or the Business that MEA learns during the course of providing Services under this Agreement, and AUA shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others, any confidential or non-public proprietary knowledge or information pertaining to MEA that AUA learns during the course of being provided Services under this Agreement. This obligation shall not apply to, and the parties shall have no confidentiality obligations with respect to, any information that: (i) is or becomes public knowledge without breach of this covenant, (ii) was known to the party prior to the disclosure of such information to the party, (iii) is available to third parties who are entitled to disclose such information to the party, or (iv) is independently developed by the party without reference to or reliance upon any information that is required to be kept confidential hereunder. The confidentiality obligations of the parties under this Section 5(b) shall not apply to the extent that the disclosure of information otherwise determined to be confidential is required by applicable law; <u>provided</u>, that prior to disclosing such confidential information, the party making the disclosure must notify the other party thereof, which notice will include the basis upon which the disclosing party believes the information is required to be disclosed.

(c) <u>Injunctive Relief; Survival.</u> Each party consents and agrees that any violation of the provisions of this Section 5 would result in irreparable harm to the other party and, therefore, in addition to any other remedies such other party may have, such other party shall be entitled to apply to any court of competent jurisdiction to enjoin the party from committing or continuing any violation of the provision of this Section 5. The provisions of this Section 5 shall survive the termination of this Agreement.

6. <u>Term.</u> The term of this Agreement shall commence on the date hereof and shall continue until terminated by either party upon not less than 60 days prior written notice.

7. <u>Miscellaneous.</u>

(a) <u>Notices.</u> All notices which are required or may be given pursuant to the terms of this Agreement shall be sufficient in all respects if given in writing and (x) delivered personally or by reputable overnight courier or (y) mailed by registered,

3

certified or express mail (postage prepaid), or (z) sent by facsimile or other electronic transmission, to the parties at the following addresses and numbers or such other address or numbers as either party shall designate by notice in writing to the other in accordance with this Agreement:

>If to MEA, to:
>
>Manipal Education Americas, LLC.
>1 Battery Park Plaza, 33rd Floor
>New York, NY 10004
>Attention: Chief Financial Officer
>Telephone: 212-661-8899
>
>If to AUA, to:
>
>American University of Antigua, Inc.
>Jabberwock Road
>St. John's, Antigua
>Attention: Vice President of Administration
>Telephone: 268-484-8900

All such notices shall be deemed to have been given when received.

(b) <u>Amendment; Waiver</u>. No amendment, waiver or modification or supplement of any provision of this Agreement, and no consent to any departure from such provision, shall be effective unless in writing and signed by both parties and designated as an amendment or, in the case of a waiver or consent, by the party granting it. Any of the terms and conditions of this Agreement may be waived at any time by the party entitled to the benefit of this Agreement, but such waiver shall not affect or impair the right of the waiving party to require observance, performance or satisfaction either of that term or condition as it applies on a subsequent occasion or of any other term or condition of this Agreement. The failure or delay of either party to exercise any right under this Agreement shall not be construed as a waiver of that right.

(c) <u>Force Majeure</u>. Neither party to this Agreement shall be responsible for failure or delay in performance under this Agreement, other than failure or delay in payment of money, when such failure or delay is due to a force majeure event, including (i) compliance with any act, order, demand or request of any government or governmental authority, agency or instrumentality; (ii) labor disputes, difficulties or work stoppages or slowdowns of any kind; (iii) hurricane, earthquake and other natural disasters or fires; (iv) war, rebellion, or civil disorder; or (v) any other cause beyond the reasonable control of the non-performing party. Performance of this Agreement shall be suspended during such time as any force majeure event continues.

A party that is relieved of any obligation or duty imposed on it by this suspended Agreement pursuant to the terms of this Section 7(c) shall take all reasonable and practical measures and shall make diligent efforts to remove or cause the removal of the cause preventing its performance as soon as practicable.

(d) <u>Severability.</u> If any portion of this Agreement should be adjudged illegal or unenforceable, the remainder of this Agreement shall continue to be enforceable.

(e) <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the parties. Any oral or other written understandings relating to the subject matter of this Agreement are no longer effective and are superseded by this Agreement. In the event of conflict between the terms, conditions and provisions of this Agreement and any purchase order, invoice or acknowledgment or other document issued by either party, the terms, conditions and provisions of this Agreement shall prevail.

(f) <u>Relationship of the Parties</u>. The parties to this Agreement are independent contractors and neither party is an employee, agent, partner or joint venturer of the other. Without limiting the foregoing, neither party hereto shall have the authority to enter into contracts on behalf of, or otherwise legally bind, the other party. Under no circumstances shall any of the employees of a party to this Agreement be deemed to be employees of the other party for any purpose.

(g) <u>Governing Law: Jurisdiction.</u> This Agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed entirely in such State. In the event of any litigation arising out of this Agreement, the parties hereto agree that jurisdiction and venue shall rest in the federal and state courts of the State of New York.

(h) <u>Binding Effect</u>. This Agreement shall be binding upon and inure solely to the benefit of the parties to this Agreement and their successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever.

(i) <u>Assignability.</u> Neither party may assign this Agreement or any right granted under it, nor delegate any duty imposed by it, without the prior written consent of the other party.

