IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROMFIELD THOMPSON )
1405 Kennedy Street, NW )
Washington, DC 20011 )
)
Plaintiff, )
)
v. )
)
AMERICAN UNIVERSITY OF ANTIGUA/ )
MANIPAL EDUCATION AMERICAS, LLC, )
s/h/a GCLR, LLC )
1 Battery Plaza, 33rd Fl. )  No. 19-CV-6078
New York, NY 10004 )
)
and )
)
NBME )
3750 Market Street )
Philadelphia, PA 19104 )
)
Defendants. )
)





**PLAINTIFF DEBBIE-ANN BROMFIELD-THOMPSON'S  FIRST AMENDED COMPLAINT**
**(Discrimination in Violation of the Rehabilitation Act and the American with Disabilities Act)**

**NATURE OF THE ACTION**

1.      This is an action seeking redress for the unlawful discrimination on the basis of disability

committed by American University of Antigua/Manipal Education Americas, LLC an offshore

medical school located on the Island of Antigua ("AUA") which has corporate offices in the

United States of America, and specifically in New York City.  AUA continuously failed to

reasonably accommodate Plaintiff for her dyslexia disability  in the taking of her exams including

the CCSE practice exam).  Dyslexia is a specific learning disability that is neurological in origin.

It is characterized by difficulties with accurate and/or fluent word recognition and by poor

spelling and decoding abilities.  These difficulties typically result from a deficit in the

phonological component of language that is often unexpected in relation to other cognitive

abilities and the provision of effective classroom instruction.  Secondary consequences may

include problems on reading comprehension and reduced reading experience that can impede

growth of vocabulary and background knowledge. **Definition of the International Association**

**of Dyslexia.**  Thus, insufficient time to decode and read are the bane of any dyslexic student's

existence.  This action also includes causes of action against National Board of Medical

Examiners (NBME) which knowingly failed to extend reasonable accommodation.

DespitePlaintiff's dyslexia impediment, she graduated *magna cum laude* with a B.S. in Biology

from Howard University and had attained  a GPA of 3.65 out of 4.0 at the time of her dismissal

from AUA and was only 3 credit hours shy of obtaining her MD Degree.

2.      At the time Plaintiff started at AUA there was no policy or rules in place for the taking and

passing of practice exams prior to taking the NBME required exams prior to application for

medical residencies.

3.      In the midst of her clinical rotations AUA instituted a new policy requiring passage of an

exam denominated the CCSE exam as a condition precedent for the taking of the official

USMLE Step 2 CK, which passage is required prior to applying for a medical residency.

4.       Under rules promulgated by AUA Plaintiff was required to attain a score of 79 on the

CCSE exam, but there was no limit imposed on the number of times she was allowed to sit the

exam.  (Exhibit 1).

5.      Plaintiff was dismissed from AUA after she complained that the accommodation

accorded her for the taking of the CCSE exam was not reasonable. (Exhibit 2) Plaintiff was just

three credit hours shy of graduating at the time of her dismissal on July 5th, 2016 and had

attained a GPA of 3.65 out of 4.0.This action also includes state claims for breach of  the New

York City and State Human Rights Law, breach of contract, intentional/negligent infliction of

emotional distress, and violation of the tort of good faith and fair dealing

6.      The National Board of Medical Examiners ("NBME") is the official body responsible for

sponsoring exams that will lead to the licensing of physicians in the United States and Canada.

The NBME sponsored the practice exams taken by Plaintiff and assigned a proctor  for the

taking of the CCSE practice exams on at least 5 occasions with full knowledge that

the accommodation extended was unreasonable given that the NBME in sponsoring the

similarly official exam extends wholly different terms and conditions reflecting the consensus in

the medical, legal,  and scientific community that "reasonable accommodation" meant that

dyslexic students ought to be extended 2 days for the taking of the exam.  Upon information and

belief, NBME assigns proctors for the same exam to medical students attending onshore

medical schools. Plaintiff was required to complete the practice exam in one day over an 11-

hour period, but when NBME assigns proctors to onshore schools for dyslexic students the

exam is given over a 2-day period.

7.      The Rehabilitation Act and the American with Disabilities Act expressly prohibit

discrimination on the basis of disability. *See* 29 U.S.C., Section 794, *et seq.,*   and 29 U.S.C.

Section 705 (201), stating that "no otherwise qualified individual with a disability in the United

States, as defined in section 7(20) )29 U.S.C. Section 705 (201), shall, solely by reason of her

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving federal assistance….".  Section 29 U.S.C.

