Debbie-Ann Bromfield Thompson v American University of Antigua, et al.

Case No. 19-cv-6078

**EXHIBIT LIST**
**1-17**





COLLEGE OF MEDICINE

# STUDENT HANDBOOK
## Spring 2016



Exhibit 1

In order to satisfactorily complete each Clinical Core rotation, every AUA Student must receive a passing grade for the core rotation and must also pass the associated NBME CCSSE (please see the *AUA Clinical Rotations Guidelines* for subject specific passing scores). Any student who successfully completes a Clinical Rotation, but does NOT pass the associated CCSSE must re-sit and pass this exam on their second attempt. Students who need to re-sit the exam will be billed a $100 CCSSE re-scheduling fee on their AUA student account. If a student does not pass the CCSSE on the second attempt, the grade for the rotation will be changed to "F" and the student must retake the Clinical Core Rotation. All students receiving a grade of "F" for their rotation will be placed on academic probation until they have successfully repeated the previously failed rotation and must meet with the respective AUA Clinical Chair to review their performance. If a student does NOT pass both the remedial Clinical Rotation and the associated CCSSE on the third attempt, he/she will be subject to dismissal from AUA. A student who fails the same rotation twice or any other rotation while on academic probation is subject to dismissal.

The passing CCSSE score will be factored into the student's final grade of the rotation with a weight of 20%. Please see the *Grading System* section for additional information.

Once a student is assigned to a Clinical Core Rotation, the student's name, clinical assignment and dates of attendance are e-mailed to the Office of the Registrar by the Department of Clinical Science Administration (CSA). CSA will also notify the student of the CCSSE requirement on assignment of the core rotation. The relevant CCSSE is ordered with a two week testing window typically starting the last Saturday of the rotation and ending on the Friday of the week following the end of the clinical core rotation. Students are responsible for scheduling their exam once they have received their scheduling permit from Prometric. The Shelf Exam score will be received by the Office of the Registrar, via e-mail, from NBME within 72 hours from the last day of the two-week testing window. Results will be sent by e-mail to the student within one week from the end of the testing window. In case the student fails the exam the student will be notified by the Office of the Registrar that he/she has to re-take the exam.

### NBME Comprehensive Clinical Science Examination (CCSE)

All students who wish to apply for the Step 2 CK or CS must present a qualifying score of 79 or higher on the NBME Comprehensive Clinical Science Examination (CCSE). A student can sit for the CCSE after completing at least four core rotations. The CCSE will not factor in any grade; it serves as a qualifying exam only. There is no limit on the number of attempts at the CCSE.

12/18/16, 3:53 PM

# Re: Comp Exam

Bromfield Debbie-Ann

Tue 7/5/2016 11:39 PM

To: Kristal Booth <kbooth@AUAMED.ORG>;

Cc: Bell, Peter <pbell@auamed.org>; Sandra Sclafani <ssclafani@AUAMED.ORG>;

Dear Ms. Booth:

This is the first time that any attempt has been made to given me a halfway decent but less than ideal accommodation for taking the exam. The school is in flagrant violation of the ADA. The accommodation given for the first 3 exams was for time and a half, and then I realized that something was wrong and could not complete the exam without guessing when the time was running out. I paid $3000.00 for a re-evaluation and the conclusion was that time and a half was insufficient. I was then given double time but the problem was that I was not given any breaks. The school's lawyer then arranged for me to take the exam for an extended period to allow me to take breaks if I needed to do so. I sat the exam for 11 + hours with breaks in between but it just did not work out because I was way too physically crippled for the last blocks. I have had to fight for every single accommodation I have received from the school. The times that I was given time and a half ought not to count because inadequate accommodation (one and a half times) is tantamount to no accommodation. In actuality I have only take the exam twice under a flawed attempt for double time. I resent your characterizing the problems I have encountered under the accommodation you extended as "personal issues". This is rank insensitivity from an administrator who clearly has no regard for the ADA. Clearly, the school's approach to accommodation is based on "trial and error." AUA does not understand what it needs to do to accommodate students. It is done grudgingly and the tone of your letter suggests that I should have been more grateful. Why should I be grateful for something to which I am legally entitled and for which I have had to fight hard to get? Can you or Dr. Bell or any of the other administrators sit for 11+ hours with quick breaks in between looking at a computer screen in a stationary position? I should never have agreed to the flawed proposal for me to take the exam, but I was trying not to be unreasonable. I have no choice at this juncture but to file a lawsuit under the ADA in the US District Court. I had placed my complaint with the US Department of Education on hold in light of the fact that you were attempting to accommodate me, but I will now revive my complaint. **The US Department of Education contacted me several times to send them all the correspondence between AUA and myself just in case AUA's efforts at accommodating me did not work out. I kept delaying sending them the additional information because I wanted to give AUA the benefit of the doubt on this issue since the school's lawyer was purporting helping. I will now forward the additional information for their review and attention and possible prosecution of my claims. I foolishly thought that AUA was trying to work with me and I ignored the US Department of Education to send all the information immediately. You have punished me with dismissal because I complained about the adequacy of the accommodation.** For you not to stretch the exam over 2 days is cruel and unusual punishment. You were not able to accommodate me the way NBME recommended because you

Exhibit 2

lacked a US site or any affiliation with a US school to satisfy NBME's terms. Given all of this, the decision to dismiss me is shameful, disgraceful, and disgusting. Unless this hasty decision is rescinded I will also retain my own counsel to seek injunctive relief, reimbursement of all my tuition payments, and monetary damages and attorney's fees and cost for having suffered emotional distress. Believe me, there is no way I will accept this decision without legal and administrative action.Please note that the new policy ( 3 times to take the exam) does not apply to me.

Debbie-Ann Bromfield-Thompson

**From:** Kristal Booth <kbooth@AUAMED.ORG>
**Sent:** Tuesday, July 5, 2016 4:01:38 PM
**To:** Bromfield Debbie-Ann
**Cc:** Bell, Peter; Sandra Sclafani
**Subject:** RE: Comp Exam

Good afternoon Debbie-Ann,

Your email was forwarded to me from Ms. Sclafani. I am sorry to hear of the personal issues you faced while taking this exam. AUA's efforts (along with NBME and Prometric) to accommodate your testing needs have been more than reasonable and unfortunately we are unable to accommodate another attempt at this exam. This email is to confirm that based on your most recent score, you have been dismissed from the University. You will receive a formal letter of dismissal from the Promotions Committee within 1-2 weeks. If you wish to appeal this decision, you may do so at that time.

Best of luck to you in your future endeavors.

Sincerely,
Kristal

_____

**Kristal Booth**
University Registrar

**From:** Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
**Sent:** Tuesday, July 05, 2016 1:34 PM
**To:** Sandra Sclafani
**Cc:** Kristal Booth; Dr. Peter Bell
**Subject:** Comp Exam

Dear Ms Sclafani:

Ms. Barnes of AUA's Registrar suggested that I contact you with respect to issues concerning my accommodations and the comp exam. I just received a 72 score after last Friday's sitting of the exam. This is below the minimum 79 passing score required by AUA. This is also the best score I have attained after having been extended accommodation that was better than the previous ones. Despite this, I still had to be at the exam for 11+hours because this was the only accommodation that was feasible. The actual USMLE Step 2 gives 2 days for the exam. The exam started off great

for me but as I approached the 8.5 hours everything went down hill fast. Sitting the exam this long I was unable to fully concentrate for the last blocks as I suffered headaches /aches and pain.  Often times when I returned from the breaks the exam would disappear from the computer screen causing me to panic. The screen would go back to my face screen to enter my CIN # several times during my exam. I thought that was a technical issue because the exam was not meant to be programed for over 11 hours. I was a little concerned if all my answers were recorded but the proctor reassured me that everything should be fine.

