UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEBBIE ANN BROMFIELD-THOMPSON,

                Plaintiff,

    v.

AMERICAN UNIVERSITY OF ANTIGUA/
MANIPAL EDUCATION AMERICAS, LLC,
aka GCLR, LLC et al.,

                Defendant.

No. 19-CV-06078 (JMF)

---

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**<u>BY THE NATIONAL BOARD OF MEDICAL EXAMINERS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY.................................................................................................. 2

BACKGROUND ................................................................................................................... 3

I.      PARTIES ................................................................................................................... 3

II.     NBME SUBJECT EXAMINATIONS .................................................................... 3

III.    ALLEGATIONS RELATED TO THE CCSE ....................................................... 5

ARGUMENT ......................................................................................................................... 8

I.      THE COURT LACKS PERSONAL JURISDICTION OVER NBME............................. 8

        A.      Standard of Review.......................................................................................... 8

        B.      NBME Is Not Subject to General or Specific Jurisdiction in New York ............. 8

                1.      The Court Cannot Exercise General Jurisdiction over NBME................. 9

                2.      The Court Cannot Exercise Specific Jurisdiction over NBME ............... 11

        C.      Plaintiff Cannot Rely on "Bulge Jurisdiction" over NBME................................ 14

II.     PLAINTIFF DOES NOT HAVE STANDING TO PURSUE HER ADA CLAIM ....... 15

        A.      Standard of Review........................................................................................ 15

        B.      Ms. Thompson Lacks Standing........................................................................ 15

III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST NBME.................................... 17

        A.      Standard of Review........................................................................................ 17

        B.      Ms. Thompson Fails to State a Claim Against NBME Under the ADA .......... 188

                1.      The CCSE is not an examination related to applications, licensing,
                        certification, or credentialing ................................................................. 188

                2.      Ms. Thompson's allegations do not reflect a failure by NBME to
                        provide reasonable accommodations ....................................................... 19

        C.      Ms. Thompson Fails to State a Claim Against NBME for Breach of
                Contract........................................................................................................ 200

        D.      NBME Is Not "Jointly and Severally Liable" to Ms. Thompson Under the
                Rehabilitation Act ......................................................................................... 211

CONCLUSION.................................................................................................................. 222

# TABLE OF AUTHORITIES

## CASES

*An v. City of New York,*
    230 F. Supp. 3d 224 (S.D.N.Y. 2017).......................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................................17

*Beem v. Noble Group Ltd.,*
    2015 WL 8781333 (S.D.N.Y. 2015)...........................................................................13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................17, 18

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983).................................................................................................16, 17

*Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs,*
    No. 4:15-cv-625, 2015 WL 9489507 (E.D. Tex. 2015)..............................................10

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)...........................................................................................9, 10, 11

*Dilworth v. Goldberg,*
    914 F. Supp. 2d 433 (S.D.N.Y. 2012).................................................................21, 22

*Doe v. Nat'l Conf. of Bar Exam'rs,*
    No. 1:16-cv-264, 2017 WL 74715 (E.D.N.Y. 2017) ...........................................10, 13

*Jonas v. Estate of Leven,*
    116 F. Supp. 3d 314 (S.D.N.Y. 2015).......................................................3, 8, 11, 13

*Giusto v. Rose & Womble Realty Co., LLC,*
    2016 WL 4544038 (E.D.N.Y. 2016)..........................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011)......................................................................................................9

*Hill v. HSBC Bank PLC,*
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).................................................................11, 13

*Holland v. JPMorgan Chase Bank, N.A.,*
    No. 19-233, 2019 WL 4054834 (S.D.N.Y. 2019)......................................................15

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
   893 F. Supp. 1251 (S.D.N.Y. 1995)................................................................13

*J.S. ex rel. N.S. v. Attica Central Schools*,
   386 F.3d 107 (2d Cir. 2004).........................................................................3

*Marcavage v. City of New York*,
   689 F.3d 98 (2d Cir. 2012).....................................................................15, 16

*Masri v. Cruz*,
   No. 17-8356, 2019 WL 2388222 (S.D.N.Y. 2019)...................................18

*Megna v. Biocamp Laboratories Inc.*,
   166 F. Supp. 3d 493 (S.D.N.Y. 2016)......................................................8, 10

*Moore v. S.N.H. Med. Ctr.*,
   No. 08-11751-NMG, 2009 WL 5214879 (D. Mass. 2009) ....................14

*Munsif v. Am. Bd. of Internal Med.*,
   No. 11-5949, 2012 WL 3962671 (E.D. Pa. 2012) ..................................14

*Pazamickas v. New York State Office of Mental Retardation & Development
   Disabilities*, 963 F. Supp. 190 (N.D.N.Y. 1997) ..................................22

*Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*,
   No. 07-00349, 2007 WL 704171 (S.D.N.Y. 2007)..................................14

*Roscoe-Ajax Const. Co. v. Columbia Acoustics & Fireproofing Co.*,
   39 F.R.D. 608 (S.D.N.Y. 1966) ...............................................................14

*Smit v. Isiklar Holding A.S.*,
   354 F. Supp. 2d 260 (S.D.N.Y. 2005)......................................................11

*Sonera Holding B.V. v. Cukorova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014).....................................................................8, 9

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................13

## STATUTES

42 U.S.C. § 2000a-3(a) ...................................................................................16

42 U.S.C. § 12188(a)(1)..................................................................................16

42 U.S.C. § 12189.................................................................................1, 15, 19

N.Y. C.P.L.R. § 301.........................................................................................9

N.Y. C.P.L.R. § 302 ............................................................................................................11, 12, 13

