UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROMFIELD-THOMPSON,

       Plaintiff,

    v.

AMERICAN UNIVERSITY OF
ANTIGUA/MANIPAL EDUCATION
AMERICAS, LLC A/K/A GCLR, LLC, AND
NBME,

       Defendants.

Civil Case No.: 19-CV-6078

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS BY AMERICAN UNIVERSITY OF ANTIGUA
& MANIPAL EDUCATION AMERICAS, LLC**

HUGHES HUBBARD & REED LLP
  Robb W. Patryk
  Amina Hassan
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendants Manipal Education
Americas, LLC and American University of
Antigua*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................5

    The Parties ..............................................................................................................5

    Plaintiff Is Admitted to AUA & Provided Exam Accommodations......................6

    Plaintiff Is Unable to Pass the CCSE Despite Increasing Accommodations.........7

    AUA Dismisses Plaintiff for Failure to Complete Graduation Requirements...................10

    Plaintiff's Claims in this Litigation......................................................................10

ARGUMENT .............................................................................................................11

I.     THE COURT SHOULD DISMISS THE CASE ON *FORUM NON CONVENIENS* GROUNDS ...................................................................................11

    A.    *Forum Non Conveniens* Standard .........................................................12

        1.    Plaintiff's Choice of Forum is Not Entitled to Deference. .........................12

        2.    Antigua is an Adequate Alternative Forum. ...............................14

        3.    Public and Private Factors Favor Dismissal in Favor of Antigua..............15

    B.    Other New York Courts Have Dismissed Cases involving AUA on *Forum Non Conveniens* Grounds ......................................................16

II.    THE COURT LACKS PERSONAL JURISDICTION OVER AUA...............................17

    A.    The Court Lacks General Jurisdiction Over AUA..................................18

    B.    The Court Lacks Specific Jurisdiction Over AUA ................................20

    C.    Plaintiff Cannot Rely on "Bulge Jurisdiction" Over AUA.....................25

III.   THE FAC MUST BE DISMISSED AGAINST AUA FOR FAILURE TO SERVE........26

IV.   THE FAC DOES NOT STATE A CLAIM AGAINST AUA OR MEA .........................28

    A.    Rule 12(b)(6) Standard .........................................................................28

    B.    All of Plaintiff's Claims Fail Because They Do Not Meet the *Iqbal* "Plausibility" Standard..........................................................................28

i

C.      The FAC Does Not State Any Claim Against MEA ............................................29

D.      The FAC Does Not State a Claim Against AUA or MEA Under the ADA ..........30

E.      The FAC Does Not State a Breach of Contract Claim Against AUA or
        MEA .....................................................................................................................31

        1.      There Was No Express Contract with AUA or Any Express or
                Implied Contract with MEA that Allegedly Was Breached .....................31

        2.      AUA Did Not Breach a University's Implied Contract with a
                Student ....................................................................................................32

        3.      Plaintiff's Breach of Contract Claim is an Improperly Pleaded &
                Time-Barred Article 78 Challenge ...........................................................35

F.      The FAC Does Not State a Claim of Breach of Good Faith and Fair
        Dealing Against AUA or MEA ............................................................................36

G.      The FAC Does Not State a Claim of Intentional Infliction of Emotional
        Distress Against AUA and MEA ..........................................................................38

H.      The FAC Does Not State a Claim of Negligent Infliction of Emotional
        Distress Against AUA or MEA .............................................................................39

CONCLUSION ..................................................................................................................40

96010357

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aina v American Univ. of Antigua*, 161 A.D.3d 508 (2d Dept 2018)..............................16

*Albers v. Guardian Life Ins. Co. of Am.*, No. 98 CIV.6244 DC, 1999 WL 228367
    (S.D.N.Y. Apr. 19, 1999)......................................................................................8

*Alla v. American Univ. of Antigua*, 965 N.Y.S.2d 469 (1st Dept 2013)........................16

*Alter v. Bogorician*, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) ..................................37

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-00494 (NSR), 2019
    WL 4039149 (S.D.N.Y. Aug. 27, 2019)..............................................................39

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................28, 29

*Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698 (2d Cir. 2007)...........................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................................28

*Bent v. Mount Sinai Med. Ctr.*, 882 F. Supp. 353 (S.D.N.Y. 1995) ...........................30

*Bonkowski v. HP Hood LLC*, No. 15CV4956RRMPK, 2016 WL 4536868
    (E.D.N.Y. Aug. 30, 2016).................................................................................20

*Bristol-Myers Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137
    S.Ct. 1773 (2017)..............................................................................................25

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) .................................19

*Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019) .....................17, 18, 21

*Brown's Bay Resort Ltd (Appellant) v. Pozzoni,* Court of Appeal of the Eastern
    Caribbean Supreme Court (Antigua and Barbuda) (2016) ....................................15

*Campoverde v. Sony Pictures Entertainment*, No. 01 CIV. 7775(LAP), 2002 WL
    31163804 (S.D.N.Y. Sept. 30, 2002).................................................................40

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603 (2d
    Cir. 1998) .........................................................................................................14

*Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y. 2014)..............31, 35

96010357

*Chira v. Columbia University in New York City*, 289 F. Supp. 2d 477 (S.D.N.Y. 2003) ..................................................................................................................34

*Chubb Ins. Co. of Europe S.A. v. M/V HUMBOLDT EXPRESS*, No. 02 CV 1294 (GBD), 2003 WL 22434092 (S.D.N.Y. Oct. 24, 2003) ..........................................14

*In re Crespo*, 775 N.Y.S.2d 319 (N.Y. Sup. Ct. 1984) ..................................................27

*Daimler AG v. Bauman,* 571 U.S. 117 (2014) ......................................................18, 19

*Daval Steel Prod., a Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159 (S.D.N.Y. 1989) ..............................................................................17

*Diaz v. City Univ. of New York*, No. 13 CV 2038 PAC MHD, 2014 WL 10417871 (S.D.N.Y. Nov. 10, 2014) ...............................................................................38, 39

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) ....................................17

*Doe v. Colgate Univ.*, 760 F. App'x 22 (2d Cir. 2019) .................................................37

*Endraske v American University of Antigua*, No. 157191/2016, 2017 WL 1210082 (N.Y. Sup. Ct. Apr. 03, 2017) ...........................................................27, 28

*Evans v. Columbia Univ. in the City of New York*, No. 14-CV-2658 NSR, 2015 WL 1730097 (S.D.N.Y. Apr. 13, 2015) ...........................................................32, 35

*Feinstein v. Curtain Bluff Resort*, No. 96 CIV. 8860 (RPP), 1998 WL 458060 (S.D.N.Y. Aug. 5, 1998) ......................................................................................15

*Garcia v American University of Antigua*, 156081/2012, Decision & Order (N.Y. Sup. Ct. Oct. 22, 2013) .......................................................................................16

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) .............................20

*Griffiths v. Beverage Marketing Corp.*, 14-CV-137, 2014 WL 1910051 (S.D.N.Y. May 9, 2014) ........................................................................................................30

*Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) .................................20

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ..........................................................16

*Gumbs v. Bd. of Educ. of the City*, 104277/12, 2013 WL 2369841 (N.Y. Sup. Ct. 2013) ...................................................................................................................33

*Hernandez v. Teachers College, Columbia University*, 16802015, 2015 WL 13660373 (N.Y. Sup. Ct. 2015) ....................................................................34, 36

*Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016) .............................21, 23

iv

*Hudson v. Artuz*, No. 95 CIV. 4768 (JSR), 1998 WL 832708 (S.D.N.Y. Nov. 30, 1998) .................................................................................................................11

*Illickal v. Roman*, 236 A.D.2d 247 (1st Dept 1997) ......................................................33

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) ................................12, 15

*Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475 (3d Dept 2012)....................................34

*Keles v. New York University*, No. 91 CIV. 7457 (SWK),1994 WL 119525 (S.D.N.Y. 1994), *aff'd*, 54 F.3d 766 (2d Cir. 1995) ...........................................34

*Keles v. Trs. of Columbia Univ. in City of N.Y.,* 903 N.Y.S.2d 18 (1st Dept 2010)...............35, 36

*Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391 (S.D.N.Y. 2012) ...................29

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011)...........................28, 37

*McKibben v. Credit Lyonnais*, No. 98 CIV. 3358 LAP, 1999 WL 604883 (S.D.N.Y. Aug. 10, 1999) ....................................................................................27

*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003) ........................26

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) ..................12

*Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) ...........17, 30

*Matter of Pell v. Bd. of Educ. of Union Free School Dist. No. 1 of Towns of Searsdale & Mamaroneck, Westchester County*, 34 N.Y.2d 222 (1974) ..............33

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) .............................19

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).......................................................14

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ................12

*Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, No. 07-00349, 2007 WL 704171 (S.D.N.Y. 2007)...............................................................26

*Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312 (S.D.N.Y. 2007) ......................18

*Santana v. Leith*, 117 A.D.3d 711, 985 N.Y.S.2d 147 (2d Dept 2014) ........................39

*In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017) ................................................20

*Scott v. ProClaim America, Inc.*, No. 14 CV 06003(DRH)(ARL), 2015 WL 3851243 (E.D.N.Y. June 22, 2015) ..................................................................23, 24

*Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395 (S.D.N.Y. 2013).......................13

v

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) .............................18

*SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015), *aff'd*, 882 F.3d
    333 (2d Cir. 2018)..........................................................................................................18

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)...................................................21

*SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163
    (S.D.N.Y. Mar. 30, 2019) ....................................................................................17, 19, 21

*Stuto v. Fleishman*, 164 F.3d 820 (2d Cir. 1999)..............................................................38

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004)........................................20

*Matter of Susan M. v. New York Law School*, 76 N.Y.2d 241 (1990) ..............................36

*Torain v. Casey*, No. 16CIV2682VECJCF, 2016 WL 6780078 (S.D.N.Y. Sept.
    16, 2016) ......................................................................................................................39

*Van Bourgondien-Langeveld v. Van Bourgondien*, No. 10-CV-0077 JFB WDW,
    2010 WL 5464890 (E.D.N.Y. Dec. 29, 2010) ..............................................................14

*Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880 (2d Dept 1987).................32

*Walden v. Fiore*, 571 U.S. 277 (2014)..............................................................................21

*Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652
    (S.D.N.Y. Mar. 24, 2009) ............................................................................................36

**Statutes and Rules**

29 U.S.C. § 794...............................................................................................................30

42 U.S.C. § 12131(1) .......................................................................................................30

42 U.S.C. § 12189............................................................................................................31

47 U.S.C. § 225...............................................................................................................30

The Americans with Disability Act ..................................................................................10

CPLR § 215(3)................................................................................................................38

CPLR § 302(a)................................................................................................................21

CPLR § 3211(a)(8) ..........................................................................................................27

Disabilities and Equal Opportunities Act of 2017 ...........................................................15

96010357

Fed. R. Civ. P. 4(f) ............................................................................................26, 27

Fed. R. Civ. P. 4(h)(2) ............................................................................................26

Fed. R. Civ. P. 4(k)(1)(B) ....................................................................................25, 26

Fed. R. Civ. P. 8 .....................................................................................................11

Fed. R. Civ. P. 12(b)(2) ....................................................................................1, 5, 17, 18

Fed. R. Civ. P. 12(b)(5) ....................................................................................1, 5, 26

Fed. R. Civ. P. 12(b)(6) ................................................................................... *passim*

Fed. R. Civ. P. 14 ..............................................................................................25, 26

Fed. R. Civ. P. 19 ...................................................................................................25

Federal Rule of Evidence 201 ................................................................................29

Federal Rule of Evidence 201(b)(2) .......................................................................29

New York City Human Rights Law .........................................................................11

New York State Human Rights Law ........................................................................11

Rehabilitation Act, 29 U.S.C. § 794 ...............................................................4, 10, 30

96010357

Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), defendants American University of Antigua ("AUA") and Manipal Education Americas, LLC ("MEA"), respectfully move for dismissal of Plaintiff's First Amended Complaint ("FAC") in its entirety as to both defendants.[1]

## PRELIMINARY STATEMENT

This is an action for alleged disability discrimination by a former student of a foreign medical school.  Plaintiff's claims before this Court lack any substantive nexus to New York and are meritless.

