

Easter Term
[2016] UKPC 10
Privy Council Appeal No 0058 of 2015

# JUDGMENT

## Brown's Bay Resort Ltd (Appellant) *v* Pozzoni (Respondent) (Antigua and Barbuda)

From the Court of Appeal of the Eastern Caribbean Supreme Court (Antigua and Barbuda)

before

Lord Neuberger
Lord Clarke
Lord Sumption
Lord Carnwath
Lord Hodge

**JUDGMENT GIVEN ON**

**26 April 2016**

**Heard on 11 February 2016**

| *Appellant* | *Respondent* |
|---|---|
| David Dorsett, PhD | Lenworth Johnson |
| Owen Roach | |
| (Instructed by M A Law | |
| (Solicitors) LLP) | |

**LORD HODGE:**

1.      The appellants ("BBR") are the owners of a tourist resort at Brown's Bay, St Philips, Antigua. On 13 November 2006 BBR granted a two-year lease of part of the resort to the respondent ("Mr Pozzoni") from which he was to operate a restaurant and bar known as the Tamarind Bar and Restaurant. The lease was prepared within BBR and not by a lawyer.

2.      The lease allowed Mr Pozzoni and his customers to use the resort's facilities, which included a swimming pool, tennis courts, a beach and beach facilities, and gave him the use of a proportion of space in both the boutique and office within the resort. The contract ran from 1 November 2006 to 1 November 2008. The annual rent was in equal instalments of US$2,000 to be paid in advance over ten months from 1 November in each year and the months of September and October were to be used by BBR and Mr Pozzoni to carry out maintenance, restoration and repairs. The lease also provided for the equal division of expenses of maintenance, including gardeners, a maid and electricity costs, and the maintenance of the swimming pool. Clause 17 of the lease obliged Mr Pozzoni to "run the business directly without interruption at an acceptable standard". The lease thus provided for the parties' shared interest in the smooth and uninterrupted operation of leased premises and also the resort during its ten-month season.

3.      BBR committed a repudiatory breach of contract in September 2007, which Mr Pozzoni accepted. As a result Mr Pozzoni did not re-open the restaurant at the start of the 2007-2008 season in November 2007 but instead commenced legal action to recover damages for the breach of contract.

4.      In the course of the trial before Michel J counsel for BBR founded on clause 19 of the lease, which provided:

> "Interruption of Contract - Failure to respect every aspect of this contract could result in an interruption of the contract by either the owner or the tenant. If an interruption occurs then the party responsible will pay to the other party a penalty fee of US$4,000.00. Any pending expenses of either the owner or the tenant are to be paid before the contract is terminated."

Counsel for BBR submitted that this clause operated as a liquidated damages clause and restricted the damages which Mr Pozzoni could recover to US$4,000.

5. Michel J, in a judgment dated 7 June 2010 and corrected on 28 June 2010, did not interpret the clause as a pre-estimate of damages following a repudiation but as an agreed penalty to be paid for any interruption of the contract. He therefore held that Mr Pozzoni was entitled to claim damages unrestricted by clause 19. The Court of Appeal, in a judgment dated 16 September 2014 in which Webster JA (Ag) wrote the leading judgment, agreed that clause 19 did not restrict Mr Pozzoni's right to claim damages for breach of contract. The Court of Appeal interpreted clause 19 as covering any interruption of the operation of the lease which was followed by its resumption and not the termination of the contract by one party's acceptance of the other's repudiatory breach. The Court of Appeal altered Michel J's award of damages for reasons which are not challenged in this appeal, and awarded damages of EC$92,587.02 (or US$34,291.49) comprising (i) EC$52,940.00 for lost earnings from the restaurant business, (ii) EC$38,297.02 for the expense which Mr Pozzoni incurred in cancelling a contract with a chef and manager whom he had recruited from Italy for the 2007-2008 season and (iii) EC$1,350.00 for expenditure on garden lights at the restaurant for the second season of the lease.

6. BBR appealed to the Board against that order. Dr Dorsett advanced two arguments. First, he submitted that clause 19 limited Mr Pozzoni's entitlement to damages to US$4,000 either because it was a liquidated damages clause or because, even if it were a penalty, it operated as a cap on his entitlement to damages. Secondly, and as a fall back, he challenged the first component of the award of damages on the basis that there was not sufficient evidence to entitle the court to assess Mr Pozzoni's loss of earnings.