(j) <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, and by different parties to this Agreement in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

(k) <u>Interpretation.</u> The language in all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, neither strictly for nor against either party. The rule of construction that a document is to be construed more strictly against the person who prepared it shall not apply to this Agreement, it being agreed that representatives of both parties have participated in its preparation.

(l) <u>Rules of Construction.</u> For purposes of this Agreement (including all schedules and amendments), unless the context otherwise requires, (i) all terms defined herein include the plural as well as the singular, (ii) the masculine, feminine or neuter gender shall be deemed to include the others whenever the context so requires, and (iii) all accounting terms used herein but not otherwise defined herein shall have the meaning given to them under generally- accepted accounting principles, consistently applied. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "but not limited to." "Or" is disjunctive but not necessarily exclusive. Reference to Sections are, unless otherwise specified, to Sections of this Agreement. Words such as "herein," "hereinafter," "hereof," "hereto," "hereby" and "hereunder" refer to this Agreement and to the Schedules, taken as a whole, unless the context requires otherwise. References herein to any agreement or other instrument shall, unless the context otherwise requires, be deemed references to the same as it may from time to time be changed, amended or extended in accordance with its terms. Headings are inserted in this Agreement for convenience only and are not to be given any legal effect and shall not affect in any way the meaning or interpretation of the provisions of this Agreement.

**Execution**

IN WITNESS WHEREOF, the parties have duly executed and delivered this Services Agreement as of the date first written above.

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE, INC.

By: _____
Name: Neal Simon
Title: Pres

MANIPAL EDUCATION AMERICAS, LLC.

By: _____
Name: Leonard Sclafani
Title: Sr. V.P.

## SCHEDULE A
### Services

1.   <u>Admissions</u>: MEA will provide admissions and student services for all AUA programs (including AUA Medical School and the AUA-KMC Twinning Program).   Such admissions services include:

    (a)   Preparing and distributing brochures, newsletters and other marketing materials to prospective students.

    (b)   Responding to inquiries and providing applications and information packages to prospective students who have expressed an interest in one or more AUA programs.

    (c)   Hosting receptions and other events for prospective students.

    (d)   Conducting phone and in-person interviews of prospective students.

    (e)   Reviewing applications and selecting successful candidates for further review by the Faculty Admissions committee.

    (f)   Assisting students in coordinating their relocation to Antigua.

    (g)   Developing/executing marketing and branding campaigns for all programs.

2.   <u>Registrar</u>: MEA will act as registrar for AUA programs including:

    (a)   Maintaining student academic records.

    (b)   Assisting students with scheduling of clinical rotations.

    (c)   Setting the academic calendar.

3.   <u>Clinical Instruction</u>: MEA will coordinate and supervise the clinical portion of all AUA programs in the United States. Such clinical training services include:

    (a)   Identifying, evaluating and selecting teaching hospitals in the United States where AUA students will obtain their clinical training.

    (b)   Identifying, evaluating and selecting physicians to be shadowed by students in AUA's clinical training programs.

    (c)   Monitoring of the teaching hospitals and physicians involved in ADA's clinical training programs for quality assurance.

    (d)   Providing Clinical Chairmen to oversee ADA's clinical training programs and also provide an Academic Provost.

7

   (e) Assisting students in coordinating their relocation to the United States and assisting with housing relocation in the United States for students in ADA's clinical training programs.

4. <u>Financial Aid</u>: MEA will provide financial aid services, including:

   (a) Loan counseling for students.

   (b) Preparing, distributing and reviewing financial aid applications.

   (c) Selecting financial aid, academic scholarship and housing scholarship recipients and determining aid levels.

   (d) Loan processing for students.

   (e) Identify and maintain lender relationships

5. <u>Accounting</u>: MEA will provide accounting services, including:

   (a) Acting as bursar for AUA as its accounts receivable function.

   (b) Providing daily business processing support and financial reporting.

   (c) Managing payroll and compensation for full-time and part-time employees and consultants with respect to (a) AUA's Basic Sciences Faculty (pre-med and semesters 1 through 4) and AUA's Research and Development staff in Antigua, and (b) clinical sciences faculty, clinical chairman and other personnel in the United States.

   (d) Manage other expenses as requested including but not limited to rent and student housing payments, insurance and other contract payments.

   (e) Assist in the Management of facilities development and construction

   (f) Collections.

   (g) Assisting AUA with adherence to accounting and tax requirements.

6. <u>Information Technology Services</u>. Purchasing and maintaining AUA'S organizational IT
   infrastructure.

7. <u>Purchasing</u>. Coordinating and facilitating procurement for AUA'S organization.

8. <u>Office Administration</u>. Providing clerical support and other non-academic office-related services in the United States.

9. <u>Legal Compliance</u>. Obtaining business licenses and permits, accreditation and other governmental and third party approvals necessary to AUA'S business.

10. <u>Insurance</u>. Obtaining insurance with respect to AUA's programs.

11. <u>Travel</u>.  Coordinating faculty travel between AUA's various locations and the United States.

12. <u>Other</u>. Providing such other services and AUA and MEA may agree from time to time.