794 (a), *et seq.,* "is enforceable through Title V1 of the Civil Rights Act of 1964 which provides

(*inter alia)* for the termination of federal assistance to recipients who discriminate in violation of

Section 504" of the Rehabilitation Act.  Likewise, defendants have violated the American with

Disabilities Act of 1990, as amended by the ADA Amendment Act of 2008 which prohibits

discrimination on account of disability which substantially limits one or more major life activities.

As is set forth in this Complaint Plaintiff suffers from dyslexia, a disability that substantially limits her ability to read and learn.

8.      Plaintiff further grounds her Complaint on common law breach of contract, intentional and or negligent infliction of emotional distress, and contractual/tort breaches under the doctrine of good faith and fair dealing5

9.      Plaintiff brings this action against American University of Antigua and its agent Manipal Education America, LLC, s/h/a GCLR LIC based on discrimination disability in violation of the Rehabilitation Act, the American With Disabilities Act, the New York State and City Human Rights Act, and other state common law claims.

10.     Plaintiff's action against NBME is based on violations of the American With Disabilties Act, the  Rehabilitation Act, and the New York State and City Human Rights Acts..

## PARTIES

11.     Plaintiff Debbie-Ann Bromfield-Thompson is an adult resident of the United States, residing in Washington, D.C.  At all times relevant to this Complaint, Plaintiff suffered from a disability recognized under the Rehabilitation Act, the American With Disabilities Act, and the New York State and City Human Rights Act.  At the time Plaintiff applied to AUA as a transfer student she resided in Washington, D.C. and has continued her residence throughout her tenure at AUA up to the date she was dismissed from the University on July 5th, 2016.

12.     Defendant AUA is an offshore medical school headquartered offshore in the country of Antigua.  Students attend the Antigua campus for two years to take courses in Basic science after which they relocate to the United States for their clinical rotations, known as Clerkships. Plaintiff was accepted as a transfer student and at no point ever visited the Antigua campus let alone take any courses on that Island.  The clinical part of the program is supervised and regulated from  AUA 's New York City office located at 1 Battery Plaza, New York, NY 10004. Plaintiff had attended St. Matthews University School of Medicine for her 2 years of basic

science courses after which she transferred to AUA exclusively to complete her clinical rotations also known as clerkships.  Upon completion of their clerkships students sit for a series of licensure exams administered by the NBME before applying for residencies at hospitals located throughout the United States and Canada.  AUA recruits and accepts students from colleges and universities throughout the United States, including New York  State.

13.     All of Plaintiff's clinical assignments emanated from AUA's clinical offices at 1 Battery Plaza, New York, NY 10004.  When Plaintiff was first admitted to AUA, she commenced her first clinical rotation at Wycoff hospital in New York City in the Fall of 2010.  Tuition payments for her clinical courses were sent to AUA's offices in New York City.  All her clinical coordinators with whom she interacted by email and telephone worked out of AUA's offices in New York City. These coordinators included the following persons, all of whom were located in AUA's New York City office: Antonia Craig, Corey Greenberg, Maria Cepeda, Maria Pimentel, Dan O'Connell, Cory Lederman.  Plaintiff also interacted extensively with Dr. Peter Bell, Executive Dean Clinical Services, who was also located at 1 Battery Park Plaza, in New York City (Exhibit 3). Similarly, Plaintiff had significant contacts with Craig Hauser, Associate Vice President for University Administration, who was located at the same New York City address as Dr. Bell. Throughout the years Plaintiff  had exchanged perhaps hundreds of emails with these various coordinators and other personnel, all of whom worked in AUA's New York City office, in addition to  numerous telephone calls.  AUA's New York City office had also established Skype technology to allow students on designated days to speak with their assigned coordinator at their New York City office.

14.     AUA states the following on its website: "AUA is similarly approved by the New York State Education Department, which entitles its students to engage in clinical clerkships and residency training in the State" (Exhibit 4 ).  AUA's website does not suggest that  this approval

was granted solely to its Antigua facility.  It is reasonable to conclude that such approval was

granted because AUA had physical facility from which it operated within New York State.

15.      AUA submitted to the jurisdiction of the United States Department of Education, Office of

Civil Rights, located in New York City, which noted "The University is a recipient of financial

assistance from the Department.  Therefore, OCR has jurisdictional authority to investigate this

complaint under Section 504".  (Exhibit 5). OCR's jurisdiction was exercised because AUA had

its office in New York City.

16.      There were voluminous correspondence between Plaintiff and AUA's personnel in New

York City concerning her accommodation for the exam which is the subject of this lawsuit.

( Exhibits 6 through 11).  These correspondences represents a small fraction of what is in

Plaintiff's possession listing AUA's and MEA's addresses in New York City and stating as

follows: "MANIPAL EDUCATION AMERICAS, LLC AGENTS FOR **AUAMED.ORG** AMERICAN

UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE".  Some listed correspondence used the

term "Representative" as opposed to the term "Agent".  (Exhibits 6-11).