I hate to come off as a chronic complainer, but I do know that my issues had nothing to do with lack of studying, and everything to do with the suffering and concentration problems I encounter towards the end of the exam being so long. NBME officials and AUA found this to be the only solution but I never thought that being in an exam for over 11 hours would have been so mentally and physically crippling. This experience was draining, the proctors were concerned towards the last two blocks and asked me if I was ok and why is my exam so long. At times I found myself trying to read and comprehend the questions while massaging my legs from the pain.  I honestly felt that I was going to get a DVT/PE. I tried to stand up and read the the questions but that just became awkward while trying to read questions. And I didn't want to be flagged for acting questionable during my exam. I was also accommodated by the proctor because the desk  had a large metal sheet underneath which prevented me from stretching my legs out.  The proctor allowed me to turn the monitor sideways which was not ideal but was better than keeping my legs bent.  This was in the separate room.

 I know this is the only solution since the exam couldn't be broken up into parts. I was reassured that the actual exam ( step 2 ck ) will be more "humane." What to do?" I just need to pass.

I am now contemplating seeking some form of medication that will alleviate the pains/ headaches were I to re-sit the exam.. Is that really the solution? Maybe I should of forfeited the exam having so many issues that day but I was only thinking about needing to pass, all the support I have received and move on with my career/further.

I would appreciate any assistance you may render. Please feel free to make any suggestions. I have to apply for residency this year because of the time I took to have my children. Time is not on my side.

Thank you

Debbie-Ann

# AMERICAN UNIVERSITY *of* ANTIGUA | COLLEGE OF MEDICINE

## Medical Student Performance Evaluation (MSPE)
Date Written: 6/29/16 for Debbie-Ann Bromfield-Thompson          Pg. 1

---

Dear Program Director:

This letter is an evaluation of the achievements of Mrs. Debbie-Ann Bromfield-Thompson, a student in good standing at the American University of Antigua College of Medicine (AUA).

Mrs. Bromfield-Thompson was awarded her Bachelor of Science degree in Biology from Howard University in Washington, D.C. in May 2000, graduating *magna cum laude*. In the fall of 2004, Mrs. Bromfield-Thompson attended St. Matthew's University School of Medicine in the Cayman Islands, Grand Cayman, where she completed the basic science portion of her medical education. When she matriculated at AUA, Mrs. Bromfield-Thompson transferred 83 basic science credits. In January 2008, she took the USMLE Step 1 exam and passed with a score of 193. In September 2010, she attended the 15-week Foundations of Clinical Medicine course, for which she received a B, and then awaited placement in her first rotation. Presently, she is completing her clerkships at teaching institutions in the United States.

Throughout her clinical education, Mrs. Bromfield-Thompson has been evaluated by clinical faculty on five core competencies: **Patient Interaction** (Student provided compassionate interaction that is effective for health promotion, wellness, and disease treatment); **Medical Knowledge** (Student demonstrated appropriate knowledge of the basic sciences and clinical sciences and applied that knowledge effectively); **Practice-Based Learning and Improvement** (Student had an understanding of evidence-based medicine and applied sound principles of practice within the context of patient care); **Interpersonal and Communication Skills** (Student established relationships with patients/families and counseled and provided education to them; Student maintained comprehensive, timely, and legible medical records) and **Professionalism** (Student demonstrated a commitment to professional development, ethical principles, and sensitivity to patient/family and peer diversity). Mrs. Bromfield-Thompson's Student Portfolio, containing information about her patient illnesses/diseases as well as academic curricular and extracurricular activities, is regularly reviewed by the faculty.

As of this writing, Mrs. Bromfield-Thompson's performance in the clinical setting has been excellent as she maintains a 3.67 GPA, which reflects the grades in her initial graded rotations of the 75 week curriculum as well as her grade in the Foundations of Clinical Medicine course.

Throughout her clinical clerkships, Mrs. Bromfield-Thompson was consistently rated as outstanding for her communication skills and she received very high marks for her professionalism, learning improvement and patient care. She earned outstanding grades on all of her assessed competencies from her internal medicine preceptor, who noted on the evaluation form that she was "proactive, patient and professional." Her pediatrics preceptor also rated her

Manipal Education Americas, LLC Representative for American University of Antigua
1 Battery Park Plaza, 33rd Floor, New York, NY 10004
1 (888) AUA-UMED | www.auamed.org


Exhibit 3

assessed skills as outstanding throughout the six-week rotation. Regarding her patient care, the physician commended her problem-solving skills and noted that she was "able to combine non-judgmental thought with family needs." The physician also commented, "She is a very compassionate, people-oriented student." Her psychiatry preceptor graded her interpersonal and communication skills as outstanding and noted that she "communicates well with team members and patients." The physician also referred to her as "compassionate and respectful." Mrs. Bromfield-Thompson also earned outstanding grades from her obstetrics and gynecology preceptor who commented that she was "both gracious and accommodating with patients" and praised how she "applied learned information to problem solving." The physician also was impressed with her bedside manner and noted, "She was concerned and compassionate and a good listener. She was appropriate and on cue with patient care." An evaluating physician on her family practice core clerkship was impressed with her "exemplary work ethic and empathetic demeanor with patients." The physician also commended her "very professional style and demeanor" and her "strong basic science foundation." "She works well with the team. She was very well-liked by patients and families. She performed thorough work ups and exams and she demonstrated good differential and treatment plans." Mrs. Bromfield-Thompson also earned outstanding grades on all of her assessed skills from a supervising physician on her vascular surgery elective rotation. The physician praised her "excellent interaction with patients" and noted that she was considerate and respectful. "She has a very good knowledge base and is quick to learn about new topics and educate herself. She has excellent communication with patients and members of the healthcare team. She is very professional in dress and behavior." The evaluator of her hematology/oncology elective remarked, "I enjoyed working with Debbie-Ann. She is professional and has a good fund of knowledge."