**REGULATIONS**

29 C.F.R. § 36.309 .........................................................................................................................1

**RULES**

Rule 19 .........................................................................................................................................14

Fed. R. Civ. P. 4(k)(1)(B) ...........................................................................................................14

Fed. R. Civ. P. 12(b)(1) ...............................................................................................................15

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................18

Fed. R. Civ. P. 14 .........................................................................................................................14

Fed. R. Civ. P. 19 .........................................................................................................................14

## INTRODUCTION

*Pro se* Plaintiff Debbie Ann Bromfield-Thompson ("Plaintiff" or "Ms. Thompson") has filed a First Amended Complaint ("FAC") against her former medical school, American University of Antigua ("AUA"), and the National Board of Medical Examiners ("NBME").  *See* ECF No. 45.  Her claims relate to her dismissal from AUA after she failed to obtain a passing score on the Comprehensive Clinical Science Examination (CCSE), as required by AUA.

As NBME argued in its original motion to dismiss, Ms. Thompson does not have standing to pursue her ADA claim against NBME, the Court does not have personal jurisdiction over NBME, and Ms. Thompson has failed to state a claim against NBME in any event. Although Ms. Thompson makes additional allegations in her First Amended Complaint, none of them remedy the defects in her original pleading.  Ms. Thompson also attempts to raise a new claim for breach of contract against NBME, but her new claim fails.  Ms. Thompson's claims against NBME should be dismissed with prejudice.

Ms. Thompson alleges that AUA failed to provide her with reasonable testing accommodations for her alleged dyslexia and wrongfully dismissed her from medical school. FAC  ¶¶ 1, 5.  She asserts claims against AUA for violation of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA"), breach of contract, breach of the duty of "bad faith" and fair dealing, and intentional/negligent infliction of emotional distress.  *See* FAC ¶¶ 72-103.

Ms. Thompson asserts a claim against NBME under a provision in Title III of the ADA that is applicable to entities that offer certain types of examinations.  *See id.* ¶ 21 (discussing 42 U.S.C. § 12189 and 29 C.F.R. § 36.309); ¶¶ 83-90.  She concedes that NBME does not make accommodation decisions relating to the CCSE, but alleges that NBME "sponsored" the CCSE,

plays a "significant role" in the implementation of testing accommodations that a medical school approves, and "knew" that the accommodations granted by AUA were "unreasonable." *Id.* ¶ 22. She also names NBME in her claim for "Breach of Contract: Express or Implied." *Id*. ¶¶ 91-98. She does not allege that she had a contract with NBME; rather, she contends that she "was a third-party beneficiary" of a purported agreement between NBME and AUA "with respect to the implementation of accommodations' [*sic*] requirements for sitting [for] the CCSE …." *Id.* ¶ 98. Although Ms. Thompson does not name NBME in her Section 504 claim against AUA, she alleges that NBME is "jointly and severally liable" with AUA "for failing to provide reasonable accommodation." *Id.*

The Court lacks personal jurisdiction over NBME with respect to Ms. Thompson's claims, and the claims fail in any event. The only relief available under Title III of the ADA is prospective injunctive relief to prevent future harm. Ms. Thompson does not have standing to seek such relief given that she was dismissed from medical school in July 2016 and there is no threat of future harm relating to her taking the CCSE exam again at AUA. She has also failed to state a viable Title III claim. Likewise, her conclusory allegations fail to state a claim against NBME for breach of contract. For the reasons discussed below, Ms. Thompson's claims against NBME should be dismissed with prejudice.

## **PROCEDURAL HISTORY**

Ms. Thompson filed her original complaint on June 27, 2019. NBME filed a motion to dismiss on November 11, 2019, and AUA filed a motion to dismiss on December 9, 2019. By Order dated November 26, 2019, Ms. Thompson was given until January 13, 2020, to file either an amended complaint to address the deficiencies identified in the two motions to dismiss or a brief in opposition to the motions to dismiss. (ECF No. 33). The Court also indicated by prior Order that Ms. Thompson "will not be given any further opportunity to amend the Complaint to

address issues raised by either motion [to dismiss]."  (ECF No. 31).  Ms. Thompson served a

copy of her amended complaint on NBME on January 10.  The amended complaint was filed on

January 14, along with a declaration (which was not served on NBME) and seventeen exhibits.

**BACKGROUND**[1]

## I.      PARTIES

Ms. Thompson resides in Washington, D.C., and was a resident of Washington, D.C. at

all relevant times.  *See* FAC ¶ 11.  In 2010, she was admitted to AUA as a fifth-semester transfer

student from St. Matthews University, a medical school located in the Cayman Islands.  *See id.* ¶

37.  Ms. Thompson alleges that she has dyslexia and is substantially limited in "her ability to

read and learn."  *Id.* ¶ 7.

AUA is "an offshore medical school" headquartered in Antigua.  *Id.* ¶ 12.  NBME is a

private, not-for-profit organization located in Philadelphia, Pennsylvania with no connection to

AUA.  *See id.* ¶ 21.

## II.     NBME SUBJECT EXAMINATIONS

NBME develops and sells standardized subject examinations that can be used as

assessment tools by medical educators.  *See* Declaration of Cheri Kershen ("Kershen Decl.") ¶

5.[2]  Medical schools and other institutions that utilize these subject examinations choose which

---

[1] The allegations in the FAC are accepted solely for the purpose of this motion to dismiss.