Defendant AUA is a medical school that is located, incorporated and operated in Antigua, the West Indies.  AUA makes all academic decisions regarding its students.  AUA's Promotions and Appeals Committees, comprised of senior faculty all located on AUA's campus in Antigua, decide whether a student will be promoted, terminated, or readmitted, and upon what conditions.  AUA's clinical psychologist, also based in Antigua, reviews and assesses requests for disability accommodations and decides whether and to what extent to grant them.  AUA does not have any offices in the United States.  It contracts with certain service providers in the United States for a range of administrative services.

Defendant MEA is a New York limited liability company that provides administrative services to various educational institutions worldwide.  AUA is one such institution.  These administrative services include, for instance, registrarial services, coordinating clinical rotations for AUA students, and processing fees from AUA students.  Except for certain ministerial actions by MEA, MEA has no substantive connection to the facts underlying this case.  Nor did any of the conduct giving rise to Plaintiff's disability discrimination and improper termination

---

1.   Plaintiff incorrectly has sued AUA and MEA as "American University of Antigua/Manipal Education Americas, LLC A/K/A GCLR, LLC."  AUA and MEA are two separate entities.  (*See* ECF 27, 28.)

claims take place in New York.

Plaintiff, who has dyslexia, is a former student of AUA and a resident of Washington D.C.  Since Plaintiff's admission to AUA as a transfer student in 2010, AUA consistently provided Plaintiff reasonable accommodations for all her exams.  Because Plaintiff had received an accommodation of time and a half from her previous medical school (*i.e.*, an extra 50 percent of the normally allotted exam time), AUA provided Plaintiff the same accommodation without requiring her to provide any supporting medical documentation.  Plaintiff passed all her exams with this accommodation until she had to take the Comprehensive Clinical Shelf Exam (the "CCSE"), which is the subject of this litigation.  Despite five attempts and AUA's consistent efforts to accommodate Plaintiff, Plaintiff was unable to pass the CCSE.

Unlike prior subject-based tests, the CCSE is the first exam that AUA students are required to take that cuts across all subject areas in the M.D. program, and also measures their clinical skills.  AUA students have to achieve a minimum score of 79 on the CCSE to qualify to sit for the Step 2 CK ("Clinical Knowledge") of the United States Medical Licensing Examination (the "USMLE").  The CCSE is created and administered by the National Board of Medical Examiners ("NBME").  The exam is designed to be taken in one sitting without breaks. NBME offers the test at Prometric centers around the United States.  Prometric centers run the exam on their systems as provided by the NBME and do not have the capacity to build breaks into it.  AUA has no control over the design of the exam either.  The CCSE, as designed by the NBME, has a duration of four hours and sixteen minutes.

Between 2014 and 2016, AUA allowed Plaintiff to take the CCSE five times.  Despite AUA giving Plaintiff the progressively-increasing accommodations that she asked for, Plaintiff was unable to obtain the minimum score of 79.  In 2014, Plaintiff took the CCSE three times.

96010357

AUA provided Plaintiff an accommodation of time and a half, *i.e.*, over six hours for the four

hours and sixteen minutes exam.  Plaintiff did not pass the CCSE on any of these attempts.

In June 2015, consistent with its written guidelines, AUA administratively withdrew

Plaintiff from the M.D. program after Plaintiff went, without notice, on an unauthorized leave of

absence of over six months.  At the time of the withdrawal, Plaintiff also was out of compliance

with AUA's academic progress requirements (*i.e.*, completing degree requirements within

specified time-periods), which is grounds for dismissal.  Upon Plaintiff's application, AUA

granted Plaintiff readmission.  Also consistent with its written guidelines, AUA conditioned the

readmission on Plaintiff obtaining the passing score on the CCSE and completing her graduation

requirements by March 31, 2016 (which AUA later extended to July 31, 2016 to give Plaintiff

even more time).  AUA's conditions were reasonable.  AUA requires that its students to finish

the M.D. program in 6.75 years.  By the time of Plaintiff's readmission, she was almost in her

eighth year of the program.

After her readmission, Plaintiff asked AUA for an accommodation of double time for the

CCSE.  Notwithstanding that Plaintiff did not provide AUA all the necessary medical

documentation, AUA approved Plaintiff's request.  In November 2015, Plaintiff took the CCSE

with double time, or more than eight and a half hours.  Plaintiff still did not pass the exam.

Plaintiff then asked AUA to permit her to take the CCSE over two days or provide her

additional time to take breaks.  Although Plaintiff did not provide any medical support for her

request, AUA worked diligently with NBME and the U.S. Department of Education, Office of

Civil Rights (the "OCR") (with which Plaintiff had filed a complaint) to address the issue.  Since

Prometric centers cannot offer the exam over two days, AUA tried to find a site, in the

geographic area specified by Plaintiff, that would allow Plaintiff to take the CCSE over two

3

days.  However, none of these sites were able to do so.  Instead, AUA arranged for Plaintiff to have more than 2.5 times the regular amount of time for the exam at a Prometric center, *i.e.*, more than ten hours and forty minutes.  Although, because of the design of the exam, the clock would not stop running, Plaintiff would effectively have twice the regular amount of time to take the exam, and more than two hours to take breaks as she saw fit.  During this time, Plaintiff could, for instance, get up, walk around, go to the restroom, eat or use more time for the test itself.  On July 1, 2016, Plaintiff took the CCSE for the fifth time.  Plaintiff again failed to obtain the minimum score of 79.

Ultimately, in July 2016, after multiple attempts and granting progressively-increasing accommodations to assist Plaintiff, AUA's Promotions Committee, based in Antigua, dismissed Plaintiff from the M.D. program for failure to satisfy her graduation requirements.  Plaintiff appealed the decision, and AUA's Appeals Committee, also based in Antigua, affirmed.

Plaintiff subsequently filed a complaint against AUA with the OCR.  The OCR is responsible for enforcing the anti-disability discrimination provisions of the Rehabilitation Act.  Plaintiff alleged in her complaint that AUA had failed to provide her "reasonable accommodations" for the CCSE.  After a thorough investigation that included interviewing Plaintiff and reviewing documentation provided by both Plaintiff and AUA, the OCR disagreed.  The OCR ruled in AUA's favor finding that Plaintiff had failed to show that AUA "discriminated against the complainant, on the basis of her disability."  The OCR also determined that AUA dismissed Plaintiff because Plaintiff had failed to satisfy her re-admission requirements, not, as Plaintiff alleged, because AUA had retaliated against her.  Despite the OCR's clear determination, Plaintiff now has filed the instant action, naming AUA, MEA and the NBME.  Plaintiff's action should be dismissed.

All of Plaintiff's claims against AUA and MEA distill down to the core allegations that AUA failed to provide Plaintiff "reasonable accommodations" for the CCSE and that Plaintiff's dismissal from AUA was improper.  As set forth more fully below, Plaintiff's claims should be dismissed for the following reasons:  (1) this case involves conduct and decisions made entirely in Antigua by an Antiguan medical school regarding a Washington, D.C.-based former student, and should be dismissed on *forum non conveniens* grounds in favor of Antigua; even if the Court does not dismiss the case on *forum non conveniens* grounds, (2) the Court lacks both general and specific jurisdiction over AUA because AUA is neither headquartered nor incorporated in New York, and Plaintiff's claims do not arise from any conduct she alleges occurred in New York; (3) Plaintiff also has failed to serve AUA with process and has made no attempt to correct that error; (4) with regard to MEA, the FAC contains not a single allegation of purported wrongdoing by MEA giving rise to Plaintiff's alleged claims – indeed, MEA appears to have been named in this action solely in a misguided effort to improperly obtain jurisdiction over AUA and a New York forum; and (5) Plaintiff's claims otherwise fail to state a claim for relief against AUA and MEA. As is evident from the FAC, Plaintiff cannot cure the deficiencies in her purported claims against AUA and MEA.  Therefore, the First Amended Complaint should be dismissed in its entirety, and Plaintiff should not be given another opportunity to amend.

## STATEMENT OF FACTS

### The Parties[2]

AUA is a medical school located and operated in Antigua.  (FAC ¶¶ 1, 12.)  It is

---

2.  Where this motion to dismiss relies on allegations in the FAC, those are accepted strictly for purposes of this motion.  For their Rule 12(b)(6) motion to dismiss, AUA and MEA are relying only on the allegations contained in the FAC or other documents outside the pleadings of which the Court may take judicial notice.  As discussed in the relevant sections below, the Court may consider documents outside the pleadings on motions made pursuant to Rules 12(b)(2) & (b)(5).

chartered and incorporated under the laws of Antigua and Barbuda.  (January 29, 2020

Declaration of Vernon Solomon, Vice President for Administration and Community Affairs at

AUA ("Solomon Decl.") ¶ 3.)  It has no offices in New York or the United States.  (*Id*. ¶¶ 3-4.)

AUA is not registered in New York State, nor does it have an agent designated to accept service

of process in New York.  (*See* February 3, 2020 Declaration of Amina Hassan (Hassan Decl.) ¶

3, Ex. 1 (attaching screenshots from the New York Department of State website showing that

AUA is not a business registered in New York).)  AUA contracts with certain vendors and

service-providers based in the United States to provide it specific services.  (Solomon Decl. ¶ 5.)

MEA is a separate and independent New York limited liability company that provides

back office and administrative services, such as accounting, IT, finance and registrarial services,

to various institutions of higher education internationally.  (*Id*.)  Under a services contract, MEA

provides similar services to AUA.  (*Id*.)  MEA does not make substantive, academic decisions

regarding AUA's students, and the FAC does not allege otherwise.  (*See id*.)  Rather, MEA

handles administrative matters for AUA, *e.g.*, coordinating and managing the paperwork for

AUA students' clerkships at U.S. hospitals; processing tuition fees; and handling the

administrative aspects of the admission and termination of AUA's U.S.-based students.  (*Id*.)