*Discussion*

7. There was no disagreement between the parties on the correct approach to the construction of contracts. Dr Dorsett referred the Board to the judgment of Lord Neuberger of Abbotsbury PSC in *Arnold v Britton* [2015] UKSC 36; [2015] AC 1619, in which he summarised in paras 14-22 the recent authoritative guidance by the House of Lords and now the Supreme Court on the established approach. There is no need to repeat that guidance, which informs the Board's approach, in this appeal.

8. Clause 19 provides for the payment of a "penalty fee" not on every breach of contract but only on those which cause "an interruption of the contract". While the parties did not engage lawyers to draft their contract, the use of the word "interruption" suggests that they may have had in mind circumstances other than, or in any event not confined to, the premature termination of the contract by acceptance of a repudiatory breach of contract. The word "terminated" appears in the third sentence in the clause and suggests that the parties saw interruption and termination as different events. As a matter of language an interruption can be temporary or permanent. This suggests that the parties may have had in mind acts or omissions by one party to the contract giving

rise to an interruption in the performance of the contract by the other, rather than its termination. But it is not necessary for the Board to decide that point. This is because the Board does not construe the clause as providing a substitute for common law damages. The clause does not refer to damages, liquidated damages, or the provision of a sum in lieu of damages. It refers to a "penalty fee". At first blush, a "penalty fee" appears to be a contractual charge or fee to be paid if the contract is interrupted. Absent any indication in the wording of the clause in the context of the lease as a whole that the "penalty fee" was to be in substitution for common law damages for breach of contract, the Board construes the fee as an additional charge on the occurrence of an interruption caused by a breach of contract.

9.  It is not necessary for the Board to express a view on whether such a provision would be unenforceable as a penalty on the basis that the imposition of a penalty fee on top of a damages claim would be out of all proportion to the legitimate interest of the innocent party in the performance of the contract, or in other words, exorbitant: see *Cavendish Square Holding BV v El Makdessi* [2015] UKSC 67; [2015] 3 WLR 1373. Whether or not the penalty fee could be enforced, it was not a substitute for damages and formed no part of Mr Pozzoni's claim.

10. BBR's second argument was that Mr Pozzoni had failed to prove that he had earned US$2,100 per month from the restaurant during the first season and that the courts therefore had erred in awarding him as the first head of damages ten months of earnings at that level in the second season. Dr Dorsett referred in support of his submission to the judgment of Arden LJ in *Hawkins v Woodhall* [2008] EWCA Civ 932. The evidence before Michel J was as follows. Mr Pozzoni listed in his witness statement his drawings per month from the business and his business expenditure, all of which, he said, were paid out of the earnings from the restaurant in the first season. He gave evidence in chief, on cross-examination and on re-examination that he earned US$2,100 monthly on average. He accepted on cross-examination that he did not have any records, such as Inland Revenue Department records, to vouch those earnings but explained, as he had done in his witness statement, that his receipts and records, which were in Excel files, were in BBR's control after it changed the locks on his premises in about December 2007. The Board notes that BBR did not ask for further or better particulars of Mr Pozzoni's statement of claim nor did it seek disclosure of documents or computer files relating to this element of his claim. Michel J accepted Mr Pozzoni's evidence and treated his earnings in the first season as an acceptable measure of his likely earnings in the second season. The Court of Appeal (at para 16) said that they had no legal basis for interfering with that finding. The Board agrees. While the evidence was, as Webster JA stated, scanty, the judge was entitled to accept it, particularly when Mr Pozzoni explained why he had been unable to produce documentary evidence.

11. In the Board's view, *Hawkins v Woodhall* does not assist BBR. In that case the Court of Appeal of England and Wales rejected a claim for an award of damages based on loss of profits from shop premises where there was no factual evidence to explain

how the party's turnover in those premises had been calculated and where the party's accountant in his expert report had failed to justify the basis on which he had made his assumptions to support his estimate of future profits from those premises. By contrast, Mr Pozzoni's evidence, although not vouched by records, was straightforward and was accepted as reliable by the trial judge.

*Conclusion*

12.     The Board will humbly advise Her Majesty that the appeal should be dismissed. The Board would be minded to order in accordance with normal practice that BBR should pay the costs of this appeal, but the parties have 14 days from the promulgation of this judgment to make written submissions, if so advised, as to why a different order would be appropriate.