17.      The setting up of the exam was done by AUA's New York City office which coordinated

with NBME on site selection and the duration of the exam.

18.      Upon information and belief, AUA has a service agreement with MEA which contains a

New York forum selection clause.

19.      Plaintiff had minimal contact with personnel in AUA's Antigua office, except that on two

separate occasions Plaintiff was instructed to transmit her psychological report to  Dr. Rice in

Antigua who would in turn interacted with personnel in New York City regarding Plaintiff's

request for accommodation.

20.      On October 8th, 2019 Plaintiff served AUA/Manipal Education Americas, LLC/s/h/a

GCLR, LLC with Plaintiff's Complaint.  The name of the individual accepting service was "Anita

O'Brien, Legal Department, who is designated by law to accept service of process on behalf of American University of Antigua Manipal Education Americas, LLC/s/h/a GCLR, LLC".  (Exhibit 12).

21.     NBME is a private, non-profit organization with its principal office located in Philadelphia, Pennsylvania.  NBME, along with State Medical Boards sponsors the United States Medical Licensing Examination ("USMLE"), a licensing examination for prospective doctors.  NBME falls under the requirements of  section 309 of the American With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12189, et seq., and its corresponding regulations, 28 C.F.R. 36.09.  NBME is also subject to the New York State and City Human Rights Acts by virtue of sponsoring licensing exams within New York State and New York City through testing centers and at medical colleges and universities.  The NBME also sponsors practice and other exams on behalf of medical colleges and universities with medical programs  throughout the country.  Many of these exams,  as for example, the CCSE, are designed to aid students in preparing for the official USMLE Step 2 CK exam.  Medical schools, including AUA, use the results from these practice exams to make up part of students' grades.  The practice exam which is the subject of this lawsuit made up 20% of Plaintiff's grades.  Moreover, failure to attain a passing grade on this exam (the CCSE) subjected Plaintiff to dismissal.

22.     The NBME in arrangement with AUA agreed to sponsor Plaintiff's taking of the exam under conditions NBME knew was not "reasonable accommodation".  This is so because the NBME in sponsoring the similarly official exam extends wholly different terms and conditions to dyslexic students who take the exam, where as here, NBME claimed that it lacked the ability to offer same or similar exam taking terms and conditions for the practice exam, but nevertheless entered into an agreement with AUA to administer the exam with conditions that were not reasonable.  (Exhibit 13).  Although NBME does not itself grant the accommodations of the

CCSE exam they play a significant role in its implementation in conjunction with the prometric

test centers around the country.  (Exhibit 13 A).  In Plaintiff's case, they coordinated extensively

with AUA in New York City to put in place accommodations that NBME knew was unreasonable.

23.      AUA's website states the following "The American University of Antigua (AUA), is part of

the Manipal Education and Medical Group is a medical school founded in 2004 with the mission

of addressing the growing shortage of physicians in the United States.  With the support of

Manipal University, AUA has developed into a hub of international education".  Thus, AUA's own

website describes AUA as part of MEA .  AUA's numerous correspondence to Plaintiff

lists the addresses of AUA and MEA as: One Battery Park Plaza, 33rd Floor, New York, NY

10004. These correspondence also described the relationship between AUA and MEA as

ffollows: "Manipal Education Americas, LLC *agents* for [**auamed.org**] American University of the

Antigua College of Medicine".  In fact, both AUA and MEA shares the same address at 1 Battery

Park Plaza, 33rd Floor, New York, NY 10004.   In other correspondence, the word "agent" is

sometimes substituted by the word "representative": "Manipal Education Americas, LLC

Representative for American University of Antigua College of Medicine".    Many of the emails

received from AUA has the following warning which reads in part" "Manipal Education of

Americas, LLC agent for American University of Antigua College of Medicine, and any of its

subsidiaries each reserve the right to monitor all email communications through its networks".

(Exhibits 6-11).

## JURISDICTION

**This Court has jurisdiction pursuant to 28 U.S.C. Section 1331, et.seq**

Plaintiff realleges paragraphs 1 through 20 as if fully set forth herein

24.      Plaintiff seeks declaratory relief as authorized by 28 U.S. C. Sections 2201 and 2202.

25.      This Court may exercise jurisdiction over AUA and its agent, MEA,  and NBME because

defendant, AUA,  has a principal United States office in New York City where it conducts

business throughout the United States.

26.     AUA is also authorized by the United States Department of Education to allow its students to apply for federally guaranteed student loans.