The listing of her completed rotations is as follows:

| Clerkship | Hospital | #weeks | Grade |
|---|---|---|---|
| **Core Rotations** | | | |
| Internal Medicine | Maryland General Hospital, Baltimore, MD | 12 | A |
| Pediatrics | Shady Grove Adventist Hospital, Rockville, MD | 6 | A |
| Surgery | Washington Adventist Hospital, Takoma Park, MD | 8 | A |
| Psychiatry | Adventist Behavioral Health, Rockville, MD | 6 | B |
| Family Practice | Medstar Union Memorial Hospital, Baltimore, MD | 6 | A |
| Obstetrics & Gynecology | Medstar Franklin Square Med. Ctr., Baltimore, MD | 6 | A |
| | | | |
| **Electives** | | | |
| Vascular Surgery | Washington Adventist Hospital, Takoma Park, MD | 3 | A |
| Urological Surgery | Washington Adventist Hospital, Takoma Park, MD | 4 | A |
| Reproductive Endocrinology & Infertility | Medstar Union Memorial Hospital, Baltimore, MD | 4 | A |
| Infectious Disease | | 4 | B |
| Pulmonary | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 4 | A |
| Hematology/Oncology | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 6 | A |
| Chemical Dependency | Univ. of Maryland Med. Ctr.-Midtown, Baltimore, MD | 3 | B |

Debbie-Ann Bromfield-Thompson says her interest in medicine evolved over time beginning with her high school education when she developed an aptitude for the sciences and then became interested in women's health issues. She shares, "While attending high school in Jamaica, I was part of a program that would visit the inner-city hospitals to comfort the sick. My experience in observing the lack of care given to these women and their resultant sufferings left an indelible imprint on my mind." Mrs. Bromfield-Thompson says her desire to pursue a career as a physician stems from her passion for helping others. Her background includes volunteering at Howard University Hospital in Washington, D.C. from June to August 1998. While attending Howard University, she worked as a biology teaching assistant from August 2000 to May 2002. She performed an internship and assisted with research in the field of reproductive endocrinology and infertility at Columbia Fertility Associates in Washington, D.C. from April to July 2008. More recently, from June to early September, she volunteered at Mary's Center for Maternal and Child Care, Inc. in Washington, D.C. where she assisted with prenatal care for uninsured and underinsured women.

On a personal level, Mrs. Bromfield-Thompson describes herself as a perfectionist. Outside of her interest in medicine, she is an avid golfer and enjoys cooking. She is affiliated with the American Congress of Obstetrics Gynecology. She also has devoted time to community outreach as she has volunteered with Habitat for Humanity in the Washington, D.C. area and she volunteered with the Cayman Red Cross while she was a student at St. Matthew's University School of Medicine and helped with clothing and food drives to aid victims of Hurricane Ivan.

Summarizing the above information collected from her records, Mrs. Debbie-Ann Bromfield-Thompson has proven herself to be a knowledgeable, professional and motivated medical student, who has demonstrated her eagerness to learn and the ability to apply her knowledge. As a clinical student at the American University of Antigua, Mrs. Bromfield-Thompson's performance in the clinical setting has been excellent as she maintains a 3.67 GPA, which reflects the grades in her initial graded rotations of the 75 week curriculum as well as her grade in the Foundations of Clinical Medicine course. She has stood out for her exceptional bedside manner as she was noted to have an exemplary ability to communicate with patients, family members and the healthcare team. Her clinical evaluators have praised her solid medical knowledge and her ability to apply that knowledge to the clinical setting as well as her strong work ethic. She is intelligent, confident, a keen learner and a good team player, respectful, empathetic and engaging. Debbie-Ann Bromfield-Thompson will certainly be a valuable asset to any residency program.

I trust that you will give Debbie-Ann Bromfield-Thompson's application for post-graduate training at your institution every favorable consideration.

Sincerely,

*J. Peter Bell*

Peter Bell, MD
Vice President Global Medical Education
Executive Dean, Clinical Sciences

PB/hl/jr/rz



AMERICAN UNIVERSITY of ANTIGUA    COLLEGE OF MEDICINE

**Appendix A**

About AUA

AUA was founded in 2004. Our MD program is one of only a few in the Caribbean that follows the clinically integrated U.S. model. Our Provost is the distinguished Seymour I. Schwartz, MD, who may be best known for his seminal textbook *Schwartz's Principles of Surgery*, a clinical companion utilized by nearly every medical school in the United States. AUA students are ECFMG eligible, and to date well over 1,000 of our graduates have been placed in more than 600 separate residency programs across the majority of the United States, plus Washington DC, Puerto Rico, Canada and the United Kingdom.

Among AUA's accreditations and approvals are the following:

- AUA is one of a select few medical schools whose campuses are in the Caribbean that is recognized by the Medical Board of California. This approval entitles AUA's students to participate in clinical clerkships while pursuing their medical doctorate degrees and to participate in residency training and to become licensed physicians upon graduation;

- AUA is similarly approved by the New York State Education Department, which entitles its students to engage in clinical clerkships and residency training in the State;

- The Commission for Independent Education of the Florida Department of Education has licensed AUA to provide clinical clerkship training of its students in the State;

- AUA is accredited by the Caribbean Accreditation Authority for Education in Medicine and other Health Professions (CAAM-HP). CAAM-HP was established in 2003 and is the legally constituted body for accreditation of medical, nursing, veterinary and other educational programs leading to practice in the field of heath care in the Caribbean Community (CARICOM) member countries. By legislation, CAAM-HP is the accreditor of medical schools for the Government of Antigua and Barbuda. With CAAM-HP as its medical school accreditor, Antigua and Barbuda has been recognized by the U.S. Department of Education as having standards and procedures for the accreditation of medical schools that are comparable to those of the Liaison Commission on Medical Education (LCME). In 2023, graduates of international medical schools will not be eligible for ECFMG certification unless their schools are accredited by a regional accreditor approved by the ECFMG. CAAM-HP was the first and, to date, the only regional accreditor that the ECFMG has so approved;

- The American Association of Physicians of Indian Origin (AAPI) has recognized AUA as a leader in international medical education. AUA is the only international medical school that has achieved this distinction.


Exhibit 4



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

October 21, 2016

Neal Simon
President, American University of Antigua
c/o Manipal Education Americas, LLC
One Battery Park Plaza, 33rd Floor
New York, New York 10004

Re:     Case No. 02-16-2201
        American University of Antigua

Dear President Simon:

This letter is to notify you of the determination made by the U.S. Department of Education,
Office for Civil Rights (OCR) regarding the above-referenced complaint filed against American
University of Antigua (the University). The complainant alleged that the University
discriminated against her on the basis of her disability (dyslexia) by failing to provide her with
appropriate testing modifications on the Comprehensive Clinical Sciences Examination (CCSE),
administered on July 1, 2016 (Allegation 1). The complainant also alleged that in retaliation for
complaining to the University on July 5, 2016, about the provision of testing modifications on
the CCSE on July 1, 2016, the University academically dismissed her on July 8, 2016
(Allegation 2).

OCR is responsible for enforcing Section 504 of the Rehabilitation Act of 1973 (Section 504), as
amended, 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, which prohibit
discrimination on the basis of disability in programs or activities receiving financial assistance
from the U.S. Department of Education (the Department). The University is a recipient of
financial assistance from the Department. Therefore, OCR has jurisdictional authority to
investigate this complaint under Section 504.

The regulation implementing Section 504, at 34 C.F.R. § 104.61, incorporates by reference 34
C.F.R. § 100.7(e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title
VI), 42 U.S.C. § 2000d et seq., which provides that no recipient or other person shall intimidate,
threaten, coerce or discriminate against any individual for the purpose of interfering with any
right or privilege secured by regulations enforced by OCR or because one has made a complaint,
testified, assisted or participated in any manner in an investigation, proceeding or hearing held in
connection with a complaint.