[2] NBME is offering the Declaration of Cheri Kershen in support of its motion to dismiss for lack of subject matter jurisdiction and its motion to dismiss for lack of personal jurisdiction.  *See J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("We may consider affidavits and other materials beyond the pleadings to resolve the [subject matter jurisdiction] issue....") (citation omitted); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) ("In deciding a motion to dismiss a complaint for want of personal jurisdiction, the district court may consider materials outside the pleadings, including affidavits and other written materials.").  NBME's motion to dismiss for failure to state a claim is based solely on the allegations in the FAC.

examinations they will order and set individual policies and procedures for when the examinations are taken, who takes the examinations, and how the institution will use the scores. *Id.* Most of the institutions that use subject examinations are medical schools and medical residency programs, which usually administer the examinations at their schools. *Id.* ¶ 6. Institutions may also opt to have the subject examinations that they choose to use administered at a test center run by Prometric, Inc., a third-party vendor of NBME's. *Id.* Subject examinations are not available to the general public and NBME does not sell subject examinations to individuals. *See id.*[3]

If an examinee seeks disability-based testing accommodations on a subject examination, the examinee's institution, not NBME, determines whether any accommodations are warranted, decides the specific accommodations that it believes to be reasonable for the examinee, and bears all costs associated with providing any approved accommodations. *Id.* ¶ 7; *see also* FAC ¶ 22.

This lawsuit involves a specific subject examination called the Comprehensive Clinical Science Examination ("CCSE"). FAC ¶ 12. The CCSE is an achievement test covering material typically learned during basic science education and core clinical clerkships. *See* Kershen Decl. ¶ 8. It covers topics similar to those found on the USMLE Step 2 CK exam and is often purchased and used by medical schools to identify students' strengths and weaknesses prior to their taking the USMLE. *Id.*

---

[3] NBME also co-sponsors the United States Medical Licensing Examination (USMLE) program. *See* FAC ¶ 21. The USMLE is a standardized examination used to evaluate applicants' competence for medical licensure. *See id.*; *see also* Kershen Decl. ¶ 4. Three "Step" exams make up the USMLE, taken at different times in an individual's medical education process: Step 1, Step 2 (consisting of the Step 2 Clinical Knowledge exam (Step 2 CK) and the Step 2 Clinical Skills exam (Step 2 CS)), and Step 3. *Id.* The USMLE is not at issue in this litigation.

### III.    ALLEGATIONS RELATED TO THE CCSE

Ms. Thompson was "administratively withdrawn" from AUA in June 2015 and re-admitted that same month.  *See* FAC ¶¶ 46-47.  AUA informed Ms. Thompson that, as a condition to her re-readmission, she was required to pass the CCSE with a score of at least 79 by no later than March 31, 2016.  *See id.* ¶¶ 47-48.  Ms. Thompson had already taken the CCSE three times in 2014 with time-and-a-half accommodations (*i.e.*, she had 50% additional time to take the test compared to examinees who tested under standard time conditions) but she was "unsuccessful."  *See id.* ¶ 50.  She therefore sought double time testing accommodations from AUA, which AUA approved.  *See id.* ¶¶ 51-52.

Ms. Thompson alleges that when she sat for the CCSE in November 2015 with double testing time, she "sat [for] the exam for 9 straight hours without any breaks in between and suffered excruciating pain in her feet in the last two hours of the exam resulting in Plaintiff guessing a significant number of answers just to get through the exam."  *Id.* ¶ 53.  After that, she contacted NBME to complain about the conditions under which she took the CCSE, "either not being given sufficient time or in the one instance when she was given double time she got no breaks during the exam."  *Id.* ¶ 54.  According to Ms. Thompson, NBME explained that the "official exam" (presumably a reference to the USMLE Step 2 CK exam) is given over a two-day period "and suggested that Plaintiff contact AUA and ask whether AUA would be willing to find a site where Plaintiff could take the exam over a 2-day period."  *Id.* ¶ 55.

Ms. Thompson references a January 15, 2016 letter from Cheri Kershen, an NBME employee, "describing the procedures under which Plaintiff was able to sit [for] the CCSE over a 2-day period" at an NBME-approved site.  *Id.* ¶ 56.  AUA, however, "was unable to locate an approved site."  *Id.* ¶ 57.  The AUA Chief Proctor in Antigua informed Ms. Thompson that he

was unable to locate a site for taking the exam over a two-day period, and advised Plaintiff in an email to "'take the exam like any other student needing 'accommodation.'" *Id.* ¶ 57.

Ms. Thompson alleges that "NBME arranged with AUA and the Prometric Center located in Virginia to add more than double time to the exam to enable Plaintiff to take breaks." *Id.* ¶ 60. According to Ms. Thompson, an extra one hour and four minutes were added to her testing time to enable her to take breaks. *Id.* Ms. Thompson alleges that she took the exam on July 1, 2016 "and sat for 11 hours at a desk which had a large metal sheet underneath which blocked her from stretching her legs." *Id.* ¶ 61.[4] She claims that the screen would go blank when she returned from breaks and that she had to "keep a mental time of her breaks as she was not allowed to wear a watch[,]" although she also notes that the "exam had its own time on the screen … [that] kept running when she left for breaks." *Id.* She alleges that each time she returned from a break, "she had to be patted down, an event that caused her to panic even more because these extra delays caused time to run even more." *Id.* Ms. Thompson does not allege that she ran out of time while taking the test or had to guess answers to any of the questions while testing in July 2016. She claims that she experienced fatigue and pain "despite the extra time." *Id.* ¶ 62.