Plaintiff is a resident of Washington D.C. and a former student of AUA.  (FAC ¶¶ 11-12.)

NBME, the other defendant named in this case, is a non-profit organization with its principal

office located in Philadelphia, Pennsylvania.  (*Id*. ¶ 21.)

### Plaintiff Is Admitted to AUA & Provided Exam Accommodations

Students attending AUA complete their first two years in Antigua and thereafter

participate in clinical rotations in various hospitals in the United States, with which AUA has

affiliations.  (FAC ¶ 12.)  AUA requires that its students take certain "shelf" exams at the end of

96010357

core clinical rotations in order to graduate.  (*Id*. ¶ 42.)[3]  This includes the CCSE or

Comprehensive Clinical Shelf Examination, which is the subject of this litigation.  (*See id*.)

In 2010, AUA accepted Plaintiff as a fifth semester transfer student from another foreign

medical school.  (*Id*. ¶¶ 11, 37.)  At the time of her admission, Plaintiff was a resident of

Washington, D.C., as she continued to be for her entire tenure at AUA.  (*Id*. ¶ 11.)

In advance of taking her first shelf exam at AUA, Plaintiff requested an accommodation

on the grounds of her dyslexia.  (*Id*. ¶¶ 1, 38.)  AUA had no personnel in the United States who

handle accommodation requests and informed Plaintiff accordingly.  (*See id*. ¶ 38.)  Rather, all of

the decisions regarding whether and what accommodations to provide students are made by

AUA's clinical psychologist in Antigua.  (Solomon Decl. ¶ 7.)  Accordingly, AUA directed

Plaintiff to Dr. James Rice, Chairman of University Counseling Services at AUA, who is based

in Antigua.  (FAC ¶ 38.)  Dr. Rice granted Plaintiff an accommodation of time and a half for the

shelf exam, which Plaintiff sat and passed in 2010.  (*Id*.)  AUA similarly granted Plaintiff an

accommodation of time and a half for her Family Medicine and OB/GYN shelf exams.  (*Id*. ¶

44.)  Plaintiff passed these as well.  (*Id*.)

### Plaintiff Is Unable to Pass the CCSE Despite Increasing Accommodations

In 2014, Plaintiff took the CCSE three separate times – each time in Virginia.  (*Id*. ¶¶ 30,

50.)  Each time, AUA provided Plaintiff an accommodation of time and a half – the same

accommodation that had been provided to Plaintiff for previous exams.  (*Id*. ¶ 50.)  Plaintiff did

not pass the CCSE on any of these attempts.  (*Id*.)

On June 11, 2015, AUA administratively withdrew Plaintiff from the M.D. program.  (*Id*.

---

3.   "Shelf" exams refer to exams designed by the NBME that different medical schools might require their students
     to take.  There are shelf exams that test a student's abilities in particular courses, or like the CCSE, across
     various courses and skills.

96010357

¶ 46.)  AUA explained to Plaintiff that a student who is inactive, *i.e.*, not engaged in an active clinical rotation for more than six months, is subject to administrative withdrawal.  (*Id.*)  Plaintiff asked for re-admission on the grounds that she had been inactive because of her pregnancy and the birth of her second child.  (*Id.* ¶ 46.)  AUA readmitted Plaintiff on June 17, 2015.  (*Id.* ¶ 47.)  AUA conditioned Plaintiff's readmission on completing the remaining requirements for graduation, including any remaining clinical rotations and passing the CCSE with a minimum score of 79, by March 31, 2016.  (*Id.* ¶¶ 47-48.)  This is the same minimum score that all AUA students have to achieve to qualify for the USMLE Step 2.  (Solomon Decl. ¶ 9; *see also* Hassan Decl., Ex. 2 (AUA Student Handbook) at 53.)[4]  Although the policy at the time of Plaintiff's readmission was that students could take the CCSE as many times as they wanted (*see* Plaintiff's Ex. 1), this was within the limitations of AUA's overall policy that students complete the M.D. program in a timely manner, *i.e.*, within 6.75 calendar years of attendance.  (Hassan Decl., Ex. 2 (AUA Student Handbook) at 30.)  By the time of her withdrawal, Plaintiff was close to beginning the eighth year of her M.D. program.[5]

In advance of taking the CCSE for a fourth time, Plaintiff wrote to Dr. Rice in Antigua asking for an accommodation of double the regular amount of time provided for the exam.  (FAC ¶ 52.)  Dr. Rice granted the accommodation after receiving a letter from Plaintiff's clinical

---

4. Where a complaint attaches an excerpt of a document (as the FAC does with AUA Spring 2016 Student Handbook), the document is considered incorporated into the complaint in full.  *See Albers v. Guardian Life Ins. Co. of Am.*, No. 98 CIV.6244 DC, 1999 WL 228367, at *1 n.2 (S.D.N.Y. Apr. 19, 1999) (considering the entirety of an agreement that the complaint excerpted because it was fully incorporated into the complaint by reference).

5. She had joined AUA as a fifth semester/3rd year transfer student in January 2010, deferred to fall 2010.  (*See* FAC ¶ 37.)  Thus, Plaintiff would begin her eighth year in the M.D. program in fall 2015.

psychologist.  (*Id.* ¶¶ 52-53.)[6]  On November 25, 2015, Plaintiff took the CCSE, again in

Virginia, with an accommodation of double time.  (*Id.* ¶¶ 30, 53.)  Plaintiff again failed to obtain

a minimum score of 79.  (*Id.* ¶ 54.)

Plaintiff thereafter asked AUA whether AUA would be willing to find a testing site

where Plaintiff could take the exam over a 2-day period.  (*See id.* ¶ 55.)  Plaintiff provided no

medical support for her request, as evidenced from the absence of any allegations to the contrary

in the FAC.  (*See id.* ¶¶ 55-56.)  Dr. Juli Valtschanoff, AUA's Chief Proctor in Antigua,

conducted the search for a university that could accommodate Plaintiff's request, but was unable

to find such a site.  (*See id.* ¶ 57; Solomon Decl. ¶ 10.)  Dr. Valtschanoff informed Plaintiff

accordingly.  (FAC ¶ 57.)[7]  Instead, AUA granted Plaintiff an accommodation of more than two

times, so that in addition to having double the regular amount of time for the exam, Plaintiff also

could have at least two more hours to take breaks.  (*See id.* ¶¶ 59-61.)[8]  AUA also extended the

deadline for Plaintiff to complete her graduation requirements from March 31, 2016 to July 31,

2016.  (*Id.* ¶ 58.)  On July 1, 2016, Plaintiff took the CCSE for a fifth time, again in Virginia,

with an accommodation of more than double time.  (*Id.* ¶ 60-61.)  Plaintiff again could not obtain

---

6.  Dr. Rice granted Plaintiff's request even though he did not receive, at least at that time, clinical assessments from Plaintiff's psychologist supporting the double-time accommodation request.

7.  Plaintiff's original Complaint noted that Dr. Valtschanoff was located in Antigua.  (ECF 1 ¶ 36.)  The FAC conveniently deletes this detail.

Plaintiff also has misleadingly alleged in the FAC that Dr. Valtschanoff "advised [her] in an email to 'take the exam like any other student needing accommodation.'"  (FAC ¶ 57.)  Dr. Valtschanoff's email in fact reads in full as follows:  "Debbie Ann, All our attempts to get you a 2-day CCSE accommodation at the University of Maryland and at Hopkins have failed.  I believe that your only remaining option it to take the exam in a single day at a Prometric center, *like our other students with accommodations*.  Please let me know if you agree, so we can schedule you as soon as possible."  (Hassan Decl., Ex. 3 (emphasis added).)

8.  Although Plaintiff alleges that she had an additional "one hour and four minutes" in paragraph 60 of the FAC, elsewhere, she notes that the CCSE was 9 hours long when she took it with an accommodation of double time and 11 hours long when she took it for the fifth time, with more than double time.  (*See* FAC ¶¶ 59, 61.)  Thus, when Plaintiff took the CCSE in June 2016, in addition to double the regular amount of time for the exam, she had at least two extra hours to take breaks as she wished.

9

a passing score.  (*Id*. ¶ 64.)

### AUA Dismisses Plaintiff for Failure to Complete Graduation Requirements

After multiple attempts to accommodate Plaintiff's testing needs, in July 2016, AUA dismissed Plaintiff from the M.D. program for failure to meet the conditions of her readmission and complete her graduation requirements by the July 31, 2016 deadline.  (*See id*. ¶ 65; Plaintiff's Ex. 15.)  This decision was made by AUA's Promotions Committee, which makes all academic decisions regarding AUA students, and, like other academic functions of the university, is based in Antigua.  (Solomon Decl. ¶¶ 11-12; *see also* FAC ¶ 65 (Plaintiff was informed that she would be receiving a formal letter of dismissal from the "[P]romotions Committee"); Plaintiff's Ex. 16 (Plaintiff acknowledging that her termination letter came from the Promotions Committee in Antigua).)  Plaintiff appealed the Promotions Committee's decision to dismiss her to AUA's Appeals Committee.  (FAC ¶ 67.)  The Appeals Committee, also based in Antigua, upheld the dismissal.  (Solomon Decl. ¶¶ 11-12; FAC ¶ 67.)[9]

Plaintiff subsequently filed a complaint with the Department of Education, Office of Civil Rights ("OCR").  (FAC ¶ 36.)  OCR ruled against Plaintiff (*id*.), in a detailed decision based on information provided by both Plaintiff and AUA (*see* Hassan Decl., Ex. 6).[10]

### Plaintiff's Claims in this Litigation

The FAC alleges five causes of action:  (1) Violation of the Rehabilitation Act, against AUA and MEA; (2) Violation of the Americans with Disability Act, against AUA, MEA and NBME; (3) Breach of Contract, against all defendants; (4) Breach of the Duty of Good Faith and

---

9.  The FAC deletes Plaintiff's concession in the original Complaint that the Appeals Committee was chaired by Dr. Rice, who the Plaintiff acknowledges was based in Antigua.  (*See* ECF 1 ¶46; FAC ¶¶ 19, 38, 51-52, 77.)

10.  Although Plaintiff has alleged in the FAC that in 2016 she appealed the OCR's determination (FAC ¶ 36), AUA is aware of no such appeal.

Fair Dealing, against AUA and MEA; and (5) Intentional/Negligent Infliction of Emotional

Distress, against AUA and MEA."[11]  All the claims are based on the principal allegations that (1)

AUA failed to provide Plaintiff reasonable accommodations for the CCSE, and (2) Plaintiff's

dismissal from AUA was a breach of contract and/or otherwise improper.

On November 11, 2019, co-defendant NBME moved to dismiss Plaintiff's original

Complaint as to NBME.  (ECF 14-17.)  AUA and MEA filed their motion to dismiss the original

Complaint on December 9, 2019.  (ECF 36-40.)  Plaintiff served the FAC on or about January

10, 2020 on AUA and MEA's counsel, by mail.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS THE CASE ON *FORUM NON CONVENIENS* GROUNDS

As a threshold matter, this case does not belong in a New York court.  Plaintiff is not a

resident of New York and her choice of forum is not entitled to deference; AUA is an Antiguan

medical school, and all the decisions relevant to Plaintiff's claims were made in Antigua; most of

the key witnesses are located in Antigua; New York has no interest in, or nexus to, the subject

matter of this case, whereas Antigua does; and the only New York party in this case, MEA, is an

improper defendant in this case.  Therefore, the Court should dismiss this case on *forum non*

*conveniens* grounds in favor of Antigua.