27.     NBME is headquartered in Philadelphia, Pennsylvania but does substantial business in New York City and other states by sponsoring and proctoring various exams on behalf of medical schools and colleges including the practice exam (CCSE) which is the subject of this lawsuit.  (Exhibit 13A).

28.     AUA is also authorized by the United States Department of Education to allow its students to apply for federally guaranteed student loans.

29      This Court has personal jurisdiction over AUA and its agent, MEA  and  NBME pursuant to the laws of New York State and  as well as Federal Rules of Civil Procedure 4(k)(1)(B) and 19.  AUA and its agent/MEA, as well as NBME regularly transact business in New York State.  The scope of NBME's substantial business transactions in New York City and State may be elicited through jurisdictional discovery if permitted by the Court.  In any event, NBME coordinated with AUA's New York City office with respect to test taking accommodations for Plaintiff on at least fourteen different occasions prior to Plaintiff's dismissal.  Upon information and belief, AUA paid NBME for their testing services.

30.     Venue in this Court is proper under 28 U.S.C. Section1391 as a "substantial part of the events or omissions giving rise to the claim occurred" within this jurisdiction.  Although Plaintiff sat the practice CCSC exam at a site in Virginia sponsored by NBME and agreed upon by AUA , the decision to admit Plaintiff to the medical school came from  AUA's New York's administrative office; the interactions between Plaintiff regarding clinical selection sites and other decisions occurred with personnel from AUA's New York office;  the setting up accommodations for exams and negotiations for such accommodations came from AUA's New

York office; the initial decision to terminate Plaintiff from AUA came from or through AUA's New York office.

31.     In the Fall of 2010 Plaintiff attended an orientation sponsored by AUA in New York City and completed her first clinical course work at AUA's assigned facility in New York City.  Plaintiff has never visited or attended any courses at AUA's campus located in the country of Antigua.

32.     Plaintiff's received her dismissal letter from Kristal Booth, AUA's Registrar. (Exhibit 14).

33.     Plaintiff also received a followup letter from Dr. Morcos, noting that Plaintiff was dismissed because she had failed to "meet the conditions of readmission".  (Exhibit 15 ).

34.     Plaintiff, in response expressed her "shock" to having received a letter from Dr. Morcos because "I have had no dealings with anyone in Antigua on the issues that precipitated my dismissal".  (Exhibit 16)

35.     Plaintiff also filed an appeal of her dismissal in the time allotted her to appeal.  However, AUA never responded to the appeal.  (Exhibit 17)

36.     Plaintiff did file a complaint with the Department of Education Office of Civil Rights which ruled adversely to Plaintiff.  That ruling was appealed but no decision has been issued in almost three years.  The exhaustion of administrative remedies is not a condition precedent to the filing of the instant lawsuit.

**FACTUAL ALLEGATIONS**

37.     On January 5th, 2010 AUA admitted Plaintiff to its medical school as a 5th semester transfer student from St. Matthews University, an off shore medical school located in the Cayman Islands.  Although she was accepted for the May 20th, 2010 semester, her admission was deferred until the Fall of 2010 because AUA was unable to grant her request to start pre-clinical rotations at their New York City site which was closer to her Washington, D.C. residence.

38.     On December 14th, 2010 Plaintiff sought accommodation for the taking of the ICM shelf exam.  AUA was unsure about what to do because it was the first time a student had requested

accommodation to take the ICM exam, and they had no department or personnel on board in the United States to handle accommodation requests.  It was suggested that she contact Dr. Rice in the country of Antigua because he was the person who taught a psychology course at that site.  Plaintiff contacted Dr. Rice and sent him via facsimile a 20-plus report from her psychologist detailing her need for accommodation.  Plaintiff took and passed the ICM exam after Plaintiff was granted accommodation of time and a half.

39.     Plaintiff waited roughly seven months to obtain her next rotation because AUA did not have sufficient sites for its clinical rotation in the United States.  Plaintiff began this clinical rotation in Family Medicine at Maryland General Hospital in July 2011  which ended in October 2011.

40.     Plaintiff was scheduled to begin  her next clinical rotation in November 2012, a wait of a little more than a year because AUA had limited sites.  Prior to the start of the clinical rotation Plaintiff was contacted by her clinical coordinator, Maria Pimentel, who told her that the rotation had to be cancelled in favor of students whose graduation was imminent.  Plaintiff was not assigned any clinical rotation (Pediatrics) until September 2012, an eleven month wait.

41.     Because AUA had few sites for clinical rotations Plaintiff sought and was able to obtain clinical rotations on her own accord.  For example, Plaintiff obtained clinical rotations on her own from Franklin Square Hospital in Baltimore, Maryland and from Union Memorial Hospital, in Baltimore, Maryland.  Thus, even though Plaintiff began attending AUA for her clinical programs beginning Fall 2010, she was only assigned 2 clinical rotations by AUA in a 2-year span.