Exhibit # 5

# Clinical Core Shelf Exam Special Accommodations

### Antonia Craig <acraig@AUAMED.ORG>

Mon 12/2/2013 2:21 PM

Inbox

To: Antonia Craig <acraig@AUAMED.ORG>;

Dear Clinical Student,

You are receiving this email because you have recently begun a core rotation and will receive a permit for your core shelf exam in the upcoming weeks.

If you require testing accommodations you must have prior documentation on file at the University Counseling Services that indicates the disability and need for testing accommodations. Students who need testing accommodations for the CCSSE must have a history of using testing accommodations for their Basic Science courses.

If you require these accommodations for testing, you must email registrar@auamed.org no later than 9 a.m. within 5 business days from the scheduled start date of your current clinical rotation. If you do not respond by the specified deadline, accommodations cannot be made. It is mandatory to reply with your request for testing accommodations every time you receive this email.
Regards,

**Antonia D. Craig**
*Clinical Coordinator (P except last names beginning with PAT & S-Z)*
Manipal Education Americas, LLC agents for
[auamed.org]American University of Antigua College of Medicine
One Battery Park Plaza, 33rd floor
New York, NY 10004
(888) 282-6002
Fax: (646) 390-4947
acraig@auamed.org

   



# Re: Cancellation of Rotations

## Corey Greenberg <cgreenberg@AUAMED.ORG>

Wed 9/5/2012 6:11 PM

To:Bromfield Debbie-Ann <Debbie-Annb@auamed.net>;

Ms. Bromfield,
I apologize for the delayed response. Let our coordinators see what can be arranged. Unfortunately some changes in rotations are not within our control. Hospitals cancel rotations putting tremendous pressure on coordinators to make well thought out decisions. There is a wide range of variables they need to consider in order to manage the disruptive situation. It does seem unfair that you have had to bare the brunt of these cancellations.

Corey Greenberg
Vice President for Clinical Sciences Administration
Chief Marketing Officer
Manipal Education Americas, LLC agents for
American University of Antigua College of Medicine
One Battery Park Plaza, 33rd floor
New York, NY 10004
(212) 661-8899 x 121
Cgreenberg@auamed.org

On Sep 4, 2012, at 5:49 PM, "Bromfield Debbie-Ann" <Debbie-Annb@auamed.net> wrote:

Dear Mr. Greenberg:

I am writing regarding the sudden cancellation of my psychiatry clerkship scheduled for November 2012 at Sheppard Pratt Hospital in Baltimore, MD. This is the third time over a 9-month period that courses that were scheduled on my behalf were suddenly cancelled for the same reason: upper classmen must be given priority. I was scheduled to do psychiatry at St. Elizabeth Hospital in Washington, DC, in January of this year and I suffered the same cancellation fate. There were many e-mail exchanges on the matter with the clinical coordinators who are no longer working at AUA to the point where Dr. Bell had to get involved. I was also scheduled for Surgery at Washington Adventist Hospital in June of this year, but this was also cancelled for the reason stated above. At the time of the last cancellation of surgery I was assured that at least in my case it would not be repeated.

In anticipation of beginning my clinical rotations during the Fall of this year I had gone out and hired a nanny (I recently gave birth). Completing rotations do take planning because my husband and I just had our first child. I had planned to complete psychiatry this year (it is in driving distance of my home) and begin the other rotations at the far off places next year, at which time my child would be older, making travelling less cumbersome. Given what I have gone through I ought to have been given consideration over any upper classmen (who in any event will not graduate until May 2013, and if granted a residency would not start until July 2013). Again, I was promised that my rotation would not be touched because of what I had been through.

I am asking that you reconsider your decision to cancel my rotation in psychiatry or in the alternative offer me

Exhibit 7

To: Maria Cepeda
Subject: Re: Next Elective

Hi Maria:

A rotation at ICU will not work because it is right at the time I will be doing my practice exam. I spoke with Melissa and she said she would be speaking with Dr. Bell about approving me for 4 weeks. I don't know whether you have yet spoken to her. Thanks for your efforts, and let me know the outcome.

Thanks

Debbie-Ann

_____

From: Maria Cepeda <mcepeda@AUAMED.ORG>
Sent: Friday, May 20, 2016 11:43:09 AM
To: Bromfield Debbie-Ann
Subject: RE: Next Elective

Hi Debbie,

How about ICU at UMMC, 5/23/16 - 6/10/16?

Sincerely,

_____

Maria Cepeda
Clinical Coordinator

p: (212) 661-8899, ext. 213
f: (646) 390-4947
mcepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004
www.auamed.org

DISCLAIMER:
This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Manipal Education of Americas, LLC Agent for American University of Antigua College of Medicine, and any of its subsidiaries each reserve the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.

Exhibit 8

-----Original Message-----
From: Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
Sent: Thursday, May 19, 2016 9:52 PM
To: Maria Cepeda
Subject: Re: Next Elective

Hi Maria:
I have no idea what hospital offers 3 weeks. I am willing to do the extra week. I need to get this CLOA out by tomorrow. I need to have a rotation schedule. Do you have any suggestions?

Thanks
Debbie-Ann

_____
From: Maria Cepeda <mcepeda@AUAMED.ORG>
Sent: Thursday, May 19, 2016 12:45:45 PM
To: Bromfield Debbie-Ann
Subject: RE: Next Elective

Hi Debbie-Ann,

You only need 3 weeks to fulfil your graduation requirement. Please choose another hospital to complete the 3 weeks.

Sincerely,

_____

Maria Cepeda
Clinical Coordinator

p: (212) 661-8899, ext. 213
f: (646) 390-4947
mcepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004
www.auamed.org

DISCLAIMER:
This message is for the named person's use only. It may contain confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mis-transmission. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. Manipal Education of Americas, LLC Agent for American University of Antigua College of Medicine, and any of its subsidiaries each

Exhibit 9

p: (212) 661-8899, ext. 213
f: (646) 390-4947
mcepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004
www.auamed.org <http://www.auamed.org/>

DISCLAIMER:

This message is for the named person's use only.  It may contain confidential, proprietary or legally privileged information.  No confidentiality or privilege is waived or lost by any mis-transmission.  If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender.  You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient.  Manipal Education of Americas, LLC Agent  for American University of Antigua College of Medicine, and any of its subsidiaries each reserve the right to monitor all e-mail communications through its networks.  Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.

From: Maria Cepeda
Sent: Monday, May 16, 2016 9:58 AM
To: 'Bromfield Debbie-Ann'
Subject: RE: Next Elective

Hi Debbie-Ann,

St. Elizabeth's Hospital usually schedules electives for 4 or 6 weeks.  Since these are your last 3 weeks, I'll ask them if they are able to accommodate you.

Sincerely,

Maria Cepeda
Clinical Coordinator

p: (212) 661-8899, ext. 213
f: (646) 390-4947
mcepeda@auamed.org <mailto:mcepeda@auamed.org>

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004


Exhibit 10

revious emails to each other. I was the one who asked Dr. Bell for approval which was approved the same day.

hanks
Debbie-Ann

_____

From: Maria Cepeda <mcepeda@AUAMED.ORG>
Sent: Monday, May 23, 2016 3:41:52 PM
To: Bromfield Debbie-Ann
Subject: RE: Next Elective

Hi Debbie- Ann,

Dr. Bell approved the 4 week rotation.  Which dates then do you want to schedule ICU at UMMC?