Ms. Thompson received a score of 72 on the July 1, 2016 administration of the CCSE, which was lower than the required score set by AUA. *See id.* ¶¶ 4, 64-65. AUA therefore dismissed Ms. Thompson from medical school in July 2016. *See id.* ¶¶ 65. Ms. Thompson has not been readmitted to medical school. *Id.* ¶ 67.

---

[4] As reflected in Ms. Thompson's allegations, the CCSE was a nine-hour examination when taken with double time. *See* FAC ¶ 53. An 11-hour examination period would therefore allow Ms. Thompson at least two hours to take breaks during testing. Ms. Thompson's allegations show that she took breaks away from the computer during the test day. *See id.* ¶ 61.

Ms. Thompson alleges that NBME violated the ADA.  *See id.* ¶¶ 83-90.[5]  She asserts that "NBME and AUA were well aware that the official exam was given over a 2-day period and should never have agreed to offer the exam to Plaintiff to sit for a 11-hour period in one day," and that "[b]oth AUA/MEA, LLC and NBME … knew that requiring Plaintiff to sit [for] an exam over an 11 hour period did not constitute reasonable accommodation."  *Id.* ¶¶ 85, 88.  As noted above, she also purports to bring a breach of contract claim against NBME, on the premise that she is a "third-party beneficiary" under a purported "agreement between AUA and NBME with respect to the implementation of accommodations' [*sic*] requirements for sitting [for] the CCSE exam," which supposedly imposed a duty on NBME to "ensure that proper conditions and accommodations were implemented for the taking of the exam."  *Id.* ¶ 98.

Ms. Thompson seeks a declaration that NBME discriminated against her "by failing to grant reasonable accommodations under [the Rehabilitation Act];" "[a]ppropriate injunctive relief," including an order "restraining AUA/NBME from engaging in any further discrimination" against her; and an order to "AUA/NBME to facilitate the taking of the CCSE exam over a 2-day period."  FAC at "Request for Relief," items (b), (c), and (e).  She also seeks an order for "AUA to immediately reinstate Plaintiff to the medical school so that she can (1) complete her remaining rotation to earn 3 credits for eventual graduation, and (2) requiring that both AUA and NBME to arrange for Plaintiff to sit the CCSE exam over a 2-day period, at a

---

[5] In the introduction of her First Amended Complaint, Ms. Thompson states that the "action against NBME is based on violations of the Americans with Disabilities Act, the Rehabilitation Act, and the New York State and City Human Rights Acts," FAC ¶ 10, but she does not actually plead any Rehabilitation Act claim or New York Human Rights Act claim against NBME, *see id.* ¶¶ 72-103.  Although Ms. Thompson does not purport to bring a claim against NBME pursuant to the Rehabilitation Act, see "First Claim for Relief," she alleges within this claim that "AUA/MEA, LLC and NBME are jointly and severally liable to Plaintiff for failing to provide reasonable accommodation."  *Id.* ¶ 82.

suitable onshore facility, failing which Plaintiff shall be permitted to sit for the USMLE CK 2." *Id.*, item (f).

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER NBME

#### A.    Standard of Review

"Upon motion, the Court is required to dismiss an action against any defendant over whom it lacks personal jurisdiction." *Megna v. Biocamp Laboratories Inc.*, 166 F. Supp. 3d 493, 496 (S.D.N.Y. 2016). Plaintiff "'bears the burden of showing that the court has jurisdiction over the defendant.'" *Id.* (citations omitted). "'[T]he plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant,'" *id.* (citation omitted), but "'[s]uch a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant,'" *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citation omitted). In deciding whether plaintiff has met her burden, "the pleadings and affidavits must be viewed in the light most favorable to the plaintiff, with all doubts resolved in her favor.… 'However, conclusory allegations are not enough to establish personal jurisdiction.'" *Megna*, 166 F. Supp. 3d at 496 (citations omitted).

#### B.    NBME Is Not Subject to General or Specific Jurisdiction in New York

The Court engages in a two-step inquiry. First, it determines "whether the defendant is subject to jurisdiction under the law of the forum state—here, New York." *Sonera Holding B.V. v. Cukorova Holdings A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (citation omitted). Second, it considers "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Id.*

"There are two types of personal jurisdiction: specific and general.  Specific or conduct-linked jurisdiction … 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'"  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  General jurisdiction "exists only when a corporation's contacts with a state are 'so continuous and systematic as to render [it] essentially at home in the forum state.'"  *Id.* (quoting *Goodyear*, 564 U.S. at 919) (internal quotation mark omitted).

### 1.    The Court Cannot Exercise General Jurisdiction over NBME

It is not clear whether Ms. Thompson is alleging that the Court can exercise general jurisdiction over NBME.  *See* FAC ¶¶ 27, 29.  There is no basis, however, for the Court to do so. "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citation omitted); *see also Sonera Holding B.V.*, 750 F.3d at 224 (finding that corporation was not subject to general jurisdiction under the due process principles in *Daimler*, rendering any review of whether jurisdiction was supported under N.Y. C.P.L.R. 301 irrelevant).  "The natural result of general jurisdiction's 'at home' requirement is that 'only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.'"  *Sonera Holding*, 750 F.3d at 225 (citing *Daimler*, 134. S. Ct. at 760).