---

11. The FAC states in the introduction that Plaintiff is alleging claims against AUA and MEA under the "New York State and City Human Rights Act."  (FAC ¶9.)  However, the FAC does not in fact assert any cause of action under either statute.  (*See id.* ¶¶ 72-103.)  Insofar as Plaintiff is purporting to allege claims against AUA and MEA under these statutes, those must be dismissed because the FAC's cursory reference to them does not satisfy the notice requirements of Rule 8.  *See Hudson v. Artuz*, No. 95 CIV. 4768 (JSR), 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (the purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense.") (citation and quotation marks omitted).  Moreover, this same deficiency was raised in AUA's and MEA's original motion to dismiss (ECF 37 at 9 n.7), and the FAC does not cure it.

### A.   *Forum Non Conveniens* Standard

The Second Circuit has instituted a three-step test for Rule 12(b)(6) motions to dismiss on *forum non conveniens* grounds:  (1) first, the court should determine the degree of deference properly accorded to plaintiff's choice of forum; (2) second, the court should consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) finally, the court should balance the public and private interests implicated by the choice of forum.  *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir.2001) (en banc)).  Applied here, this three-step analysis decidedly favors dismissal of this case in favor of Antigua.

### 1.   Plaintiff's Choice of Forum is Not Entitled to Deference.

Generally, "a plaintiff's choice of forum is entitled to substantial deference."  *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).  This, however, is not the case where a U.S. citizen brings suit in a district other than her home district.  *Iragorri*, 274 F.3d at 71.  The more it appears that plaintiff's choice of forum was based on "forum shopping reasons," such as "attempts to win a tactical advantage resulting from local laws," or "for a higher damage award or for some other litigation advantage," the less deference is afforded to the plaintiff's choice.  *Pollux*, 329 F.3d at 71; *see Iragorri*, 274 F.3d at 72.  Thus, in determining the degree of deference afforded to plaintiff's choice, courts look at the plaintiff's "*bona fide*" connections to the forum state.  *See Pollux*, 329 F.3d at 71.  Courts also consider other factors of convenience, such as availability of evidence and witnesses.  *See Iragorri*, 274 F.3d at 72.  Here, Plaintiff's choice of forum in New York should not be afforded deference because neither Plaintiff, nor her claims, have any "*bona fide*" connections to New York and Antigua is a more practical and logical forum for this dispute.

First, none of the relevant and proper parties to this dispute are located in New York.

12

Plaintiff is a resident of Washington D.C., as she was "throughout her tenure at AUA." (FAC ¶ 11.) AUA is an "offshore medical school headquartered offshore in the country of Antigua." (*Id*. ¶ 12.) Contrary to the allegations in the FAC, AUA does not have an office in New York. (*See* Hassan Decl., Ex. 1.)[12] NBME has its "principal office" in Philadelphia, Pennsylvania. (FAC ¶ 21.) The only New York party is MEA, which, as discussed below in Section IV.C, is not a proper party to this litigation.

Second, the key operative facts underlying Plaintiff's claim did not occur in New York: Plaintiff took the CCSE exams in Virginia (FAC ¶ 30); the decision regarding whether and what accommodations were to be provided to Plaintiff for the CCSE exam were made by Dr. James Rice, in Antigua (*id*. ¶¶ 51-52); Dr. Rice is the primary witness regarding Plaintiff's failure to accommodate claims and is based in Antigua (*id*.); Plaintiff was dismissed by the Promotions Committee, based in Antigua; and the dismissal was affirmed by the Appeals Committee, also based in Antigua. (*See supra* at 10.)

Plaintiff has not, and cannot, allege any connections to New York that in fact underlie her claims. The FAC includes a laundry list of alleged New York connections – *e.g.*, the "[d]ecision to admit Plaintiff to the medical school came from AUA's New York's administrative office;" Plaintiff attended an orientation in New York in 2010; Plaintiff completed her first clinical rotation in New York; Plaintiff communicated with personnel in New York regarding her clinical selection sites and the "setting up" of the accommodations for her exams (that had been permitted by AUA personnel in Antigua); and Plaintiff was informed of her dismissal from the M.D. program for the first time by Kristal Booth (an MEA employee), based in New York.

---

12. On a Rule 12(b)(6) motion, a court is permitted to take judicial notice of public information available on a government website. *See, e.g.*, *Simon v. Smith & Nephew, Inc.*, 990 F.Supp.2d 395, 401 n.2 (S.D.N.Y. 2013) (taking judicial notice of public records contained on the FDA website).

13

(FAC ¶¶ 30-32).  Even if these allegations are assumed to be true, they have nothing to do with the decision by AUA to accommodate or dismiss her.  As noted above, the decisions regarding what accommodations Plaintiff would be granted and whether to terminate Plaintiff were all made in Antigua.  *See Chubb Ins. Co. of Europe S.A. v. M/V HUMBOLDT EXPRESS*, No. 02 CV 1294 (GBD), 2003 WL 22434092, at *1 (S.D.N.Y. Oct. 24, 2003) ("The weight to be given plaintiff's choice of forum is further diminished where the operative facts underlying the action have no material connection with the chosen forum.").  Plaintiff has not alleged, nor can she truthfully, that MEA had any substantive role or control over the decision to accommodate or dismiss her.

Accordingly, Plaintiff's choice of forum in New York should be given limited, if any deference.  *See Van Bourgondien-Langeveld v. Van Bourgondien*, No. 10-CV-0077 JFB WDW, 2010 WL 5464890, at *4 (E.D.N.Y. Dec. 29, 2010) ("little deference" was owed to the plaintiffs' choice of forum, because none of the plaintiffs lived in the forum, only one of the two defendants lived in the forum district, "operative events" in the action took place in the Netherlands, and one key witness was located there).

### 2.   Antigua is an Adequate Alternative Forum.

An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute.  *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)).  The legal relief available in the alternative forum need not be identical.  *Id*. ("The availability of an adequate alternate forum does not depend on the existence of an identical cause of action in the other forum."); *Piper Aircraft*, 454 U.S. at 250 ("[D]ismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery.").

14

Here, Antigua is an adequate alternative forum.  Especially in the event that NBME is

dismissed, AUA, the only proper defendant in this dispute as between AUA and MEA, is an

Antiguan school, and, therefore, amenable to service of process in Antigua.  Antigua also is an

adequate forum to resolve the pending dispute.  Antigua has instituted the Disabilities and Equal

Opportunities Act of 2017, which affords relief for discrimination based on a disability,[13] and

Antiguan law also provides for breach of contract and negligence claims.  *See Feinstein v.*

*Curtain Bluff Resort*, No. 96 CIV. 8860 (RPP), 1998 WL 458060, at *5 (S.D.N.Y. Aug. 5, 1998)

(finding Antigua to be an adequate alternative forum for negligence claims); *Brown's Bay Resort*

*Ltd (Appellant) v Pozzoni*, Court of Appeal of the Eastern Caribbean Supreme Court (Antigua

and Barbuda) (2016) (resolving breach of contract claim) (attached to Hassan Decl., Ex. 4.)

### 3.    Public and Private Factors Favor Dismissal in Favor of Antigua.

Finally, the balance of public and private factors favors dismissal of this case in favor of

Antigua.[14]  Here, the relevant public factors weigh in favor of dismissal on the grounds of *forum*

*non conveniens*.  Antigua has a stronger local interest in the dispute since it relates to alleged

discrimination by AUA, an Antiguan medical school, against one of its students.  New York, on

the other hand, has no local interest in the dispute since New York's only connection to the case

is MEA, which provides certain administrative services to AUA and against which no specific

---

13.  *See* http://legalaffairs.gov.ag/pdf/bills/DISABILITIES_EQUAL_OPPORTUNITIES_BILL_2017-PV.pdf.

14.  For a *forum non conveniens* analysis, public interest considerations include, for instance:  "[a]dministrative
difficulties" for U.S. courts when litigation is piled up in congested centers instead of being handled at its
origin; the fact that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which
has no relation to the litigation;" "a local interest in having localized controversies decided at home;" and "an
appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must
govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in
law foreign to itself."  *Iragorri*, 274 F.3d at 74.  "Private interest factors include:  the relative ease of access to
sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining
attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and
all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*. at 73–74 (quotation
marks omitted).

96010357

misconduct has made.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) ("Jury duty is

a burden that ought not to be imposed upon the people of a community which has no relation to

the litigation.").  Private factors, such as the location of proof and key witnesses, also favor

dismissal.  Dr. Rice, who assessed and granted accommodations to Plaintiff, is based in Antigua,

as are members of the Promotions and Appeals Committee who made the decisions regarding

Plaintiff's graduation requirements and dismissal.  The majority of relevant witnesses and the

most relevant documents, therefore, are located in Antigua as well.

### B.   Other New York Courts Have Dismissed Cases involving AUA on *Forum Non Conveniens* Grounds

The argument for dismissing this case on *forum non conveniens* grounds is further

bolstered by the fact that many New York courts have dismissed cases against AUA on similar

grounds.  *See, e.g.*, *Aina v American Univ. of Antigua*, 161 A.D.3d 508, 508-09 (2d Dept 2018)

(affirming dismissal on *forum non conveniens* grounds of former student's racial discrimination

claim against AUA where plaintiff was an out of state resident, "the underlying conduct took

place in Georgia or Antigua, where the vast majority of witnesses and documents are located,"

and the "fact that defendant retains a New York firm to provide administrative support is not

sufficient to render New York an appropriate forum."); *Alla v. American Univ. of Antigua*, 965

N.Y.S.2d 469, 469 (1st Dept 2013) (affirming dismissal on *forum non conveniens* grounds of

student's Article 78 proceeding against AUA because the trial court "properly balanced the

appropriate factors" such as "the nonresidency of both parties" – noting that the "evidence does

not support petitioner's contention that respondent [AUA] has its principal office in New York"

– and "the location of the events giving rise to the action and of the potential witnesses and

documents, which center almost entirely in Antigua."); *Garcia v American University of*

*Antigua*, 156081/2012, Decision & Order (N.Y. Sup. Ct. Oct. 22, 2013) (dismissing on *forum*

*non conveniens* grounds former New Jersey student's fraud and misrepresentation claims against AUA because neither party was a resident of New York, most of the relevant documents and witnesses, particularly school officials, were in Antigua, outside the reach of New York's subpoena power, and AUA's only connection with New York was through [MEA], but [MEA]'s role was limited to administrative services) (attached to Hassan Decl., Ex. 5.); *Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) (dismissing on *forum non conveniens* grounds personal injury case against AUA and MEA after dismissing MEA where, among others, the accident did not occur in New York and relevant witnesses and documentary evidence were located in Antigua).  A balancing of similar considerations weighs in favor of dismissing this case on grounds of *forum non conveniens* as well, in favor of Antigua.