42.     By the time AUA started assigning clinical rotations to Plaintiff on a consistent basis the school had changed its policies by instituting a requirement that all students should sit for the shelf exams and the Comprehensive Clinical Shelf Exam (CCSE).  These are exams that were to be taken at the end of core clinical rotations.

43.     When Plaintiff became eligible to take her shelf exam in Family Medicine, Plaintiff

discovered that no arrangements were made for her accommodations, despite the fact that AUA

had a 20-page report detailing the need for accommodation on file.  When she asked that the

exam be re-scheduled she was told that   AUA did not receive the notice in time to do so.

Plaintiff took the exam without accommodation, and failed.

44.     Plaintiff notified Executive Dean of Clinical Studies, Dr. Bell, about AUA's failure to

recognize that she needed accommodation even though she had submitted a report to them.

Plaintiff retook the exam and passed with a score that exceeded the minimum score required by

AUA.  The same was true with respect to the OB/GYN exam where upon being given

accommodation (time and a half) Plaintiff's passing grade exceeded the minimum score

required by AUA.

45.     As a result of Plaintiff's complaints regarding her accommodation, AUA instituted a new

policy to the effect that students seeking accommodation were required to notify the

administration within 5 business days from the start of any clinical rotations.  Plaintiff was also

required to pay extra  monies to AUA in order to be accommodated.

46.     On June 11th, 2015 Plaintiff was administratively withdrawn from AUA.  The reason for

the withdrawal was vigorously disputed.  AUA contended that Plaintiff had to be withdrawn

because a student who has been inactive for more than "6 months is subject to administrative

withdrawal".  Plaintiff challenged the withdrawal because her second child was born in June

2015 and in the period leading up to the birth she was unable to travel for clinical rotations.

47.     On June 17th, 2015, AUA re-admitted Plaintiff to the medical school, but set forth the

condition that Plaintiff complete the remaining requirements for graduation  no later than "March

31, 2016", a daunting schedule given AUA's unreliability in  arranging for accommodations and

assigning sites for clinical rotations.

48.     AUA  also conditioned Plaintiff's re-admission on passage of the Clinical Science

Comprehensive Examination (CCSE) with a score of at least 79 in order to be certified to take

the USMLE Step 2 CK. Pursuant to AUA's written policy at the time Plaintiff was able to sit the

exam for an unlimited number of times until passage. The policy was later modified

to limit to three attempts students who entered their  4th year in 2015, **but this did not apply to**

**Paintiff**. According to AUA, failure to satisfy the requirements by the set date would result in

dismissal.

49.     The new requirements imposed by AUA were not in effect at the time Plaintiff enrolled

with the school.  Plaintiff was of the belief that  AUA was planning to retaliate against her for

having vigorously advocated for reasonable accommodation.

50.     Plaintiff took the exam on three different occasions - 8-22-2014, 10-24-2014, and

8-28-2014, and was unsuccessful because she was accommodated with one and a half times

the duration of the regular exam.

451     Recognizing that her failures had nothing to do with her level of preparation Plaintiff

contacted Dr. Bell, the Executive Dean of Clinical Studies in New York City, who advised her to c

ontact Dr. Rice in the country of Antigua.

52.     Plaintiff wrote Dr. Rice seeking double time, who in turn responded that she needed to

justify the request with recent testing certifying that she was dyslexic.  To expedite the process,

Plaintiff sen a letter to Dr. Rice from her clinical psychologist justifying the need for double time.

Dr. Rice agreed to grant the request provisionally, pending receipt of the full report.  Dr. Rice's

approval came too late for Plaintiff to take the CCSE exam with double time.  The full report

from Dr. Rachna Varia was sent via facsimile to Dr. Rice in October 2015.

53.     On November 25th, 2015 Plaintiff took the CCSE exam for the first time with double time

accommodation which was unlike the previous three attempts which gave her one and a half

extended time.  Plaintiff sat the exam for 9 straight hours without any breaks in between and

suffered excruciating pain in her feet in the last two hours of the exam resulting in Plaintiff

guessing a significant numbers of answers just to get through the exam.  According to the

proctor at the NBME sponsored site she was not allowed to take breaks.

54.     After Plaintiff was notified that she  did not attain the required score on the exam Plaintiff

contacted NBME directly to complain about the conditions under which she had previously

taken the exam: either not being given sufficient time or in the one instance when she was given

double time she got no breaks during the exam.