Thank you,

_____

Maria Cepeda
Clinical Coordinator

p: (212) 661-8899, ext. 213
f: (646) 390-4947
mcepeda@auamed.org

Manipal Education Americas, LLC Representative for American University of Antigua College of Medicine

1 Battery Park Plaza, 33rd floor
New York, NY 10004
www.auamed.org

DISCLAIMER:
This message is for the named person's use only.  It may contain confidential, proprietary or legally privileged information.  No confidentiality or privilege is waived or lost by any mis-transmission.  If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender.  You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient.  Manipal Education of Americas, LLC Agent  for American University of Antigua College of Medicine, and any of its subsidiaries each reserve the right to monitor all e-mail communications through its networks.  Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.

-----Original Message-----
From: Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
Sent: Friday, May 20, 2016 12:44 PM



AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.   19-cv-6078 (JMF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   American University of Antigua/Manipal Education Americas, LLC s/h/a GCLR, LLC

was received by me on *(date)*   10/04/2019   .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)*   Anita O' Brien, Legal Department, at 1:09 P.M.   , who is

designated by law to accept service of process on behalf of *(name of organization)*   American University of Antigua

Manipal Education Americas, LLC s/h/a GCLR, LLC   on *(date)*   10/08/2019   ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   10/8/19

_____
*Server's signature*

Augustus Wilson/ Process Server# 2066221
*Printed name and title*

1412 Broadway
New York, NY 10018

_____
*Server's address*

Additional information regarding attempted service, etc:

Served at One Battery Plaza, 33rd Floor. New York, NY 10004



# RE: Nbme Contact

## Cheri Kershen <ckershen@nbme.org>

Fri 1/15/2016 4:11 PM

To:Craig Hauser <chauser@auamed.org>;

Cc:Bromfield Debbie-Ann <Debbie-Annb@auamed.net>; Bell, Peter <pbell@auamed.org>; Subject Exams <SubjectExams@NBME.org>; Nicole M. Smith <NSmith@nbme.org>;

Hello Craig,

I noticed from the attached email that Debbie-Ann spoke to the USMLE team regarding accommodations. Accommodations for the USMLE Program function differently than accommodations for the Subject Examination Program. Prometric currently is unable to provide two-day testing for subject examinations. However, subject examinations can be administered over a two-day period if administered at a medical school/institution.

As you are aware, American University of Antigua currently does not administer subject examinations at the medical school. If Debbie-Ann would like to take the CCSE at an institution where she is doing a rotation, that institution must currently administer subject examinations. Next, the Executive Chief Proctor (ECP) at AUA needs to make arrangements with the ECP of the other medical school/instituion with the understanding that both parties are responsible and liable for the administration of NBME examinations in compliance with all of the requirements outlined in the Procedures Manual for Executive Chief Proctors (ECPs) and with the knowledge that, in the event of a security breach, testing at both schools could be suspended from giving NBME Subject Examinations.

If both ECPs agree, the NBME will work with AUA and place the order for the exam and we will provide the proctor (at the other institution) with instructions for administering the exam.

Hope this information is helpful.

Cheri M. Kershen
Manager, Test Administration
Medical School  Services
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102
Phone: 215-590-9718
Fax: 215-590-9456
Email: ckershen@nbme.org

EXHIBIT 13

**From:** Craig Hauser [mailto:chauser@AUAMED.ORG]

 **NBME**

# Administration of NBME Examinations at Prometric Test Centers

The comprehensive and clinical science web-based subject examinations and the Emergency Medicine Advanced Clinical examination may be ordered for administration at Prometric's worldwide network of 350 secure, convenient test centers. Prometric testing may be preferred for students serving on clinical rotations in a distributed hospital network or for those located at sites without web-based test delivery.

This document provides basic information on ordering, fees, and related information to request administration of an NBME subject examination to your students at Prometric Test Centers. If you have any questions, please contact us at **subjectexams@nbme.org**.

## Examinations Available at Prometric Test Centers

- Clinical Neurology
- Comprehensive Basic Science
- Comprehensive Clinical Science
- Emergency Medicine Advanced Clinical
- Family Medicine Modular

- Medicine
- Ob/Gyn
- Pediatrics
- Psychiatry
- Surgery

> *You must place your order no later than 28 days prior to the start of the testing window.*
>
> *But plan ahead—place your order as far in advance of your anticipated testing window as possible.*
>
> *Even at 28 days, there may be a risk that your students will not be able to test within the window due to Prometric seat availability.*

## Ordering

The online ordering system allows you to provide information for Prometric test administration. Testing at Prometric centers requires some more advanced planning to allow students sufficient time to schedule testing appointments.

- When you order a web-based exam for administration, you will select Prometric Test Centers as the testing location.
- *You will set a testing window of a minimum of 7 to a maximum of 14 calendar days.* This is necessary because your students may have trouble finding a seat on a single test date.
- The order will lock 21 days prior to the start of the testing window. You cannot make changes to your order after that.

## Populating Your Test Administration Roster

The NBME roster system, which supports the administration and scoring of its web-based exams, has two components: a master roster for maintaining the records of all students and a test administration roster specific to the test date or window. If you have not used NBME web-based exams before, you must create your master roster first.

*Exhibit 13 A*

*June 2016*

- An e-mail address is required for every student. You will have the option to enter the e-mail address for each record individually, or to upload a file with e-mail addresses to the master roster.
- You must create your test administration roster *no later than* 21 days prior to the start of the testing window.

## Scheduling a Testing Appointment

After you submit the test administration roster, the NBME will generate a scheduling permit for each student on the roster in about 2 to 3 business days. There are exceptions if the student requires test accommodations (see Arranging for Test Accommodations below).

Your students:

- will receive an e-mail with a link to a web page where they can print/download their scheduling permits and view policies and procedures for the testing session.
- will schedule their testing appointment online through Prometric's website and receive a confirmation notice from Prometric.
- can reschedule their testing appointments (only within the testing window) or cancel them, but if the request is made *less than 15 days prior to the scheduled appointment*, Prometric will charge a fee. Fees for rescheduling/cancellation appear on the confirmation notice.

## Arranging for Test Accommodations

It is essential that you follow the specific procedure outlined below in order for the NBME to make arrangements for your students to take an examination with test accommodations at a Prometric Test Center. Please note that the decision to provide an accommodation is still yours, as it is with locally-delivered NBME web-based examinations.

To notify the NBME about students who need test accommodations, you will:

- enter the number of students who need extra testing time along with the appropriate pacing (1.25x, 1.5x, or 2x) into the online order.
- edit the related student records on the test administration roster by setting the pacing and/or clicking in the "other accommodations" field and selecting a Prometric testing region (e.g., US, Asia).
- download an Excel file from this roster.  It will be pre-populated with these records.
- send the file to the NBME as instructed.

> *Students who need accommodations will not be able to schedule their testing appointments online.  Their permits will provide instructions to call Prometric (based on the testing region) to schedule their testing appointments.*

NBME staff will review the file and send the information to Prometric. *Scheduling permits for these students will not be generated until this process is complete.* Depending on the nature of the accommodation, this process could take as long as 2 weeks, so please enter your order as far in advance of the testing window as possible.