A corporation's place of incorporation and principal place of business are the "paradigm" bases for general jurisdiction, *Daimler*, 531 U.S. at 137, and neither applies here.  NBME's principal place of business is Philadelphia, Pennsylvania, not New York.  *See* FAC ¶ 27.  It is

incorporated in Washington, D.C.  Kershen Decl. ¶ 3.  There are no allegations remotely suggesting that this is an "exceptional" case where general jurisdiction can be asserted outside of these "paradigm" locations.

Ms. Thompson asserts that NBME "does substantial business in New York City and other states by sponsoring and proctoring various exams on behalf of medical schools and colleges including the practice exam (CCSE) which is the subject of this lawsuit."  FAC ¶ 27.  She also alleges that "AUA and its agent/MEA and NBME regularly transact business in New York State."  *Id.*  These allegations are conclusory, *see Megna*, 166 F. Supp. 3d at 496 ("conclusory allegations are not enough to establish personal jurisdiction"), and are not sufficient to support "at home" general jurisdiction over NBME in New York in any event.

NBME examinations are administered across the United States.  *See* Complaint ¶ 9; Kershen Decl. ¶ 9.  Under Ms. Thompson's theory, NBME presumably would be subject to general jurisdiction in every state.  That is not the law.  *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *Doe v. Nat'l Conf. of Bar Exam'rs*, No. 1:16-cv-264, 2017 WL 74715, at *6 (E.D.N.Y. 2017) (rejecting argument that organization that develops and administers bar-related examinations in New York was subject to general jurisdiction in New York and noting, "Accepting this argument … would subject the NCBE to limitless general jurisdiction across the country, a result the Supreme Court directly cautioned against in *Daimler*."); *Clasen v. Nat'l Bd. of Osteopathic Med. Exam'rs,* No. 4:15-cv-625, 2015 WL 9489507, at *14-15 (E.D. Tex. 2015) (administration of national examination in Texas—as well as all other states—"does not constitute the requisite

'substantial, continuous, and systematic[ ] contacts' necessary for a finding of general

jurisdiction") (citation omitted), *adopted by* 2016 WL 890675 (E.D. Tex. 2016).[6]

### 2.       The Court Cannot Exercise Specific Jurisdiction over NBME

"'[A] defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if

[it] engages in the following acts either in person or through an agent *and* such acts relate to an

asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods

or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act

outside the state but injures a person or property in the state; or (4) owns, uses, or possesses any

real property in the state." *Jonas*, 116 F. Supp. 3d at 323-24 (citing N.Y. C.P.L.R. § 302(a)).  "A

foreign party 'transacts business' in New York when, looking at the totality of the circumstances,

he 'purposefully avails [himself] of the privilege of conducting activities within [New York],

thus invoking the benefits and protections of its laws.'" *Hill v. HSBC Bank PLC*, 207 F. Supp.

3d 333, 338 (S.D.N.Y. 2016) (citation omitted).

Ms. Thompson, a Washington, D.C. resident, claims that NBME, which is located in

Pennsylvania, violated the ADA with respect to an examination she took in Virginia, in

connection with her attendance at a medical school located in the Caribbean islands.  *See* FAC ¶¶

11, 12, 21, 60.[7]  She also alleges that she is a third-party beneficiary of an "agreement" between

---

[6] Ms. Thompson argues that "[t]he scope of NBME's substantial business transactions in New York City and State may be elicited through jurisdictional discovery if permitted by the Court." FAC ¶ 29.  There is no basis for such discovery because Ms. Thompson "has failed to allege even bare facts to support a finding of personal jurisdiction."  *Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 264 (S.D.N.Y. 2005).  This is particularly true following the Supreme Court's holding in *Daimler,* where the Court made clear that general jurisdiction can only attach in "exceptional cases," and Ms. Thompson has identified nothing exceptional about the facts of this case.

[7] Ms. Thompson alleges that AUA made certain decisions in New York relating to her admission, clinical site selections, and termination from the school.  She also alleges that she attended an AUA orientation in New York, completed clinical course work for AUA at an AUA

AUA and NBME and attempts to assert a breach of contract claim against NBME based on its "implementation of accommodations' requirements for sitting the CCSE exam." *See id.* ¶ 98. Like her ADA claim, this "breach of contract" claim purportedly relates to NBME's actions in Pennsylvania relevant to Ms. Thompson (a D.C. resident) taking an examination in Virginia for her medical school in Antigua.  Her claims against NBME are not based on NBME transacting business in New York; contracting to supply goods or services in New York; owning, using or possessing any real property in New York; or committing a tortious act (in New York or anywhere), nor do they involve injury to a person or property in New York.  There is thus no basis for asserting specific jurisdiction over NBME in a manner consistent with the New York long-arm statute or due process.

Apparently in response to NBME's specific jurisdiction argument in its original motion to dismiss, Ms. Thompson added the following conclusory allegation to her FAC: "NBME coordinated with AUA's New York City office with respect to test taking accommodations for Plaintiff on at least fourteen different occasions prior to Plaintiff's dismissal."  FAC ¶ 29.  Ms. Thompson may be attempting to establish personal jurisdiction under CPLR § 302(a)(1) (transacting business or contracting to provide services in New York), but her effort fails.  Even accepting Ms. Thompson's allegation as true (including the allegation that AUA has a "New York office," which AUA appears to deny),[8] any such "coordination" between NBME and AUA is insufficient to establish personal jurisdiction.  "'New York courts have consistently refused to sustain Section 302(a)(1) jurisdiction solely on the basis of defendant's communication from

---

facility in New York, and communicated with AU in New York regarding her accommodations. *See* FAC ¶¶ 13, 16-19.  These allegations have nothing to do with NBME.