*********

In the event that the Court does not dismiss this case on *forum non conveniens* grounds, AUA and MEA respectfully submit that the FAC be dismissed on grounds of lack of personal jurisdiction and failure to serve, as to AUA; and for failure to state a claim as to AUA and MEA.

## II.      THE COURT LACKS PERSONAL JURISDICTION OVER AUA

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted).  The plaintiff must make at least "a *prima facie* showing by its pleadings and affidavits that jurisdiction exists.'" *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 429 (S.D.N.Y. 2019) (citations omitted).[15]

---

15.  Where a court decides to hold an evidentiary hearing to resolve a Rule 12(b)(2) motion, the plaintiff must prove jurisdiction by a preponderance of evidence.  *See SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163, at *4 (S.D.N.Y. Mar. 30, 2019).  Here, jurisdictional discovery is not warranted since Plaintiff has not made a "threshold showing" of jurisdiction.  *See Daval Steel Prod., a Div. of Francosteel Corp. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) ("While discovery on the jurisdictional question is sometimes appropriate when there is a motion to dismiss for lack of jurisdiction, plaintiff must first

Although the court must view the facts in the light most favorable to plaintiff, the plaintiff may not rely on "conclusory statements without supporting facts." *Id* at 430.  Nor is the court required to credit all allegations regardless of their support.  *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015), *aff'd*, 882 F.3d 333 (2d Cir. 2018) ("resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support") (citation and quotation marks omitted).  On a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings.  *See Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 315 (S.D.N.Y. 2007).

Generally, a New York court may exercise either general or specific jurisdiction over a defendant.  *See Brown*, 394 F. Supp. 3d at 430.  In either case, in order to exercise personal jurisdiction over a foreign or non-domiciliary defendant, (1) the state's long-arm statute must permit the exercise of jurisdiction; and (2) exercise of personal jurisdiction over the defendant must comport with constitutional due process.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal citation omitted).  Here, Plaintiff cannot show that the Court has either general or specific jurisdiction over AUA.

### A.      The Court Lacks General Jurisdiction Over AUA

General or all-purpose jurisdiction permits a court to hear any and all claims against a defendant.  *See Brown*, 394 F. Supp. 3d at 430-31.  Under the Supreme Court's decision in *Daimler AG v. Bauman*, a corporation is subject to general jurisdiction, compatible with constitutional due process, only in its place of incorporation, its principal place of business or in an "exceptional case," "where the corporation's 'contacts with another forum are so substantial as to render it 'at home' in that state."  571 U.S. 117, 139 n.19 (2014); *Sonera Holding B.V.*, 750

---

make a threshold showing that there is some basis for the assertion of jurisdiction. Plaintiff must, at the least, allege facts that would support a colorable claim of jurisdiction.").

F.3d at 223.  "Exceptional case" jurisdiction exists in only very narrow circumstances.  As the

Second Circuit has noted, the only example of an "exceptional case" referred to by the Supreme

Court in *Daimler* is *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which

a foreign company's principal place of business was determined to be Ohio because its

headquarters operations had temporarily moved there from the Philippines due to wartime

Japanese occupation.  *See Daimler*, 517 U.S. at 129-30; *Brown v. Lockheed Martin Corp.*, 814

F.3d 619 (2d Cir. 2016).

Here, the Court's exercise of general jurisdiction over AUA would be incompatible with

constitutional due process.  AUA is incorporated under the laws of Antigua and its principal

place of business is in Antigua.  (*See* FAC ¶ 12; Solomon Decl. ¶ 3.)  Nor, as set forth below,

does the FAC allege any facts from which it may reasonably be inferred that this is an

"exceptional case" in which general jurisdiction may nonetheless be exercised over AUA.

The FAC alleges that AUA "regularly transact[s] business in New York State."  (FAC ¶

29.)  This assertion, even if accepted as true, is insufficient to warrant exercise of general

jurisdiction over a non-domiciliary defendant.  *See Daimler*, 517 U.S. at 137-38 ("[S]ubstantial,

continuous, and systemic course of business," in and of itself, is insufficient to render a

corporation "at home" in a state."); *SPV Osus Ltd. v. Unicredit Bank Austria*, 18-cv-3497(AJN),

2019 WL 1438163 (S.D.N.Y., Mar. 30, 2019) (no general jurisdiction where plaintiff alleged that

foreign defendants "and/or their agents regularly transacted business in New York.").

The FAC also alleges, without support, that the Court has jurisdiction over AUA because

AUA "has a principal United States office in New York City."  (FAC ¶ 25.)  Elsewhere, the FAC

alleges that AUA has "corporate offices" or an "administrative office" in New York.  (*Id*. ¶¶ 1,

30.)  These allegations likewise cannot confer general jurisdiction over AUA:

19

First, Plaintiff's assertions are both conclusory and demonstrably incorrect (when viewed in light of government documents of which the Court may take judicial notice). AUA has no offices in New York. (*See* Solomon Decl. ¶ 4; Hassan Decl., Ex. 1 (screenshots from the New York Department of State website showing that AUA is not registered as a New York business entity).) MEA has offices in New York, but again, MEA is a separate entity.

Second, even if the Court were to treat MEA's offices in New York as an AUA office for purposes of this motion, "exceptional case" general jurisdiction still could not be exercised over AUA. The Second Circuit and other New York courts have found no general jurisdiction based on a defendant having an office in New York (which, as here, is not defendant's principal place of business) and involving significantly more connections with New York than those alleged here. *See, e.g.*, *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) (no general jurisdiction over foreign bank that had four branch offices in New York); *Bonkowski v. HP Hood LLC*, No. 15CV4956RRMPK, 2016 WL 4536868, at *2 (E.D.N.Y. Aug. 30, 2016) (no general jurisdiction over a Delaware company with its principal place of business in Minnesota, although it had manufacturing plants and an "administrative office" in New York); *see also In re Sargeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (that a foreign entity had its "primary business offices" in New York could not warrant the exercise of general jurisdiction over it).

For the foregoing reasons, this Court should not exercise general jurisdiction over AUA.

### B.     The Court Lacks Specific Jurisdiction Over AUA

Nor does the Court have specific jurisdiction over AUA. Specific jurisdiction is claim-specific, *i.e.*, it "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff "must establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). The Court can

exercise specific jurisdiction over AUA for a particular claim only if doing so complies with the New York long-arm statute and constitutional due process.  *See Brown*, 394 F. Supp. 3d at 434.

*New York Long-Arm Statute*:  A non-domiciliary defendant may be subject to personal jurisdiction under New York's long-arm statute where the defendant, directly or through an agent, engages in one of the following acts <u>and</u> the asserted claim "arise[s] out" of that act:  (1) transacts business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act without the state causing injury to person or property within the state; or (4) owns, uses or possesses real property within the state.  *See* CPLR § 302(a).  To satisfy the "arise from" requirement, the plaintiff must show that there was an "articulable nexus" and "substantial relationship" between the transaction and the claim asserted.  *See Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016).

*Constitutional Due Process*:  To comport with constitutional due process "the defendant's suit-related conduct must create a substantial connection with the forum."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  "This turns on not just the degree of contacts, but whether a sufficient causal relationship exists between the contacts and the suit-related conduct."  *SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163, at *6 (S.D.N.Y. Mar. 30, 2019).  Courts require "either proximate or but-for causation" depending on the extent of "the relationship among the defendant, the forum, and the litigation."  *Id*. (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)).

Here, the FAC does not identify the specific provision of the New York long-arm statute upon which Plaintiff relies.  Regardless, none of Plaintiff's claims "arises from" or has a "causal" connection with New York.  Thus, as set forth in more detail below, the FAC does not satisfy the requirements of New York's long-arm statute or constitutional due process for the

exercise of specific jurisdiction over AUA for any of Plaintiff's claims.

All of the Plaintiff's claims are based on the core allegations that (1) AUA did not provide Plaintiff "reasonable accommodations" to take the CCSE and (2) AUA improperly dismissed her from the M.D. program before she could graduate. None of the decisions or conduct underlying these claims occurred in New York. Dr. Rice, based in Antigua, decided whether and what accommodations to provide Plaintiff for the CCSE; Dr. Valtschanoff, AUA's Chief Proctor in Antigua, attempted to arrange for a 2-day CCSE examination for Plaintiff and ultimately informed her that she would need to take the exam over the course of one day; Plaintiff sat the CCSE, five times, in Virginia; the decision to dismiss Plaintiff for failure to meet her academic requirements was taken in Antigua; and Plaintiff suffered the alleged consequences of that decision in Washington D.C. where she resides. (*See supra* at 7-11.) Thus, none of the alleged actions or inactions that gave rise to or were the causal reason for Plaintiff's claims for failure to accommodate and improper dismissal took place in New York.

The FAC alleges a long list of purported New York connections that either were incidental to the decisions regarding whether and what accommodations to provide Plaintiff for the CCSE or to terminate her from the M.D. program or, in the case of the bulk of these alleged connections, entirely unrelated to Plaintiff's claims. Neither type of allegation can confer specific jurisdiction in New York.

Plaintiff has alleged that she had extensive communications with "AUA's personnel in New York City" regarding the setting up of the CCSE exam and the setting up of the accommodations for the exam. (FAC ¶ 16.) For example, Exhibit 1 to the FAC shows an email from Antonia Craig, an MEA employee, describing the process by which an AUA student can submit a request for an accommodation. Plaintiff also has alleged that the "initial decision to

terminate Plaintiff from AUA came from or through AUA's New York office."  (FAC ¶ 30.)

This allegation appears to relate to a later allegation in the FAC that Kristal Booth, an MEA

employee, informed Plaintiff by email that Plaintiff had been dismissed from AUA and that

Plaintiff would be receiving a formal letter of dismissal from AUA's Promotions Committee.

(*Id.* ¶ 65.)  Again, Plaintiff does not allege, nor can she, that Ms. Booth, an MEA employee, had

any role, power or authority over a decision by AUA, an entirely separate entity.  Moreover,

administrative email and telephonic communications to and from New York that are incidental to

the conduct underlying the claims cannot confer specific jurisdiction.  Moreover, Plaintiff does

not allege that these communications or any conduct in New York gave rise to her claims.  *See,*

*e.g.*, *Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (where contract

was negotiated, executed and breached outside of New York, plaintiff's communications from

New York with defendant's employees, and meeting with one of defendant's principals in New

York, regarding the contract did not give New York courts specific jurisdiction over the claim of

breach of contract); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 339–40 (S.D.N.Y. 2016)

(communications with New York that were incidental consequences of the foreign contract were

insufficient to confer specific jurisdiction over foreign defendants for breach of that contract);

*Scott v. ProClaim America, Inc.*, No. 14 CV 06003(DRH)(ARL), 2015 WL 3851243, at *4

(E.D.N.Y. June 22, 2015) (communications to and from New York regarding plaintiff's injuries

and doctors' visits and informing him of his termination of employment did not confer the court

with specific jurisdiction over plaintiff's disability discrimination claim where the employer was

located, and made the decision to terminate, in Texas and the communications "d[id] not form

the substantive basis of the Plaintiff's claim" or themselves constitute "instances of

discriminatory treatment."); *id*. (distinguishing case where the decision to terminate was made in New York, thus vesting New York courts with specific jurisdiction).