55.     NBME explained that the official exam is given over a 2-day period and suggested that

Plaintiff contact AUA  to determine whether AUA would be willing to find a site where Plaintiff

could take the exam over a 2-day period.  NBME promised that it would send a proctor.

56.     On January 15th, 2016 Cheri Kershen, Manager NBME Test Administration, copied

Plaintiff on a letter she had sent to AUA describing the procedures under which Plaintiff was

able to sit the CCSE exam over a 2-day period.  According to Ms. Kershen, AUA could attempt

to make arrangements with an  NBME approved site for Plaintiff to sit the exam.

57.     AUA was unable to locate an approved site.  Dr. Bell referred Plaintiff to AUA's

Ombudsman who had no understanding whatsoever as  to the issues.  Dr. Bell had also

referred the matter to Dr. Juli Valtschanoff, AUA's Chief Proctor who stated in an

email to Plaintiff that he was unable to locate a site for the taking of the exam over a 2-day

period, and advised Plaintiff in an email to "take the exam like any other student needing

"accommodation".

58.     Because of AUA's delays in figuring out how to grant the accommodation, Plaintiff was

butting up against the March 31st, 2016 deadline imposed pursuant to the grant of her re-

admission to AUA.  Consequently, Dr. Bell extended the deadline for completion to July 31st,

2016.

59.     It took AUA 8 months from the time of Plaintiff's last unsuccessful attempt (November

25th, 2015)to sit the CCSE exam to reschedule the exam with breaks, which took place on July 1st, 2016.

60.     NBME arranged with AUA and the Prometric Center located in Virginia to add more than double time to the exam to enable Plaintiff to take breaks  The way this plan was designed to work was that an extra one hour and four minutes would be built into the exam to enable Plaintiff to take breaks.  However, the exam would not stop running during these breaks.

61.     On July 1st, 2016 Plaintiff took the exam and sat for 11 hours at a desk which had a large metal sheet underneath which blocked her from stretching her legs.  When Plaintiff took breaks the exam would continue to run and when she returned the screen would go blank. Each time Plaintiff would notify the Proctor of the problem whereupon she would call in to the technical department for assistance.  Appellant had to keep a mental time of her breaks as she was not allowed to wear a watch.  The exam had its own time on the screen but it kept running when she left for breaks.  Each time Plaintiff returned from a break she had to be patted down, an event that caused her to panic even more because these extra delays caused time to run even more.

62.     Despite the extra time Plaintiff experienced fatigue and pain which convinced her even more that this practice CCSE exam ought to have been given under the same conditions as the official exam: 2 days with breaks in between with the clock stopped during breaks.

63.     At the end of the exam the Proctor gave Plaintiff a card to to call in the event any issues arose concerning the exam.  According to the proctor someone from Prometric would be able to verify the issues that arose in the exam.  However, there is no indication that anyone from AUA contacted the Prometric Center in response to Plaintiff's complaint regarding difficulties in taking the exam.

64.     Plaintiff received a score of 72 on the exam.

65.     Plaintiff had sent a letter to AUA explaining that the decision to  have her sit an exam for an 11-hour period with breaks while the exam ran was unreasonable: she received the following letter from Kristal Booth, Registrar for AUA: " I am sorry to hear of the personal issues you faced with this exam.  AUA's efforts (along with NBME and Prometric) to accommodate your testing needs have been more than reasonable and unfortunately we are unable to accommodate another attempt at this exam.  This email is to confirm that based on your recent score, you have been dismissed from the University.  You will receive a formal letter of dismissal from the promotions Committee within 1-2 days".  If you wish to appeal this decision, you may do so at this time." (Exhibit 14).

66.     Plaintiff responded to Registrar Booth's email by noting that this was the first time AUA had given her a "halfway decent…but less than ideal accommodation" with respect to the CCSE practice exam.  Plaintiff accused the school of basing its approach to accommodation on "trial and error".  Plaintiff characterized the the efforts of accommodating her as "flawed" because of the failure to accommodate her over a 2-day period as was recommended by NBME.

67.      Plaintiff appealed AUA's decision to dismiss her from the medical school.  On July 17th, 2016 the AUA Appeals Committee acknowledged receipt of the appeal. However, the merits of Plaintiff's appeal was never addressed.

68.     At the time Plaintiff was dismissed from AUA she was indebted in excess of $200,000.00 in student loans associated with pursuit of her medical degree.

69.     Plaintiff has struggled to keep her loans current and is behind in payment on one loan and is paying lesser sums onto other under a deferment program.

70.     Plaintiff has suffered extreme emotional distress as a result of AUA's conduct at a time when Plaintiff was just 3 credit hours shy of completion and had maintained a GPA of 3.65. Plaintiff was preparing for residency and had obtained excellent evaluations for inclusion in her application.