Please note that Prometric test centers are secure facilities and that students are prohibited from bringing personal items into the secure testing room. If an examinee requires use of a personal item for medical reasons during the testing session, you will need to approve this as a test accommodation and enter specific information about the item you are approving on the Excel file that you send to the NBME. Note that Prometric has administrative policies about certain types of items that are not permitted for use in the regular testing room, even with your authorization, and the student may be required to test in a separate testing room. Items that require use of a separate testing room at Prometric generally include food, drink, and injectables (glucometer with fingerstick, syringes, etc).

## Exam Fees

Fees are posted on the NBME website (www.nbme.org) and are subject to change.

## Assigning Different Examination Forms to Enhance Security

As you know, the NBME has multiple forms of each exam available during an academic year. These forms have been scaled and equated so that your students' performance is directly comparable across the different forms.

When you order subject exams for local administration, form assignment is made at the order level, so all students take the same form. However, since your students will be taking these exams at Prometric test centers during a 7 to 14 day window, form assignment will be made at the examinee level. This means that your students will see different forms of an exam during the window, which minimizes the risk of sharing test content.

## Viewing Score Reports

Score reports will be posted to the NBME Services Portal within 2 to 3 days AFTER the end of the testing window.

If you have any questions, please contact us at **subjectexams@nbme.org**.

*June 2016*

lacked a US site or any affiliation with a US school to satisfy NBME's terms. Given all of this, the decision to dismiss me is shameful, disgraceful, and disgusting. Unless this hasty decision is rescinded I will also retain my own counsel to seek injunctive relief, reimbursement of all my tuition payments, and monetary damages and attorney's fees and cost for having suffered emotional distress. Believe me, there is no way I will accept this decision without legal and administrative action.Please note that the new policy ( 3 times to take the exam) does not apply to me.

Debbie-Ann Bromfield-Thompson

**From:** Kristal Booth <kbooth@AUAMED.ORG>
**Sent:** Tuesday, July 5, 2016 4:01:38 PM
**To:** Bromfield Debbie-Ann
**Cc:** Bell, Peter; Sandra Sclafani
**Subject:** RE: Comp Exam

Good afternoon Debbie-Ann,

Your email was forwarded to me from Ms. Sclafani. I am sorry to hear of the personal issues you faced while taking this exam. AUA's efforts (along with NBME and Prometric) to accommodate your testing needs have been more than reasonable and unfortunately we are unable to accommodate another attempt at this exam. This email is to confirm that based on your most recent score, you have been dismissed from the University. You will receive a formal letter of dismissal from the Promotions Committee within 1-2 weeks. If you wish to appeal this decision, you may do so at that time.

Best of luck to you in your future endeavors.

Sincerely,
Kristal



_____

**Kristal Booth**
University Registrar

**From:** Bromfield Debbie-Ann [mailto:Debbie-Annb@auamed.net]
**Sent:** Tuesday, July 05, 2016 1:34 PM
**To:** Sandra Sclafani
**Cc:** Kristal Booth; Dr. Peter Bell
**Subject:** Comp Exam

Dear Ms Sclafani:

Ms. Barnes of AUA's Registrar suggested that I contact you with respect to issues concerning my accommodations and the comp exam. I just received a 72 score after last Friday's sitting of the exam. This is below the minimum 79 passing score required by AUA. This is also the best score I have attained after having been extended accommodation that was better than the previous ones. Despite this, I still had to be at the exam for 11+hours because this was the only accommodation that was feasible. The actual USMLE Step 2 gives 2 days for the exam. The exam started off great



**AMERICAN UNIVERSITY** *of* **ANTIGUA** | COLLEGE OF MEDICINE

8th July, 2016

Ms. Debbie-Ann Bromfield-Thompson
52 Hamilton St. NW
Washington DC, 20011
USA

Dear Ms. Bromfield-Thompson,

This letter is to inform you that you have been academically dismissed from the Medical Program. The reason for your dismissal is that you have failed to meet the conditions of readmission.

This decision was taken by the Promotions Committee as per the American University of Antigua's policy stated in the Student Hand Book.

You have the right to submit a written appeal of this decision to the Appeals Committee within seven (7) days of receiving this letter.

Sincerely,

Dr. H. A. Morcos, MD, Ph.D
Chair of Promotions Committee
Professor & Chair of Pharmacology
American University of Antigua
College of Medicine



EXHIBIT 15

From: Bromfield Debbie-Ann <Debbie-Annb@auamed.net>
To: cspencer@campus.auamed.net <cspencer@campus.auamed.net>
Cc: hmorcos@campus.auamed.net <hmorcos@campus.auamed.net>; Bell, Peter <pbell@auamed.org>;
debibromfield@hotmail.com <debibromfield@hotmail.com>
Subject: Re: ATTENTION!!
Date: Mon, Jul 11, 2016 9:14 am

Dear Dr. Morcos:

I am shocked to have received a letter from the Office of the Promotions Committee regarding my dismissal since I have had no dealings with anyone in Antigua on the issues that precipitated my dismissal. The dismissal letter was sent by University Registrar, Ms. Booth, who stated that AUA was unable to "accommodate" me anymore. Contrary to the suggestion of your letter, I am not being promoted to anything and your letter claimed that I "failed to meet the conditions of readmission." I don't know what is meant by this. As suggested in your letter, I reviewed AUA's policy as stated in the handbook and found nothing therein that appears to apply to my situation insofar as "conditions of readmission" are concerned. Nothing in the handbook appears to give this Promotions Committee appeals' authority over dismissals for students who were unsuccessful on the CCSE. The form that was attached to your email has a category for Date of Comprehensive Shelf Examination/USMLE Step 1. I do not fall in the category of someone taking the comprehensive shelf examination or the USMLE Step 1. This can be confirmed with Ms. Booth who sent the dismissal email characterizing my problems with the accommodation offered by AUA as "personal issues", and "dismissing" me because AUA could no longer "accommodate" me for the comp. exam and the score received.

I was never a student in Antigua and I was not seeking any promotion to any semester or receive a failing grade in basic sciences, etc. All my dealings occurred with personnel in New York City where Clinical Sciences Department is located. I have completed virtually all the requirements for my MD for which I am just 3 credit hours short (with a scheduled elective). As stated previously, Ms. Booth wrote a dismissal email noting that they were unable to "accommodate" me anymore with respect to the CCSE exam and the score received. What is very strange about Ms. Booth's action and the action of others is the fact that I fall under the school's policy that unequivocally states that there is no limit on the number of times I am able to take the CCSE exam. I am at a loss to see just how your letter and attachment which address issues regarding "promotions" and comprehensive shelf exam/USMLE Step 1" would constitute a proper process for appealing the dismissal email from Ms. Booth. If you do not have a copy of Ms. Booth's dismissal email, please let me know and I will be happy to send it over. I expected to receive a dismissal letter on the school's letterhead reflecting the views of Ms. Booth since she represents AUA's decision. I cannot execute my rights as a "student" who requires accommodations with fabricated reasons stated **for the reason** of my dismissal in your letter to me. At the very least, there ought to be consistency and not confusion. Please send me some type of clarification so all the parties now involved can understand which policy applies to me.