[8] *See* Declaration of Vernon Solomon, ¶ 4 ("AUA has no offices in New York or the United States.") (ECF No. 38).

another locale with a party in New York.'" *Giusto v. Rose & Womble Realty Co., LLC*, 2016 WL 4544038, at *7 (E.D.N.Y. 2016) (quoting *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983)); *see also Hill*, 207 F. Supp. 3d at 339 ("[A] foreign defendant's communications with a party in New York or sending of monies into New York are not sufficient to establish personal jurisdiction without the defendant having 'projected' himself into New York for the purpose of conducting business there.") (citations omitted); *Beem v. Noble Group Ltd.*, 2015 WL 8781333, at *4 (S.D.N.Y. 2015) ("[L]imited electronic or telephonic communication between an out-of-state Defendant and a New York Plaintiff regarding services to be performed outside of New York, without more, will not justify long-arm jurisdiction under § 302(a)(1)'s 'transacts business' clause."); *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261-62 (S.D.N.Y. 1995) (collecting cases), *aff'd*, 201 F.3d 431 (2d Cir. 1999) ; *cf. Doe v. Nat'l Conf. of Bar Exam'rs*, 2017 WL 74715, at *8-9 (E.D.N.Y. 2017) ("Defendants' alleged mailing of materials relating to Plaintiff's character and fitness application to Plaintiff while she was in New York, in itself, does not constitute transacting business sufficient to confer specific jurisdiction."). "'Random,' 'fortuitous,' or 'attenuated' contacts [are not] sufficient" to establish specific personal jurisdiction. *Hill*, 207 F. Supp. 3d at 338-39 (citation omitted). Nothing in Ms. Thompson's allegations shows that NBME conducted any act by which it purposefully availed itself of the privilege of conducting activities within New York. *See Jonas*, 116 F. Supp. 3d at 325.

Any contact between NBME employees in Pennsylvania and AUA representatives located in New York, regarding accommodations that were provided to Ms. Thompson on an exam she took in Virginia, are too tenuously related to her claims to warrant an exercise of specific jurisdiction consistent with New York's long-arm statute or due process. *See Walden v.*

*Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

      **C.**    **Plaintiff Cannot Rely on "Bulge Jurisdiction" over NBME**

      Ms. Thompson mistakenly alleges that the Court can assert jurisdiction over NBME under Fed. R. Civ. P. 4(k)(1)(B) and Rule 19. *See* FAC ¶ 29. Rule 4(k)(1)(B), also known as the "bulge rule," provides that service of a summons establishes personal jurisdiction over certain parties who are served within a judicial district not more than 100 miles from where the summons was issued.

      By its plain terms, the bulge rule only applies to parties joined under Rules 14 or 19. *See* Fed. R. Civ. P. 4(k)(1)(B). It does not apply to defendants like NBME who are originally named in the complaint. *See Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, No. 07-00349, 2007 WL 704171, at *2 (S.D.N.Y. 2007) (plaintiff "may not use the bulge provision to obtain service on an original defendant"); *Roscoe-Ajax Const. Co. v. Columbia Acoustics & Fireproofing Co.*, 39 F.R.D. 608, 609–10 (S.D.N.Y. 1966) (bulge rule applies "only where the necessary party is brought in as an additional party to a pending action" and not when originally named as a defendant); *see also, e.g.*, *Munsif v. Am. Bd. of Internal Med.*, No. 11-5949, 2012 WL 3962671, at *8 (E.D. Pa. 2012) (bulge rule "does not provide an independent basis for personal jurisdiction over a defendant named in the plaintiff's original complaint"); *Moore v. S.N.H. Med. Ctr.*, No. 08-11751-NMG, 2009 WL 5214879, at *9 (D. Mass. 2009) (defendant named in two-defendant case was not "joined under either Rule 14 or 19 . . . as he was named as an original defendant," and therefore the bulge rule did not apply). Ms. Thompson cannot rely on this rule to avoid establishing personal jurisdiction over NBME.

## II.      PLAINTIFF DOES NOT HAVE STANDING TO PURSUE HER ADA CLAIM

### A.      Standard of Review

"'A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when … the plaintiff lacks constitutional standing to bring the action.'"  *An v. City of New York*, 230 F. Supp. 3d 224, 228 (S.D.N.Y. 2017) (citation omitted); *see also Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("Article III limits the subject matter jurisdiction of federal courts to actual 'cases' or 'controversies,' … which requires, among other things, that a plaintiff sustain the burden of establishing standing.") (citations omitted).  The Court accepts as true all material allegations of the complaint and construes the complaint in favor of the plaintiff.  *Id.*  "A plaintiff proceeding against multiple defendants must establish standing as to each defendant and each claim."  *Holland v. JPMorgan Chase Bank, N.A.*, No. 19-233, 2019 WL 4054834, at *6 (S.D.N.Y. 2019) (citations omitted).

"A motion to dismiss for lack of Article III standing may be facial or factual."  *Id.* (citation omitted).  A facial challenge goes to the sufficiency of the facts alleged, "not the facts themselves."  *Id.* (citations omitted).  "On a factual challenge, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Id.* (citations omitted).