Plaintiff's other alleged New York connections, far from giving rise to, are entirely unrelated to Plaintiff's claims.  For example, Plaintiff alleges that she had extensive communications with her clinical coordinators, who were located in New York.  (FAC ¶ 13.) These were all MEA employees, who in their capacity as clinical coordinators would have communicated with Plaintiff regarding the arrangement of her clinical rotations.  (*See* Solomon Decl. ¶ 6; *see also* Plaintiff's Exs. 7-11 (showing some of these communications).)  These communications, however, have nothing to do with whether reasonable accommodations were provided to Plaintiff for the CCSE by AUA and whether she was properly dismissed by AUA for failure to comply with the conditions of her readmission.  The FAC also alleges that Plaintiff had "extensive" communications with Dr. Bell, AUA's Executive Dean of Clinical Services, whose emails include MEA's New York address in his signature block.  (FAC ¶ 13.)  Even accepting as true that Dr. Bell had these communications while in New York, Plaintiff's only alleged communications with Dr. Bell involve Dr. Bell directing Plaintiff to work with Dr. Rice in Antigua regarding her request for accommodations and extending her deadline to graduate. (FAC ¶¶ 51, 58.)  Neither communication can be considered as giving rise to Plaintiff's claims.

Plaintiff's laundry list of other *alleged* New York connections similarly has nothing to do with Plaintiff's claims – *e.g.*, that the "decision to admit Plaintiff to the medical school came from AUA's New York's administrative office;"[16] that in 2010, Plaintiff attended an orientation sponsored by AUA in New York City; that Plaintiff completed her first clinical course work at AUA in New York; and that Plaintiff paid her tuition to personnel in New York – even if

---

16.  As noted above, AUA does not have an office in New York.  (*See supra* at 6.)

accepted as true, have nothing to do with Plaintiff's specific claims.  (*See* FAC ¶¶ 13, 30, 31).

Unrelated contacts with the forum state cannot create specific jurisdiction.  *See Bristol-Myers*

*Squibb Co. v. Superior Court of Calif, San Francisco Cty.*, 137 S.Ct. 1773, 1782 (2017) (out-of-

state defendant's research in the forum state that was unrelated to the claims, was not relevant to

the specific jurisdiction analysis).[17]

      Finally, the FAC alleges, "[t]hat the Court may exercise jurisdiction over AUA …

because defendant, AUA, has its principal United States office in New York City" and that

"AUA and its agent/MEA … regularly transact business in New York State."  (FAC ¶ 25, 29.)

Even assuming that these allegations are true, which they demonstrably are not, generalized

contacts with the forum state cannot confer claim-specific jurisdiction.  *See Bristol-Myers*

*Squibb*, 137 S.Ct. at 1781 (a defendant's "general connections with the forum are not enough" to

confer specific jurisdiction).

      For the foregoing reasons, this Court should not exercise specific jurisdiction over AUA

for any of Plaintiff's claims.

### C.    Plaintiff Cannot Rely on "Bulge Jurisdiction" Over AUA

      The FAC also appears to rely on Rule 4(k)(1)(B) as grounds for asserting personal

jurisdiction over AUA (and the other defendants).  However, by its very terms, Rule 4(k)(1)(B),

or "bulge jurisdiction," may be used to establish personal jurisdiction only over parties joined

under Rules 14 and 19 – not over an original defendant such as AUA or NBME.  *See* Fed. R.

---

17. Plaintiff's other alleged New York connections similarly have nothing to do with her specific claims.  *See, e.g.*, FAC ¶¶ 12, 14, 15, 18, 94 (AUA recruits and accepts students from colleges and universities throughout the United States, including New York; AUA has a service agreement with MEA which contains a New York forum selection clause; AUA is a New York State Education Department-approved institution; and AUA is subject to the jurisdiction of the OCR, which is based in New York).  Plaintiff also alleges that because AUA is one of many educational and medical institutions included in the global Manipal Group of institutions, it must be a "part of MEA."  (FAC ¶ 23.)  That inference has no legal basis.  The fact that AUA might be part of the global, Manipal group of institutions, does not mean that it is the same legal entity as another institution or company in that group.

Civ. P. 4(k)(1)(B) (providing means of obtaining jurisdiction over "a party *joined* under Rule 14 or 19") (emphasis added); *see also Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, No. 07-00349, 2007 WL 704171, at *2 (S.D.N.Y. 2007) (plaintiff "may not use the bulge provision to obtain service on an original defendant"). Therefore, Plaintiff cannot establish personal jurisdiction over AUA pursuant to Rule 4(k)(1)(B).

## III.   THE FAC MUST BE DISMISSED AGAINST AUA FOR FAILURE TO SERVE

Plaintiff's claims against AUA should be dismissed, pursuant to Rule 12(b)(5), for the additional and independent reason that Plaintiff did not serve process on AUA. When a defendant challenges the sufficiency of service of process, it is the plaintiff's burden of proof to show the adequacy of service. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citation omitted). On a Rule 12(b)(5) motion, "a [c]ourt must look to matters outside the complaint to determine whether it has jurisdiction." *See id.* (citation omitted).

Here, Plaintiff never served process on AUA. (Solomon Decl. ¶ 8.) AUA does not have offices in New York. (*Id*. ¶ 4.) Nor does it have a designated agent to accept service of process in New York. (*Id*. ¶ 8.) Both facts easily can be ascertained on the New York Department of State website, which shows that AUA has no registered offices or agents to accept service of process in this state. (*See* Hassan Decl. ¶ 3, Ex. 1.) Thus, Plaintiff was required to serve AUA, a foreign entity, as prescribed under Rules 4(h)(2) and 4(f).[18] Plaintiff did not do so. In fact, Plaintiff did not serve AUA at all.

---

18. Rule 4(h)(2) states: "Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served … at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).").  Rule 4(f) provides that an entity may be served "at a place not within any judicial district of the United States" by:  (1) any internationally agreed means of service that is reasonably calculated to give notice; (2) if there is no internationally agreed means, or if an international agreement allows

96010357

As Plaintiff's October 8, 2019 Service of Proof shows, Plaintiff served the Summons and Complaint on Anita O'Brien.  (Plaintiff's Ex. 12 (Proof of Service).)  Although the Proof of Service describes Ms. O'Brien as part of the "Legal Department, who is designated by law to accept service of process on behalf of American University of Antigua Manipal Education Americas, LLC/s/h/a GCLR, LLC," this conclusory statement by Plaintiff or Plaintiff's server does not make it so.  Ms. O'Brien is an administrative assistant at MEA and works in MEA's New York offices.  (Jan. 29, 2020 Declaration of Anita O'Brien ¶ 1.)  As specifically noted in AUA's and MEA's original motion to dismiss, Ms. O'Brien is not authorized to accept service on behalf of AUA, which is one of MEA's clients.  (*Id.* ¶ 2; Solomon Decl. ¶¶ 5, 8; ECF 38 at 2.) Nor did she represent herself to Plaintiff's process server as someone authorized to accept service for AUA.  (O'Brien Decl. ¶ 2.)  Plaintiff cannot satisfy service on AUA by serving MEA, a separate and distinct entity.  *See McKibben v. Credit Lyonnais*, No. 98 CIV. 3358 LAP, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("service of process on one corporation does not confer jurisdiction over another, 'even where one corporation may wholly own another, or where they may share the same principals.'") (quoting *In re Crespo*, 775 N.Y.S.2d 319, 323 (N.Y. Sup. Ct. 1984)).

Indeed, in another case by a former student against AUA, the New York Supreme Court dismissed the case for lack of personal jurisdiction under CPLR § 3211(a)(8), because the plaintiff's process server went to "a third party's [MEA's] office" and left the papers with an MEA employee who was not authorized to accept service for her employer or the defendant.  *See Endraske v American University of Antigua*, No. 157191/2016, 2017 WL 1210082, at *4 (N.Y. Sup. Ct. Apr. 03, 2017).  In dismissing the case, the court noted that MEA was "not authorized to

---

but does not specify other means, by a method that is reasonably calculated to give notice; or (3) ) by other means not prohibited by international agreement, as the court orders.  Fed. R. Civ. P. 4(f).

accept service for defendant" and that "Defendant is not even located in New York." *Id.*
Similarly, here, the Court should dismiss the FAC as to AUA for Plaintiff's failure to serve
process on AUA.

Nor at this point is Plaintiff entitled to another chance to correct the failure to serve AUA
given that Plaintiff made no attempt to cure the deficiency of service after it was specifically
raised in AUA's and MEA's December 9, 2019 motion to dismiss.

IV.     **THE FAC DOES NOT STATE A CLAIM AGAINST AUA OR MEA**

   A.     **Rule 12(b)(6) Standard**

To survive a motion to dismiss for failure to state a claim, the complaint must "state a
claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007).  In assessing the sufficiency of a claim, the court must accept as true all of the allegations
made, except the court should not accept as true legal conclusions and threadbare recitals of the
elements of a cause of action that are supported by mere conclusory statements. *See L-7
Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  Crediting only well-pleaded
factual allegations, the court must determine whether they plausibly give rise to an entitlement to
relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plausibility depends on a "host of
considerations," including, "the full factual picture presented by the complaint, the particular
cause of action and its elements, and the existence of alternative explanations so obvious that
they render plaintiff's inferences unreasonable." *L-7 Designs, Inc.*, 647 F.3d at 430.  Although
plausibility is not the same as a "probability requirement," it asks for more than "a sheer
possibility" or "conceivability" that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

   B.     **All of Plaintiff's Claims Fail Because They Do Not Meet the *Iqbal*
         "Plausibility" Standard**

Here, all of Plaintiff's claims against AUA and MEA should be dismissed because they

are facially implausible.  The FAC concedes that over the course of almost two years, AUA

provided Plaintiff five opportunities to take the CCSE, with progressively-increasing

accommodations; that Plaintiff was unable to pass the exam; and finally, when AUA was unable

to provide further accommodations and Plaintiff was running up against her deadline to graduate,

that AUA finally dismissed Plaintiff from their medical program.  (*See* FAC ¶¶ 50, 53, 59-61,

65-66.)  Under these circumstances, the FAC fails to assert any claims that meet the

"plausibility" requirement.  *See Iqbal*, 556 U.S. at 683 (to survive a motion to dismiss, a plaintiff

must "nudge[ ] their claims across the line from conceivable to plausible.") (internal citation

omitted).[19]

      As set forth below, Plaintiff's claims also fail to state a claim for additional, specific

reasons.