71.     Plaintiff is a wife and mother of two children who always wanted to become a doctor but that ambition is gradually slipping away as a result of AUA's callous conduct.

## FIRST CLAIM FOR RELIEF

### Violation of the Rehabilitation Act
### (against AUA/MEA )

72.     Plaintiff realleges pagraphs 1 through 66 as if fully set forth herein.

73.     Section 504 of the Rehabilitation Act, 29 U.S.C., Section 794 provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or captivity receiving Federal  financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

74.     Because dyslexia limits at least one of Plaintiff's major life activities Plaintiff is a69 individual with a disability under the Rehabilitation Act as set forth in two psychological reports that were furnished to AUA.

75.     AUA is a recipient of federal FASFA loans on behalf of its students and therefore is covered under the Act.

76.     Plaintiff was able to pass all her exams when she was reasonably accommodated with the appropriate time duration., abet she had to proactive in ensuring her own accommodations.

77.     When Plaintiff realized that she was encountering problems with the CCSE exam she wrote to Doctor Rice explaining  that the 1.5 hours accorded in previous exams was unworkable because of the complexity and length of the CCSE exam.

78.     Although AUA  consented to  extend double time for the CCSE exam they claimed that they were unable to arrange a suitable site for Plaintiff to sit the exam over 2 years.

79.     In fact, one AUA administrator told Plaintiff that she should sit the exam like any other "accommodations" student.

80..     Plaintiff takes the view that the school made very little effort to find a suitable site for the

taking of the exam over a 2 day period as they believed that agreeing to grant double time

marked the end of their responsibility to extend reasonable accommodation.

81.     Plaintiff had to sit for 11 hours in the taking of the exam when the official exam is given

over a 2-day period.  The conditions under which the exam had to be taken was outrageous (11

hours with breaks in between while the exam ran) and did not constitute "reasonable

accommodation" contemplated by the Rehabilitation Act.

82.     AUA/MEA, LLC and NBME are jointly and severally liable to Plaintiff for failing to provide

reasonable accommodation.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
(as to AUA/MEA and NBME)**

Plaintiff realleges Paragraphs 1 through 77 as if fully set forth herein.

83.     The American with Disabilities Act, 42 U.S.C.Section 12101, *et seq.,*  prohibits

discrimination against qualified individuals because of a disability.

84.     Dyslexia substantially limits at least one of Plaintiff's major life activities, learning and

taking exams.

85.     NBME and AUA were well aware that the official exam was given over a 2-day period

and NBME should never have agreed to offer the exam to Plaintiff to sit for a 11-hour period in

one day, especially considering the terms and conditions agreed to by NBME in its settlement

with the United States Department of Justice with respect to setting exam conditions for

disabled and dyslexic students which are posted on both the websites of the United States

Department of Justice and that of NBME.

86.     AUA intentionally imposed arbitrary deadlines  for the completion of

Plaintiff's Degree knowing that through their own failures Plaintiff was unable to obtain clinical

sites to complete various courses.  Arbitrary deadlines imposed for test-taking are expressly

prohibited by United States Justice Department regulations/guidelines.

87.     AUA's deadlines were designed to punish Plaintiff for having been proactive in securing accommodation for her exams.  In fact, the Registrar's dismissal letter stated that AUA had accommodated Plaintiff enough.

88.     Both AUA/MEA, LLC and NBME are covered by the ADA and they knew that requiring Plaintiff to sit an exam over an 11 hour period in one day with built-in breaks while the exam kept running did not constitute reasonable accommodation, and they are therefore jointly and severally liable to Plaintiff.

89.     Although Plaintiff has been terminated from AUA Plaintiff still has standing to sue NBME as the matter is capable of repetition should Plaintiff prevail in her claims against AUA as there is no other entity through which Plaintiff would be able to sit the CCSE and or the USMLE as NBME enjoys a monopoly on the entire market for medical school exams.

90.     Both AUA and NBME action caused injury to Plaintiff and they are both jointly and severally liable.

**THIRD CLAIM FOR RELIEF**

**Breach of Contract: Express and or Implied**

**(against AUA/MEA/NBME)**

Plaintiff realleges paragraphs 1 through 83 as if fully set forth herein.

91.     Plaintiff was falsely enticed to enroll at AUA by promises that  AUA had numerous clinical sites scattered around the United States for the completion of course work required to graduate.

92.     AUA had few sites available causing Plaintiff to wait for long stretches to enroll in rotations.  Over a 2-year period AUA  was able to find Plaintiff just two clinical sites.

93.     AUA breached its contract with Plaintiff by sending Plaintiff termination letters stating that it was unable to further accommodate plaintiff and by claiming that Plaintiff failed to complete

course work for graduation within a specified time.