Thank you.


Exhibit 16

## DEBBIE-ANN BROMFIELD THOMPSON APPEAL OF HER DISMISSAL

On July 5, 2016, I received an email from Registrar Booth noting that I was being dismissed from AUA because (1) I had earned a score of 72 on the CCSE exam, and (2) AUA was no longer able to offer me accommodation for the CCSE. This dismissal was triggered by a complaint I was instructed to send by the Registrar's Office to Ms Sandra Sclafani regarding the problems I had with taking the CCSE exam. That letter explained that even with extra time built into the exam it was still too long as I had to take the breaks without the benefit of having a watch or time keeping device which are not allowed in the prometric center once the exam has started. I pointed out in my letter that the first two blocks of the exam went great, but that the last two blocks went downhill because I was tired and distracted by the pain in my leg from sitting too long and became confused. I never heard back from Ms Sclafani. Instead, I received an email from Registrar Booth dismissing me from the school for the reasons stated above. A letter was also sent to me from AUA's Antigua Office by email dated July 8, 2016 regarding "readmission", and because the letter and attachment appeared not to apply to my situation I asked for clarification but received no response. At the very least if someone is unclear about their dismissal and ask for clarification one should be given.

### Permissible Times To Take the CCSE: Violation of the Policies Set Forth In the Student Handbook

AUA's Student Handbook states that a student is allowed to take the CCSE as many times as possible. The only exception related to students entering their 4th year on or after May 4th, 2016. I fall into the category of a student being able to take the exam as many times as possible. I have taken the CCSE a total of 5 times. The first 3 times I took the exam I was given less than optimal accommodation time: I was given time and a half when I was entitled to double time. I notified Dr.Peter Bell, Dean of Clinical Sciences, of the problems and based on the recommendation offered by Dr. Rice I paid $3000.00 to obtain an updated report. Paying all this money for an updated report was unnecessary because I had already sent a report from my psychologist to Dr. Rice in Antigua which I learned he was unable to locate. The first report stated that I should receive up to double time and do all my exams in a separate room. Instead of Dr. Rice admitting he could not find my report or just didn't read it and interpret it appropriately, he had me pay to complete a new report. During this time, had so much time elapsed with myself and Mr. Vargas not hearing from Dr. Rice in a timely manner, I missed the deadline to register for the CCSE exam.

The Handbook also states that I have 6.75 academic years to complete my MD Degree. This meant that I had until June 2017 to complete my Degree. I was only 3 credits shy of completion at the time of dismissal. However, Dr. Peter Bell, Dean of Clinical Sciences, imposed arbitrary deadline dates for me to complete the USMLE Step 2 and the CS. The first deadline was March 30th, 2016. However, he was forced to change the date because the clinical department was unable to arrange for my accommodation to take the exam in a timely manner. As a consequence, he agreed with my request to extend the deadline for completion and passage of the USMLE Step 2 and CS to July 30th, 2016. There was no basis for the setting of these arbitrary deadlines except to rid me from the school because my accommodation requests had become burdensome. By various regulatory bodies and laws a student with my type of learning disability should have never been given these deadlines. To imposed a timeline for a student like me which takes away time needed to complete my medical program is just cruel. I just wish that someone would have done some research and realize that "time" is valuable to students such



as myself. Time ought to be added not taken away. Moreover, my explaining that the deadlines were unworkable fell on deaf ears. I have sent several emails stating that NBME disability services department takes a minimum of 60 days to process my accommodation after the school has certified me to take the USMLE Step 2 CK/ CS exams. My files also contain numerous correspondence on my accommodation complaints and requests. In fact, my ultimately taking the CCSE exam on July 1st, occurred because my husband, who is an attorney, contacted Dr. Bell about the flawed accommodation extended for the CCSE, and he in turn had referred the complaint to AUA's attorney who entered into a special arrangement with the prometric center (without my consent) and NBME to permit me 2.5X extended time which made the exam 11+ hours with breaks to be taken at my discretion. For the reasons stated above, this did not work out because of all the problems described herein.

The dismissal violated the spirit and rules of the handbook. It was punitive, callous, and vexatious. The American with Disabilities Act and implementing regulations are clear that punishment cannot be meted out because an entity is unable to grant an accommodation. Accommodation is a right not a privilege. I understand that AUA was unable to allow me to take the exam over a 2-day period because NBME for whatsoever reason will only permit AUA students to take the exam at the prometric center. To date, no one from AUA is able to refer me to any specific provision in the handbook that justifies the dismissal action. This is why correspondence received from AUA about the dismissal mentions the handbook in general terms but cannot specify what rule or policy applies to me.

## THE ACCOMMODATION EXTENDED BY AUA WAS TANTAMOUNT TO NO ACCOMMODATION

If AUA had reviewed my psychological report they would have recognized that my accommodations requests were modest compared with what the report required. For example, I had never asked AUA to find me someone to assist me during my various clinical rotations as recommended by the report. Every time I sought extra time beginning with the shelf exams there were problems. On one occasion Craig Hauser, Vice President of Student Affairs, insisted that I pay an extra $400.00 for an extra room (which was recommended by the report) in order to sit for the shelf exam. When I contacted NBME, I was told that they had no such policy or rule. I was so tired of the back and forth that I went ahead and paid the money to AUA. I then decided to just stop requesting the separate room because it was becoming expensive. Most of the times the prometric would give me a room without charge if one was available. The Department of Justice Regulations expressly prohibits the charging of any extra fees for the grant of accommodation. I believe this was done in order to discourage me for seeking full accommodation (See Attachment).

My Accommodation while at AUA was limited to the grant of extra time. My first request for accommodation was made in 2010, where AUA accommodation policy was limited to one paragraph in the handbook. Now there are several pages about Accommodation as it only pertain to taking test/exam. Anything beyond this appears to be burdensome to AUA's personnel. When I requested that I be allowed to take the exam over a 2-day period staffers in the administrative department were so impacted by the request that disarray ensued. I will not attach the flurry of emails that were generated on this issue, but it ranged from my being told categorically that it was not possible to being told that NBME would not permit me to take the USMLE Step 2 over a 4-day period. This was very strange because the USMLE Step 2 was not

an issue and it was a known fact that NBME gave Step 2 over a 2-day period for students needing testing accommodation via extended time and a separate room.  Because of all the confusion I personally contacted NBME where I learned that it was possible to take the CCSE over a period of 2 days.  I notified Dr. Bell of this and he indicated that he believed I was mistaken and perhaps confused as this was not possible.  Somehow the school communicated with NBME and a letter was sent back to them on which I was copied (Attachment 2) indicating that I could take the exam over a 2-day period. I doubt that I would have known the 2 day accommodations was possible if Cheri from NBME did not see my email below Mr. Hauser's email to her and decided to included me in the conversation. After this discovery in January, Mr. Hauser never got back with me to share the information until I email him in February to find out what was happening.  At that point Dr. Bell referred me to AUA's Ombudsman.The reason why NBME was able to propose 2 days for the CCSE is because of their experience with the US schools for students needing accommodations. I now started to believe that certain officials from AUA were not in the business making sure that the conditions of my  accommodations reflect my aptitude and achievement level, as opposed to my learning disability.