### B.      Ms. Thompson Lacks Standing

NBME explains below why Ms. Thompson's ADA claim fails as a matter of law, as it relates only to the CCSE and the CCSE is not a type of examination covered by 42 U.S.C. § 12189.  *See infra* Section III.B.  But even if Ms. Thompson had a viable ADA Title III claim, she does not have standing to pursue it.

The only relief available under Title III is preventive injunctive relief.  *See* 42 U.S.C. § 12188(a)(1) (making the "remedies and procedures set forth in section 2000a-3(a) of this title" applicable to Title III violations); 42 U.S.C. § 2000a-3(a) (allowing "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order").  Indeed, Ms. Thompson only seeks declaratory and injunctive relief against NBME.  *See* FAC, Request for Relief items (b)-(c), (e)-(f).  Ms. Thompson does not have standing to seek such relief, however, because her allegations do not show a likelihood of injury for which any preventive relief is necessary.  Ms. Thompson alleges that she did not receive reasonable accommodations when she sat for the CCSE examination in 2016.  FAC ¶¶ 83-90. This past alleged injury does not support her claim for relief against NBME.  "To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must … demonstrate a 'certainly impending' future injury."  *Marcavage*, 689 F.3d at 103; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (citation omitted).  Ms. Thompson cannot rely on alleged past injures to establish a "certainly impending future injury;" rather, she "must establish how [she] will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Marcavage*, 689 F.3d at 103 (citations omitted).

Ms. Thompson has not made, and cannot make, a showing of a certainly impending future injury with respect to the CCSE and NBME.  She is not enrolled in medical school and has not been enrolled in medical school since she was dismissed from AUA in July 2016.  *See* FAC ¶¶ 64-67.  She therefore cannot take the CCSE.  The CCSE is not available to the general public and even individuals who are enrolled in medical school cannot order the test.  *See* Kershen Decl. ¶ 6.  An institution—such as a medical school or medical residency program— must order the test for individuals they deem qualified to take the test.  *See id.* ¶¶ 5-6.  Ms.

Thompson, however, is not enrolled at AUA and does not allege that she is part of any other school or program that requires the CCSE exam or could order the CCSE exam for her.  There is no "certainly impending future injury" to support Ms. Thompson's standing to pursue an ADA Title III claim against NBME because she is not eligible to take the CCSE.  *See Lyons,* 461 U.S. at 95 ("The speculative nature of Lyons' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.").

Ms. Thompson may argue that she is seeking readmission to AUA as part of her lawsuit which, if granted, would put her in a position to take the CCSE again.  *See* FAC, Request for Relief (c), (f).  Even if she were to succeed on this claim, however, which appears far from certain based on the allegations in her FAC, it is entirely conjectural (1) whether she would be required to take the CCSE again if she were readmitted,  (2) when—if at all—AUA would require her to take the examination, (3) what accommodations she would seek from AUA if she did take the examination, and (4) what accommodations AUA would agree to provide her in the future (it is AUA, not NBME, that makes this determination, *see* Kershen Decl. ¶ 7; *see also* FAC ¶¶ 22, 50-53).  These multiple layers of uncertainty defeat any suggestion of certainly impending future injury (if any injury at all) vis-à-vis the CCSE and NBME.

Ms. Thompson lacks standing to pursue her purported ADA claim against NBME.

## III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST NBME

### A.    Standard of Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While this does not necessitate "detailed factual allegations," it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. 570.  A facially plausible claim must be supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Such an inference cannot be drawn based on the pleading of facts suggesting "a sheer possibility that a defendant has acted unlawfully."  *Id*. (citation and internal quotation marks omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).

"Courts must 'liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.'… That said, pleadings cannot survive by making 'naked assertions devoid of further factual enhancement,' and a court is not 'bound to accept as true a legal conclusion couched as a factual allegation.'"  *Masri v. Cruz*, No. 17-8356, 2019 WL 2388222, at *2 (S.D.N.Y. 2019) (citations omitted).

## B.  Ms. Thompson Fails to State a Claim Against NBME Under the ADA

### 1.  The CCSE is not an examination related to applications, licensing, certification, or credentialing

Ms. Thompson's allegations against NBME do not show any actionable conduct by NBME.  Ms. Thompson's ADA claim against NBME is based on 42 U.S.C. § 12189.  *See* FAC ¶¶ 21, 83-88.  This provision states:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

NBME agrees that it is subject to this statutory provision with respect to the United States Medical Licensing Examination ("USMLE").  *See also* FAC ¶ 21 ("NBME, along with State Medical Boards sponsors the [USMLE], a licensing examination for prospective doctors.").

This case, however, does not involve the USMLE.  It involves a subject examination, the CCSE.  *See* FAC ¶¶ 48-71.  By Ms. Thompson's explanation:

> The NBME also sponsors practice and other exams on behalf of medical colleges and universities with medical programs throughout the country.  Many of these exams, as for example, the CCSE, are designed to aid students in preparing for the official USMLE Step 2 exam.  Medical schools, including AUA, use the results from these exams to make up part of students' grades.  The practice exam which is the subject of this lawsuit made up 20% of Plaintiff's grades.

*Id.* ¶ 21.  According to Ms. Thompson's own description, the CCSE examination is used by schools (including AUA), not licensing authorities, as a practice exam, and AUA also used her CCSE score as a component of her grade.  *See id.*  Because the CCSE is not an examination "used for *applications*, *licensing*, *certification*, or *credentialing* for secondary or postsecondary education, professional, or trade purposes," Ms. Thompson cannot pursue a claim against NBME under Section 12189 relating to the CCSE.