### C.    The FAC Does Not State Any Claim Against MEA

      A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  Here the FAC does not allege <u>any</u> misconduct by MEA.  The allegations

in the FAC that specifically reference MEA, do not specify any misconduct by MEA.  (*See, e.g.*,

FAC ¶¶ 1, 9, 16, 18, 20, 23, 25, 29, 82, 88.)[20]  Therefore, the FAC must be dismissed in its

---

19.  Indeed, Plaintiff's similar claims – that AUA failed to provide her reasonable accommodations for the CCSE and then retaliated against her – were rejected in 2016 by the OCR after the OCR's independent investigation. (*See* Hassan Decl., Ex. 6 (OCR Determination).)  The Court does not need to rely on the OCR Determination to decide this motion to dismiss.  Regardless, pursuant to FRE 201, the Court may take judicial notice of the OCR Determination as the record of a public agency.  *See* FRE 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also, e.g., Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 394 (S.D.N.Y. 2012) (taking judicial notice on a Rule 12(b)(6) motion of plaintiff's EEOC and New York State Division of Human Rights' charges and determinations).

20.  These allegations are either jurisdictional, *e.g.*, FAC ¶ 16 (MEA has a New York address); make assertions that MEA is an "agent" or "representative" of AUA, *e.g.*, FAC ¶ 23; or make conclusory statements that MEA is liable to Plaintiff, *e.g.*, FAC ¶ 82.  None of these allegations attributes any specific misconduct to MEA.

entirely as to MEA.  *See Griffiths v. Beverage Marketing Corp.*, 14-CV-137, 2014 WL 1910051, at *3 (S.D.N.Y. May 9, 2014) (granting motion to dismiss for failure to state a cause of action against the non-BMC defendants because Plaintiff "d[id] not allege any wrongful conduct" by them); *see also Patel v. American University of Antigua*, 104 A.D.3d 568 (1st Dept 2013) (in an action filed against AUA and MEA, dismissing the complaint against MEA because MEA's administrative services for AUA had nothing to do with the substance of the action).

In addition, Plaintiff's Rehabilitation Act claim against MEA must be dismissed for the additional reason that the Act applies only to entities that receive U.S. federal funding, and MEA does not receive such funding.  *See* 29 U.S.C. § 794 (covering "any program or activity receiving Federal financial assistance").  The FAC does not allege otherwise.  (*See* FAC ¶¶ 72-82.)

### D.     The FAC Does Not State a Claim Against AUA or MEA Under the ADA

The FAC does not identify the specific statutory grounds for Plaintiff's claim against AUA and MEA under the ADA (the "ADA Claim").  However, Plaintiff may be attempting to assert her ADA Claim under Title III.[21]  Plaintiff's core allegation is that AUA violated the ADA because the accommodation it provided for her last CCSE attempt (more than double the regular amount of time, including over an hour of breaks) was not reasonable.  (FAC ¶¶ 85, 88.)  As set forth in NBME's motion (ECF 52, Section III.B.1), and incorporated here, CCSE is not the type of exam covered by the ADA.  *See* 42 U.S.C. §12189.  Therefore, the ADA Claim, insofar as it relates to the accommodations that AUA provided to Plaintiff for the CCSE exams, must be

---

21. Insofar as Plaintiff has alleged a claim under Title I of the ADA, such claim is barred for failure to exhaust administrative remedies, to wit, filing an administrative claim with the Equal Employment Opportunity Commission and doing so within the requisite time-period.  *See Bent v. Mount Sinai Med. Ctr.*, 882 F. Supp. 353, 355 (S.D.N.Y. 1995).  Titles II and IV of the ADA do not apply to AUA and MEA because they apply to states and local governments and telecommunications companies, respectively.  *See* 42 U.S.C. § 12131(1), 47 U.S.C. § 225.

dismissed with prejudice for that reason.[22]

  **E.**  **The FAC Does Not State a Breach of Contract Claim Against AUA or MEA**

  Plaintiff's purported breach of contract claim against AUA and MEA also is not actionable.  The reasons are many:  (1) there is no actionable breach of an express contract because the FAC does not allege the existence of such a contract between Plaintiff and AUA or MEA; (2) there is no actionable breach of AUA's alleged implied contract with Plaintiff to award her a degree if she complies with all the terms and course requirements prescribed by the university because Plaintiff concedes that she did not complete her graduation requirements by the relevant deadline; (3) Plaintiff has not alleged the existence of any other enforceable implied agreement with AUA or MEA; and (4) Plaintiff's breach of contract claim is an improperly pleaded and time-barred Article 78 challenge, and should be dismissed with prejudice on that independent ground.

  1.  <u>There Was No Express Contract with AUA or Any Express or Implied Contract with MEA that Allegedly Was Breached</u>

  Under New York law, the elements of a claim for breach of contract are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014).  Here, the FAC does not allege the existence of an express agreement between Plaintiff and AUA or MEA, therefore, there can be no breach of

---

22.  Even assuming that CCSE is the type of exam covered by the ADA, the FAC does not state a claim under the ADA against MEA because MEA did not offer the CCSE, AUA did.  *See* 42 U.S.C. § 12189 (applying the ADA to "[a]ny person that offers" certain examinations or courses).  Also, as discussed above (*supra* at 29-30), the FAC does not assert any specific violative conduct by MEA with regard to the ADA Claim.  (*See* FAC ¶¶ 83-90.)

express contract.  Nor does the FAC allege the existence of an implied contract between Plaintiff and MEA, thus also warranting dismissal of a breach of implied contract claim against MEA.[23]

2.     AUA Did Not Breach a University's Implied Contract with a Student

"[A]n implied contract is formed when a university accepts a student for enrollment:  if the student complies with the terms prescribed by the university and completes the required courses, the university must award him [or her] a degree." *Evans v. Columbia Univ. in the City of New York*, No. 14-CV-2658 NSR, 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (citations omitted).  "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student, become a part of this contract." *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (2d Dept 1987).

Here, the FAC alleges that AUA breached its contract by dismissing Plaintiff.  (*See* FAC ¶ 93.)  However, AUA's dismissal cannot constitute a breach of the implied contract between a student and a university.  Because Plaintiff did not complete her graduation requirements within the time fixed by AUA (*see id.* ¶¶ 47-48, 57, 64), Plaintiff was not entitled to graduate and AUA was not required to award her a degree.  *See Evans*, 2015 WL 1730097, at *4 (implicit in the implied contract between a student and university is the requirement that "the student must fulfill [her] end of the bargain by satisfying the university's academic requirements and complying with its procedures.").

Plaintiff attempts to escape this conclusion by alleging that the delays in her graduation were caused by AUA's alleged delays in finding clinical sites for her or in arranging for accommodations for the CCSE for her.  (FAC ¶ 94.)  This cannot help Plaintiff.  Regardless of how long it took AUA to find clinical rotations for Plaintiff and for Plaintiff to complete those

---

23.  The implied contract between university and a student (discussed below) does not apply to MEA because MEA is not a university and Plaintiff was not a student of MEA.

96010357

rotations, by the time of her dismissal, Plaintiff also had indisputably failed to satisfy at least one other condition of her readmission and graduation, *i.e.*, passing the CCSE with a minimum required grade of 79.  (*See id*. ¶ 48, 50, 53, 64.)  Moreover, the FAC shows that Plaintiff refused rotations because they were not to her liking.  (*See* FAC ¶ 37.)  Similarly, Plaintiff's allegation that her failure to graduate in a timely manner was the result of AUA's delays in arranging for accommodations for her also is baseless.  The FAC shows that, following her readmission, Plaintiff continued making requests for new and additional accommodations that she had never made before and which had to be investigated and arranged, in coordination with NBME which administer the CCSE.  (*See id*. ¶¶ 51-53, 55-57, 59-60.)  Even then, AUA arranged for Plaintiff to sit the CCSE twice during the one year between her readmission and dismissal.  (*See id*. ¶¶ 53, 59-61.)

Plaintiff's conclusory allegations that AUA engaged in "arbitrary" conduct by setting a deadline for her to graduate is equally unavailing.  (*See id*. ¶¶ 86, 94.)  "It is well settled that a determination is arbitrary and capricious when it is made 'without sound basis in reason and is generally taken without regard to the fact.'"  *Gumbs v. Bd. of Educ. of the City*, 104277/12, 2013 WL 2369841 (N.Y. Sup. Ct. 2013) (*quoting Matter of Pell v. Bd. of Educ. of Union Free School Dist. No. 1 of Towns of Searsdale & Mamaroneck, Westchester County*, 34 N.Y.2d. 222, 231 (1974)).  As the FAC alleges, AUA gave Plaintiff five chances to take the same exam; worked with her to obtain increasing accommodations to take the CCSE; and extended her original deadline to complete all graduation requirements from of March 31, 2016 to July 31, 2016. (FAC ¶¶ 50, 53-54, 59-61, 64.)  Nothing in the FAC approaches the "arbitrary" standard.  *See, e.g.*, *Illickal v. Roman*, 236 A.D.2d 247 (1st Dept 1997) (nothing arbitrary about school's

dismissal of student where he was advised of his academic deficiencies, given several opportunities to correct those deficiencies, and an opportunity to appeal the dismissal).[24]

The FAC similarly fails to point to any other implied contract between Plaintiff and AUA that AUA allegedly breached.  Plaintiff alleges that, AUA "promises that AUA had clinical sites scattered around the United States for the completion of course work required to graduate," but that "AUA had few sites."  (FAC ¶¶ 91-92.)  However, Plaintiff cannot sustain a breach of implied contract by vaguely alleging the existence of an implied promise.  Plaintiff needs to set forth the specific agreement that AUA allegedly breached, which must be included in the university's bulletins, circulars and regulations made available to her.  *See Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475, 477 (3d Dept 2012) (lower court properly determined that plaintiff's failure to identify the specific "internal rule, regulation or code" that the college allegedly breached was "fatal to his claim").[25]  In addition, Plaintiff's assertion is not plausible.  Elsewhere in the FAC, Plaintiff alleges that it took her a long time to start her initial clinical rotation because she wanted a rotation in New York, which was closer to her Washington, D.C. residence.  (FAC ¶ 37.)  The FAC certainly does not allege that AUA contracted with Plaintiff to

---

24. Plaintiff has also alleged that AUA "arbitrarily changed the terms of Plaintiff's agreement with the university by revising and adopting new rules."  (FAC ¶ 95.)  Plaintiff appears to be referring to the fact that over time, AUA revised and updated its policies for *all* students, *e.g.*, requiring that all students pass the CCSE before sitting for the USMLE 2.  (*See id.* ¶ 3.)  However, "implicit in [a] University's general 'contract' with its students is a right to change the University's academic degree requirements if such changes are not arbitrary and capricious." *Keles v. New York University*, No. 91 CIV. 7457 (SWK), 1994 WL 119525, at *6 (S.D.N.Y. 1994), *aff'd*, 54 F.3d 766 (2d Cir. 1995).  Changes similar to those alleged by Plaintiff consistently have been upheld by New York courts as not arbitrary and capricious.  *See, e.g.*, *id.* (NYU did not breach its implied contract with the plaintiff, a master's-degree student, when it changed its rules for Ph.D. matriculation, precluding students from taking qualifying examinations more than twice).