94.      The long waits for clinical sites were the fault of AUA, not Plaintiff, and therefore no arbitrary setting of deadlines to complete course work should have been instituted. Between waiting times for clinical sites and struggles with the clinical staff in New York City for obtaining accommodation, Plaintiff experienced delays of almost 3 years from the date she started with AUA in the Fall of 2010.  This is borne out by written communication between AUA and Plaintiff which are in Plaintiff's possession.  AUA had first set March 31, 2016 as deadline for completion of all course work, but later changed the date to a July 31st, 2016 deadline because it struggled in furnishing accommodation for the CCSE exam.

95.      AUA consistently and arbitrarily changed the terms of Plaintiff's agreement with the university by revising and adopting new rules and regulations that altered its previous promises to Plaintiff.

96.      Although AUA had ultimately fixed July 31st, 2016 date for Plaintiff to complete all course work, it nevertheless terminated Plaintiff from the school on July 5th, 2016, almost a month prior to expiration of its own deadline.

97.      AUA's breach of contract left Plaintiff with astronomical student loan payments with little opportunity to earn a good enough living to pay back these loans.

98.      Plaintiff was a  third-party beneficiary of the agreement between AUA and NBME with respect to the implementation of accommodations' requirements for  sitting the CCSE exam, therefore, NBME had a duty to ensure that proper conditions and accommodations were implemented for the taking of the exam.

### FOURTH CLAIM FOR RELIEF
### (against AUA and MEA)

### Breach of the Duty of Bad Faith and Fair Dealing and Violation of Due Process

Plaintiff realleges paragrpahs 1 through 98 as if fully set forth herein.

99.     AUA's acted in bad faith by breaching its duty to act fairly and in good faith.

100.    Plaintiff did not receive the bargained for education.  At the time Plaintiff was abruptly

terminated she had a 3.65 GPA and was only 3 credit hours shy of graduating.

101.    AUA knew that Plaintiff required accommodation with respect to the taking of exams but

Plaintiff rarely was  accorded accommodation without a struggle.

102..   In fact, Plaintiff was required to pay for the privilege of being accommodated by finding

extra funds to subsidize appropriate rooms for the taking of the exams.

### FIFTH CLAIM FOR RELIEF
### (against AUA and MEA)

### Intentional/Negligent Infliction of Emotional Distress

Plaintiff realleges paragraphs 1 through 102 as if fully set forth herein.

103.    AUA's conduct was extreme and outrageous causing Plaintiff severe emotional distress.

104.    This distress took the form of loss sleep, loss of appetite and loss of weight.

103.    Plaintiff has continued to suffer emotional distress from AUA's conduct.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of

Plaintiff and against AUA and NBME and award the following relief:

a.      Declaratory relief, including but not limited to a declaration that AUA
discriminated against Plaintiff in violation of the Rehabilitation Act.

b.      Declaratory relief, including but not limited to a declaration that AUA, its agents

and NBME discriminated against Plaintiff by failing to grant reasonable accommodation under

said Act.

c.      Appropriate injunctive relief, including but not limited to Plaintiff's reinstatement to

AUA and an order restraining AUA/NBME from engaging in any further discrimination against

Plaintiff.

d.      Removal of any and all derogatory information contained in Plaintiff's student record that is connected to her dismissal and efforts to seek reasonable accommodation.

e.      Ordering AUA/NBME to facilitate the taking of the CCSE exam over a 2-day period.

f.      Ordering AUA to immediately reinstate Plaintiff to the medical school so that she can (1) complete her remaining rotation to earn 3 credits for eventual graduation, and (2) requiring that both AUA and NBME to arrange for Plaintiff to sit the  CCSE exam over a 2-day period, at a suitable onshore facility, failing which Plaintiff shall be permitted to sit for the USMLE CK 2.

g      Compensatory and consequential damages for breach of contract and emotional distress.

h.      Punitive damages against AUA and MEA..

i.      Pre-judgment and post-judgment interest at the highest lawful rate

j.      Attorneys' fees and cost of this action;

k      Any such further relief the Court deems appropriate.

Respectfully submitted,

Debbie-Ann Bromfield-Thompson, *pro se*
1405 Kennedy Street, NW
Washington, DC 20011
Tel: 202-534-9164
Email: debibromfield@hotmail.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of Plaintiff's First Amended Complaint along with Plaintiff's Declaration and Exhibits has been served this 10th day of January, 2020 upon the following via US postal service priority mail

Evelyn Y. Pang
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Fl.
New York, NY 10036-2711

Attorneys for NBME

Robb W Patryk
i Battery Park Plaza
New York, NY 10004

Attorneys for AUA