I felt as if my accommodation had become part of a relay.  First, Mr. Hauser got involved, then I was referred to Mr. Juli Valtschanoff in Antigua who gave the impression that he had some type of contact with University of Maryland Medical School or Johns Hopkins Medical School to determine whether either school would permit me to sit the exam over a 2-day period at their facility.  After a little more than a month had elapsed, Mr. Valtschanoff sent me an email stating that his attempts to find an affiliate school to facilitate my taking the exams over 2 days had failed and he directed me to take the exam like any other students needing accommodation. For Mr. V to call these school knowing that AUA has no affiliation to make such a request was just nonsensical and distractive. Mr. V's  email exemplified the fact that he had no idea about accommodation issues.  As far as he was concerned all accommodation was the same whether based on physical disability or cognitive issues.  It was disturbing that someone in the hierarchy of administration had such little understanding of the differences amongst students that would necessitate differing accommodation.  I was also referred to Ombudsman Tim Donnelly who was just clueless about the issues through no fault of his own as accommodation issues were not his area of expertise. I have correspondence from all these people which I can furnish if necessary. I was just being passed around and my time for having the necessary requirements for match was running out.( This process for the exam on July 1, 2016 took 6 months)

It became clear that AUA was not able to accommodate me by way of finding a facility where I was able to sit the exam over a 2-day period.  Because of this, I volunteered to take the USMLE Step 2 provided that AUA would waive the CCSE exam.  The USMLE is given over a 2-day period.  Here is why.  NBME in accordance with their settlement with the United States Justice Department and their continuing responsibility to follow the ADA's guidelines and regulations recognizes that there ought to be some parity in exam taking between students needing no accommodation and students who do.  **To make the students needing accommodation functionally equivalent to the students needing no accommodation the CCSE is given over a 2-day period - 4 hours each day - to students needing accommodation. Students who need no accommodation sit the exam for 4 hours.  The same is true for the USMLE Step 2 CK which is double the time.  Students needing no accommodation would sit the Step 2 for 8 hours with breaks in between.  Students who need accommodation would sit the exam for 8 hours each day (as sitting for 16 hours would be inhumane and lacks parity).** AUA is making a faulty comparison between the two exams.  The focus is the comparison

between the non-accommodated students (4 hours) and accommodated students (4 hours each day for 2 days) in the case of the CCSE. With respect to the USMLE Step 2, the focus between non-accommodated students (8 hours) and accommodated students (8 hours each day) for the CK. The culture of administrators in the clinical administrative department exudes the belief that somehow I may be seeking an unfair advantage in the taking of the exam or making up excuses for not succeeding on the exams. A deeper analysis of the issues will reveal that my under-graduate grades (3.7) and medical school grades (3.67) belie any inference that I am someone seeking special breaks on exams. My condition is complex and one would have to delve into the intricacies of the report( which is confidential and not for review by the appeals committee) that ought to be on file and accessible only to those persons having a right to read the report to have a fulsome appreciation of what is happening.

I am not alone with this malady: the CEO and Chief Medical Officer of the Cleveland Clinic has written his own story about his travails in medical school because of his condition. The same is true for Dr. Benjamin Carson who writes that no one understood his condition. But we are now in 2016, and the days when accommodation issues were simply ignored or cast aside ought to have been confined to the ash heap. Yale Medical School has an entire center devoted to ad-vocacy for dyslexic medical students.

I am very well versed regarding my condition and accommodation issues. I am very frustrated by anyone who exhibits a cavalier attitude towards my accommodation issues and suggests that I am in any way dumb or stupid because I do not do well on an exam for which I was not ade-quately accommodated. I need the extra time to process the materials in the exam but it ought not to be given in a manner in which I suffer to the point where the extra time begins to yield di-minishing returns. At this point it is my disability being tested not my knowledge. For example, studies have consistently shown that a student with my condition increases his/her score by 20 points on standardized exams when properly accommodated, whereas, a student needing no accommodation increases his/her scores by a mere 2 points when given the same amount of time for students who were accommodated.

This is an appeal. I am not here to lecture anyone on the issues regarding my accommodation. The correspondence with the clinical administrative department is voluminous and clearly shows what transpired. Indeed, AUA's handling of the matter always comes down to giving extra time. But this does not always satisfy the requirements of the ADA as a person with disability is entitled not just to whatever accommodation the testing agency offers, but rather to the "best" and most effective accommodation that ensures that the test is a measure of that individual's abilities and not his/her disability. This language comes directly from the ADA and has been adopted by the courts. Here, the best and most effective accommodation for me is to take the exam over a 2-day period which AUA is unable to accommodate. Therefore, "dismissal" appears to be the choice the school found most appealing as opposed to waiving the CCSE and allowing me to take the exam. If AUA understood the issues and the ramifications of their dismissal ac-tion they would never have taken the action they took. Dismissing me in a letter which stated that AUA can "no longer" accommodate me is wrongful, vexatious, and in violation of the ADA. This action ought not to stand and AUA should remove the dismissal and restore the status quo. I thought I was giving the school an "out" by agreeing to take the USMLE Step 2 over a 2 day period without having to take the CCSE, thereby relieving AUA of having to find an appropriate facility for me to take the exam as recommended by NBME. Somehow this request has been viewed differently by folks in the clinical administrative department. Again, anyone who believes I am just trying to get a "pass" does not understand the particular accommodation issues. All my

life I have had to deal with my learning disability and have excelled through my academic years. I have to work twice as hard than those who do not have my type of disability. There is no magic pill I can take causing it to just go away. I had to worked very hard and was required to know large volumes of information during my clerkships and electives. Given my type of disability this would have been seen by some including some administrative officials as a difficult task but with hard work and my goal of becoming an OB/GYN I was able to leave an exceptional impression with the various Attendants with whom I worked. This can be seen in my grades and the personal comments received by my Superiors/Attendants. My Learning Disability is not about intelligence but about "reading time" and "processing/decoding" the information presented. I have two young boys and at times I pray that they do not inherit my learning disability but if they do they are growing up in a country that has endless resources and laws that will protect them as students where obtaining the "best" education is a right not a privilege.  To my disadvantage, I never wanted to be seen as unreasonable and time and opportunities for residency just passed me by.. The only good thing that can come out of this unjustified dismissal is that I now know my rights as a student requiring accommodation to complete my medical program.


Thank You,
Debbie-Ann Bromfield-Thompson



# FedEx
## Express





RECEIVED
JAN 14 2020
PRO SE OFFICE

USDC SDNY

TRK# 7795 6059 6296
0201

E3 PCTA

ORIGIN ID:MXYA   EVERALD THOMPSON   (202) 538-7338
52 HAMILTON ST NW
WASHINGTON, DC 20011
UNITED STATES US

TO
SDNY PROSE UNIT
500 PEARL ST
NEW YORK NY 10007

(000) 000-0000
INV:
PO:
REF:
DEPT:

SHIP DATE: 09JAN20
ACTWGT: 0.50 LB
CAD: 6980792/SSF02C

BILL CREDIT CARD

FRI – 10 JAN 10:
PRIORITY OVERNIG

NY-US
EW

Align top of FedEx Express® shipping label he