### 2.    Ms. Thompson's allegations do not reflect a failure by NBME to provide reasonable accommodations

AUA, not NBME, determined the accommodations Ms. Thompson was provided on the CCSE.  *See* FAC ¶ 22 ("NBME does not itself grant the accommodations of the CCSE exam"); *see also id.* ¶¶ 51-52 (request for double-time accommodation on CCSE was submitted to Dr. Rice, an AUA official).  Ms. Thompson's allegations show that NBME was prepared to assist her in taking the CCSE examination over a two-day period, subject to AUA finding a suitable

site.  *See id.* ¶¶ 54-56.  AUA was unable to do so.  *See id.* ¶ 57 ("Dr. Juli Valtschanoff, AUA's Chief Proctor, … stated in an email to Plaintiff that he was unable to locate a site for the taking of the exam over a 2-day period, and advised Plaintiff in an email to 'take the exam like any other student needing 'accommodation.'").  Ms. Thompson states that NBME also worked with AUA and the Prometric test center to add more than double time to her test to allow her to take breaks.  *See id.* ¶ 60.  She does not allege that she was unable to complete the test with the time she requested, only that she experienced "fatigue and pain."  *Id.* ¶ 62.  Ms. Thompson's post-test complaints were directed to AUA, not NBME, and even then, she described her testing conditions as "'halfway decent….but less than ideal.'"  *Id.* ¶ 66.

These allegations do not reflect a failure to accommodate *by NBME*.  Although Ms. Thompson complains in her Title III claim that NBME "should never have agreed to offer the exam to Plaintiff to sit for an 11-hour period in one day," *see id.* ¶ 85, and that NBME "knew" that requiring her to sit for an exam over an 11-hour period did not constitute a reasonable accommodation, *see id.* ¶ 88,[9] she does not allege that NBME itself failed to provide her with reasonable accommodations on the test.  Ms. Thompson fails to state a claim against NBME under Title III of the ADA.

### C.    Ms. Thompson Fails to State a Claim Against NBME for Breach of Contract

Ms. Thompson has not stated a valid contract claim against NBME based on her alleged status as a third-party beneficiary under an alleged contract between NBME and AUA.  "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and

---

[9] As discussed above, Ms. Thompson's own allegations show that she was not forced to sit for 11 hours when taking the CCSE, but instead had two additional hours built into her double-time (9 hour) examination period in which to take breaks, which she took.  *See supra* n. 4.  Ms. Thompson wanted double testing time and extra breaks—both of which she received.

binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 457 (S.D.N.Y. 2012) (internal citation marks and citations omitted).[10]

Ms. Thompson's purported breach of contract claim against NBME is stated as follows:

> Plaintiff was a third-party beneficiary of the agreement between AUA and NBME with respect to the implementation of accommodations' requirements for sitting the CCSE exam, therefore, NBME had a duty to ensure that proper conditions and accommodations were implemented for the taking of the exam

FAC ¶ 98.  She does not identify the purported agreement and instead alleges in only a conclusory fashion that there was a contract between AUA and NBME; she does not state what the alleged terms of that contract were; and she does not make any allegations that would support a finding that she was a third-party beneficiary under this contract.  Ms. Thompson also does not allege how NBME breached the contract, or even that it breached the contract.  Ms. Thompson thus fails to satisfy her pleading obligations, and this claim must also be dismissed.  *See Dilworth*, 914 F. Supp. 2d at 457-48 (dismissing breach of contract claim where plaintiffs did "not identify what provision of the contract was violated … [or] otherwise indicate the factual basis underlying the claim").

### D.   NBME Is Not "Jointly and Severally Liable" to Ms. Thompson Under the Rehabilitation Act

It is not clear whether Ms. Thompson is attempting to assert some type of claim against NBME under the Rehabilitation Act.  *Compare* FAC p. 17 (identifying claim for "Violation of the Rehabilitation Act" against AUA/MEA) *with id.* ¶ 82.  Ms. Thompson has not alleged that

---

[10] NBME relies on New York contract law solely for the purpose of this motion to dismiss.

NBME itself is subject to the Rehabilitation Act.[11] All her allegations supporting this claim refer to AUA.  *See* FAC ¶¶ 72-82.  Ms. Thompson has not asserted a claim against NBME under the Rehabilitation Act, and NBME cannot be "jointly and severally" liable under that statute if NBME is not liable under the statute at all.

## **CONCLUSION**

Ms. Thompson's claims against NBME should be dismissed with prejudice.

Dated:  February 4, 2020

Respectfully submitted,

*/s/ Evelyn Y. Pang*
Evelyn Y. Pang
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Tel. 212.262.6875
Fax 212.977.1641
EPang@perkinscoie.com

Caroline M. Mew (*pro hac vice*)
PERKINS COIE LLP
700 13th St. NW, Suite 600
Washington, D.C. 20005-3960
Tel. 202.654.1767
Fax 202.654.9551
CMew@perkinscoie.com

*Attorneys for Defendant NBME*

---

[11] To support such an allegation Ms. Thompson would have to show that NBME receives federal funds; it does not.  *See Pazamickas v. New York State Office of Mental Retardation & Development Disabilities*, 963 F. Supp. 190, 196 n.9 (N.D.N.Y. 1997).