25. *See also See Hernandez v. Teachers College, Columbia University*, 16802015, 2015 WL 13660373 (N.Y. Sup. Ct. 2015) (dismissing former student's breach of contract claim where "defendant did not breach any of its academic standards" or "obligations … as specifically set forth in the school's bulletins, circulars, student handbook and regulations."); *Chira v. Columbia University in New York City*, 289 F. Supp. 2d 477, 486 (S.D.N.Y. 2003) (failure to identify the specific contract that Columbia allegedly breached was "fatal" to *pro se* plaintiff's complaint).

34

find Plaintiff clinical rotations in New York or close to her residence.

Finally, Plaintiff appears to allege that her dismissal, on or around July 5, 2016, before the July 31, 2016 deadline, was a breach of contract.  (FAC ¶ 95.)  Plaintiff's claim is not plausible.  Once Plaintiff failed the CCSE for a fifth time on July 1, 2016, AUA knew that Plaintiff would not be able to meet the July 31, 2016 deadline because she had failed to obtain a passing grade on the CCSE – one of the requirements for her graduation – and AUA was unable to make further accommodation for Plaintiff and let her sit the CCSE for a sixth time.  (*See id*. ¶¶ 61, 64, 65.)  Nor can Plaintiff plausibly allege that she was damaged as a result of being advised of her inevitable dismissal on or around July 5, 2016 as opposed to on or after July 31, 2016.  *See Childers*, 36 F. Supp. 3d at 313 (damages are an essential element of a breach of contract claim).

3. Plaintiff's Breach of Contract Claim is an Improperly Pleaded & Time-Barred Article 78 Challenge.

Plaintiff's breach of contract claim should be dismissed with prejudice for the independent and additional reason that it is an improperly pleaded and a time-barred Article 78 claim.  Although couched as a breach of contract claim, Plaintiff is ultimately challenging academic and administrative decisions made by AUA – *i.e.*, what requirements Plaintiff had to satisfy to graduate and by when.  (*See* FAC ¶¶ 47-48, 93-94.)  As this court has observed, absent a specific promise that was breached – as here – "an Article 78 proceeding is the proper path for judicial review of an educational institutions' decisions."  *Evans*, 2015 WL 1730097, at *5; *see also Keles,* 903 N.Y.S.2d at 18–19 (although styled as contract and tort claims, plaintiff's complaint was targeted at "core academic determinations" such as academic progress and the award of a professional degree, and should appropriately have been brought as an Article 78

claim).[26]  New York courts also routinely dismiss such claims with prejudice where converting

them to an Article 78 proceeding would be moot because they are time barred.  Here, AUA

informed Plaintiff in July 2016 of its decision to dismiss her.  Therefore, Plaintiff's Article 78

challenge – improperly couched as a breach of contract claim – is time barred and should be

dismissed with prejudice.  *See, e.g.*, *Keles,* 903 N.Y.S.2d at 19 (lower court properly declined to

convert student's improper breach of contract and tort action into an Article 78 proceeding, since

plaintiff's claims would have been barred by the four-month statute of limitations); *Hernandez*,

2015 WL 13660373, at *5, 7 (dismissing former student's breach of contract and breach of duty

of good faith claims because they were reviewable in an Article 78 proceeding only, which was

now time barred).

> ### F.    The FAC Does Not State a Claim of Breach of Good Faith and Fair Dealing Against AUA or MEA

To state a claim for breach of the duty of good faith and fair dealing under New York

law, a plaintiff must plead that (1) the defendant owes the plaintiff a duty to act in good faith and

conduct fair dealing; (2) the defendant breached that duty; and (3) the breach of duty proximately

caused the plaintiff's damages.  *See Washington v. Kellwood Co.*, No. 05 Civ. 10034 (DAB),

2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009) (citation omitted).  There is no independent

claim in New York for breach of good faith and fair dealing where it relies on the same facts as

plaintiff's breach of contract claim.  *See id*.

Plaintiff appears to allege that AUA breached its duty of good faith and fair dealing

because:  (1) "Plaintiff did not receive the bargained for education" and was terminated when she

---

26.  *See also Keles,* 903 N.Y.S.2d at 18 ("'Strong policy considerations militate against the intervention of courts in
controversies relating to an educational institution's judgment' on core academic policy regarding a student's
academic performance and examinations.'") (quoting *Matter of Susan M. v. New York Law School*, 76 N.Y.2d
241, 245 (1990)).

was only three credits from graduating; and (2) "Plaintiff rarely was accorded accommodation without a struggle," *e.g.*, Plaintiff allegedly had to find extra funds to subsidize appropriate rooms for taking the CCSE.  (FAC ¶¶ 100-101.)  These allegations cannot state a breach of good faith and fair dealing claim.

Plaintiff's allegation that she did not receive the "bargained for education" essentially is the same as her breach of contract claim that she was dismissed before she could graduate (*see* FAC ¶¶ 93, 100).  Accordingly, Plaintiff's claim for the breach of the duty of good faith and fair dealing must be dismissed as a duplicative claim insofar as it relates to her dismissal.  *See Doe v. Colgate Univ.*, 760 F. App'x 22, 34 (2d Cir. 2019) (affirming dismissal of breach of duty of good faith and fair dealing claim as duplicative of student's breach of contract claim); *Alter v. Bogorician*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of the implied covenant of good faith and fair dealing has dismissed the latter claim as duplicative.").

Nor does Plaintiff point to any duty that AUA allegedly breached because Plaintiff had to work with AUA to obtain her accommodations or find funds to subsidize appropriate rooms for taking the CCSE.  (*See* FAC ¶¶ 101-102.)  Moreover, the FAC does not allege any facts that plausibly support Plaintiff's conclusory assertion that "AUA[] acted in bad faith" with regard to the accommodations.  Rather, the FAC shows that over the course of almost two years, AUA worked with Plaintiff to allow her to take the CCSE five times, with progressively-increased accommodations.  *See* FAC ¶¶ 50, 53, 59-61, 65-66; *see also L-7 Designs,* 647 F.3d at 430 (2d

Cir. 2011) (plausibility depends on a "host of considerations," including, "the full factual picture presented by the complaint").[27]

### G.   The FAC Does Not State a Claim of Intentional Infliction of Emotional Distress Against AUA and MEA

Plaintiff's intentional infliction of emotion distress claim against AUA and MEA must be dismissed with prejudice because it is barred by the one-year statute of limitations applicable to such claims. *See Diaz v. City Univ. of New York*, No. 13 CV 2038 PAC MHD, 2014 WL 10417871, at *28 (S.D.N.Y. Nov. 10, 2014) (dismissing former student's/*pro se* plaintiff's intentional infliction of emotional distress claim as untimely under the one-year statute of limitations);[28] *see also* CPLR. § 215(3).

Even if Plaintiff's claim were not time-barred, it should be dismissed because the FAC fails to state a claim for intentional infliction of emotion distress.  To maintain an action for intentional infliction of emotional distress under New York law, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress.  *See Diaz*, 2014 WL 10417871, at *28.  "To satisfy the requirement of 'extreme and outrageous conduct', the plaintiff must allege 'conduct [that is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded [a]s atrocious, and utterly intolerable in a civilized society.'"  *Id*. (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).)

---

27.  In addition to the fact that the FAC does not allege any wrongdoing on the part of MEA (*see supra* at 29-30), the FAC also does not allege that MEA owed any duty of good faith and fair dealing to Plaintiff or on what grounds.  (*See* FAC ¶¶ 99-102.)  Plaintiff's claim against MEA for breach of the duty of good faith and fair dealing should be dismissed for this additional reason.

28.  *Report and recommendation adopted in part* (including dismissal of claim for intentional infliction of emotional distress), No. 13 CIV. 2038 PAC MHD, 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015).

Here, the FAC states in a conclusory fashion that "AUA's conduct was extreme and outrageous," but does not allege any facts that meet that stringent standard.  *See, e.g.*, *Diaz*, 2014 WL 10417871, at *28 (dismissing *pro se* former graduate student and adjunct lecturer's claim for intentional infliction of emotional distress because "the termination of plaintiff's teaching positions at CUNY, and the refusal to hire him for academic jobs, even if done for discriminatory or retaliatory purposes, do not remotely meet [the] stringent standard" for a claim for intentional infliction of emotional distress).

**H.    The FAC Does Not State a Claim of Negligent Infliction of Emotional Distress Against AUA or MEA**

To maintain an action for negligent infliction of emotional distress under New York law, a plaintiff must premise the claim on a "breach of a duty owed to [him or her] which either unreasonably endangers plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety."  *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-00494 (NSR), 2019 WL 4039149, at *18 (S.D.N.Y. Aug. 27, 2019) (quoting *Santana v. Leith*, 117 A.D.3d 711, 985 N.Y.S.2d 147, 149 (2d Dept 2014)); *see also Torain v. Casey*, No. 16CIV2682VECJCF, 2016 WL 6780078, at *6 (S.D.N.Y. Sept. 16, 2016) (dismissing *pro se* plaintiff's claim for negligent infliction of emotional distress because the complaint did not plausibly allege that plaintiff was in any "immediate" physical danger).

Plaintiff's claim should be dismissed because the FAC does not contain any facts from which a plausible inference may be drawn that AUA or MEA endangered Plaintiff's physical safety or caused her to fear for her imminent safety.  *See Alvarado*, 2019 WL 4039149, at *18 (dismissing with prejudice former teacher's negligent infliction of emotional distress because the

complaint "contains no facts indicating, among other things, that Defendants endangered

Plaintiff's physical safety or caused her to fear for her safety.").[29, 30]

## CONCLUSION

For the reasons set forth above, AUA and MEA respectfully request that the Court

dismiss the First Amended Complaint in its entirety as to AUA and MEA, and grant such other

and further relief as the Court deems just and proper.

Dated: New York, New York
     February 4, 2020           Respectfully submitted,

                      HUGHES HUBBARD & REED LLP

                      By: /s  *Robb W. Patryk*
                          Robb W. Patryk
                      Amina Hassan
                      One Battery Park Plaza
                      New York, New York 10004-1482
                      (212) 837-6000
                      *Attorneys for Defendants Manipal Education*
                      *Americas, LLC and American University of Antigua*

---

29. Many courts in New York have applied the "extreme and outrageous" conduct requirement for intentional infliction of emotional distress claims to negligent infliction of emotional distress claims as well.  *See, e.g.*, *Campoverde v. Sony Pictures Entertainment*, No. 01 CIV. 7775(LAP), 2002 WL 31163804 (S.D.N.Y. Sept. 30, 2002).  Plaintiff's claim for negligent infliction of emotional distress must fail for the additional reason that the FAC does not allege any "extreme and outrageous" conduct.  (*See supra* at 38-39.)

30. In addition to the fact that the FAC does not allege any wrongdoing on the part of MEA (*see supra* at 29-30; FAC ¶¶ 103, 105 (alleging emotional distress because of the conduct of AUA)), the FAC also does not allege that MEA owed any duty to Plaintiff that was breached or on what grounds.  The claims against MEA for negligent infliction of emotional distress should be dismissed for that additional reason.

96010357