

**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
32 OLD SLIP, 26TH FLOOR
NEW YORK, NEW YORK 10005

TIMOTHY C. J. BLANCHARD
DIRECTOR
NEW YORK OFFICE

October 21, 2016

Neal Simon
President, American University of Antigua
c/o Manipal Education Americas, LLC
One Battery Park Plaza, 33rd Floor
New York, New York 10004

Re:     Case No. 02-16-2201
        American University of Antigua

Dear President Simon:

This letter is to notify you of the determination made by the U.S. Department of Education, Office for Civil Rights (OCR) regarding the above-referenced complaint filed against American University of Antigua (the University). The complainant alleged that the University discriminated against her on the basis of her disability (dyslexia) by failing to provide her with appropriate testing modifications on the Comprehensive Clinical Sciences Examination (CCSE), administered on July 1, 2016 (Allegation 1). The complainant also alleged that in retaliation for complaining to the University on July 5, 2016, about the provision of testing modifications on the CCSE on July 1, 2016, the University academically dismissed her on July 8, 2016 (Allegation 2).

OCR is responsible for enforcing Section 504 of the Rehabilitation Act of 1973 (Section 504), as amended, 29 U.S.C. § 794, and its implementing regulation at 34 C.F.R. Part 104, which prohibit discrimination on the basis of disability in programs or activities receiving financial assistance from the U.S. Department of Education (the Department). The University is a recipient of financial assistance from the Department. Therefore, OCR has jurisdictional authority to investigate this complaint under Section 504.

The regulation implementing Section 504, at 34 C.F.R. § 104.61, incorporates by reference 34 C.F.R. § 100.7(e) of the regulation implementing Title VI of the Civil Rights Act of 1964 (Title VI), 42 U.S.C. § 2000d et seq., which provides that no recipient or other person shall intimidate, threaten, coerce or discriminate against any individual for the purpose of interfering with any right or privilege secured by regulations enforced by OCR or because one has made a complaint, testified, assisted or participated in any manner in an investigation, proceeding or hearing held in connection with a complaint.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

Page 2 – President Neal Simon

In addition, the regulation implementing Section 504, at 34 C.F.R. § 104.44, requires recipients to modify academic requirements when necessary to ensure that the requirements are not discriminatory on the basis of disability, and to take steps to ensure that no qualified individual with a disability is subjected to discrimination because of the absence of educational auxiliary aids and services. At the postsecondary level, it is the student's responsibility to disclose a disabling condition and to request academic adjustments or auxiliary aids and services. In reviewing allegations regarding the provision of academic adjustments or auxiliary aids and services, OCR considers whether: (1) the student provided adequate notice to the recipient that the academic adjustment or auxiliary aids and services were required; (2) the academic adjustments or auxiliary aids and services were necessary; (3) the appropriate academic adjustments or auxiliary aids and services were provided; and (4) the academic adjustments or auxiliary aids and services were of adequate quality and effectiveness.

In its investigation, OCR interviewed the complainant and reviewed documentation that the complainant and the University submitted. OCR made the following determinations.

With respect to Allegation 1, the complainant alleged that the University discriminated against her on the basis of her disability by failing to provide her with appropriate testing modifications on the CCSE administered on July 1, 2016.[1]

OCR determined that the complainant was accepted as a transfer student to the University's medical doctorate program in January 2010, and subsequently enrolled in September 2010, in the University's Clinical Sciences program. OCR determined that after enrolling at the University, the complainant identified herself as an individual with a disability who required extended time of time-and-a-half (1.5x) as a testing modification. OCR determined that because the complainant had been previously approved for 1.5x extended time for test-taking by the university from which she had transferred, the University agreed to continue providing her the same testing accommodation, without requiring the complainant to submit any medical documentation to support her need for that test-taking accommodation.

OCR determined that students applying for licensure to practice medicine in the United States are required to earn passing scores on Step 1 and Step 2 CK (Clinical Knowledge) of the United States Medical License Examination (USMLE). OCR determined that prior to enrolling at the University, the complainant had attained a passing score on Step 1 of the USMLE on January 30, 2008.[2] OCR determined that in order to register for Step 2 CK, students must earn a minimum qualifying score of 79 on the CCSE.[3] The exam length of the CCSE is four hours, sixteen minutes.

---

[1] The CCSE is a computer-based examination that consists of multiple-choice questions based on information typically covered during the core clinical clerkships. The CCSE is written and developed by the National Board of Medical Examiners (NBME) and is generally administered by Prometric, a test development and delivery provider with testing locations throughout the United States. The CCSE may also be administered at medical institutions that are authorized to administer NMBE subject examinations.

[2] The complainant was approved for and received 1.5x extended time for Step 1 of the USMLE.

[3] The content of the CCSE is similar to that of Step 2 CK of the USMLE.

Page 3 – President Neal Simon

OCR determined that the complainant made five separate, unsuccessful attempts to earn a passing score of 79 on the CCSE, on the following dates: August 22, 2014; October 24, 2014; August 28, 2015; November 25, 2015; and July 1, 2016. For each of the first three attempts, the complainant received 1.5x extended time, and earned scores of 63, 62, and 65, respectively. On September 21, 2015, the complainant submitted a letter from her clinical psychologist to the University's Associate Dean of Research (the dean) in support of her request for increasing her extended time for test-taking from 1.5x to 2x. The dean requested that the complainant also provide copies of the assessments conducted by the clinical psychologist; the complainant did not provide the report at that time.[4] Notwithstanding, by electronic mail message (email) to the complainant on September 22, 2015, the dean notified the complainant that he had granted her request to increase the time for testing to two-times extended time (2x). The complainant took the CCSE on November 25, 2015 (her fourth attempt) with 2x extended time (eight hours, thirty-two minutes); she earned a score of 66.

On December 7, 2015, the complainant contacted the Associate Vice President for Academic Administration (the associate vice president) to advise him that she was having difficulties taking the CCSE over the course of one day. The complainant requested that the University either approve the administration of the CCSE over a two-day period or grant her additional extended time to be used for breaks. The complainant acknowledged that she did not provide any medical documentation to the University regarding the number of hours per day that she was required to sit for an exam.[5] OCR determined that the University nonetheless contacted the NBME to inquire whether the CCSE could be administered over a two-day period.

In an email dated January 15, 2016, the NBME's manager of test administration (the test manager) informed the complainant and the University that the CCSE could not be administered over a two-day period at a Prometric site, but the complainant could take the CCSE over a two-day period at a medical school/institution authorized to administer NMBE subject examinations. The University was not authorized to administer subject examinations, but its executive chief proctor (chief proctor) contacted the University of Maryland School of Medicine and Johns Hopkins University School of Medicine, two schools approved to administer subject examinations by the NBME; however, both schools declined to allow the complainant to sit for the CCSE over a two-day period at their respective facilities. The chief proctor relayed this information to the complainant by email on March 24, 2016.

In an email to the chief proctor, dated March 24, 2016, the complainant stated that "[i]t is just not possible for me to sit for 9 hours without any breaks"[6], and suggested that as an alternative, the University should permit her to take Step 2 of the USMLE without attaining a passing score on the CCSE. In an email to the complainant, dated March 28, 2016, the chief proctor advised the

---

[4] The University asserted that the complainant did not subsequently submit the report. However, the complainant asserted that the report was sent via facsimile on October 7, 2015 to the University's Director for Academic Administration for transmittal to the dean.

[5] OCR reviewed the clinical psychologist's letter, which the complainant had previously submitted to the University, as well as the psychologist's full report, which the complainant provided to OCR. Both stated that the complainant should be given 100% or double time on all examinations and did not place any restrictions that would otherwise limit the number of hours per day that the complainant could be tested.

[6] As stated above, the complainant did not provide any medical or other documentation in support of this assertion.

Page 4 – President Neal Simon

complainant that waiving the CCSE requirement would violate the University's policy[7], and noted that earning a passing score on the CCSE was one of the conditions of the complainant's re-acceptance to the University in June 2015.[8]

On March 29, 2016, the complainant requested that if she were unable to take the CCSE over a two-day period, that she be permitted to take breaks during the course of the examination. In response, the chief proctor sent an email to the test manager on March 31, 2016, asking whether students taking the CCSE with double-time as an accommodation were afforded scheduled breaks. The test manager advised the chief proctor that there were no scheduled breaks for CCSEs administered at Prometric test centers with extended time.

On April 8, 2016, the complainant's representative sent an email to the University's Vice President of Academic Development and Executive Dean of Clinical Sciences (the executive dean) to request that the complainant be permitted to take the USMLE Step 2 exam without having to attain a passing score on the CCSE, or permit complainant to take the CCSE with 2x extended time and appropriate breaks during the exam, or over a two-day period. On April 15, 2016, the complainant's representative sent an email to the University's counsel stating that the complainant's preference was to take the CCSE with the above-requested accommodations.

By email dated May 12, 2016, the University informed the complainant's representative that the complainant would be granted 2.25x the regular scheduled time to complete the CCSE, and during the administration of the exam, the clock would not stop, but the complainant would be able to use the additional .25x (amounting to one hour and four minutes) to take breaks when she wished. The complainant's representative responded by email on May 12, 2016 that the complainant agreed to those conditions.

OCR determined that the complainant sat for the CCSE on July 1, 2016, and was provided 2.5x extended time,[9] which amounted to ten hours and forty minutes to complete the four hour and sixteen minute exam. This included two hours and eight minutes in excess of the double-time that the complainant's clinical psychologist recommended, which afforded the complainant additional time that could be used at the complainant's discretion for breaks. OCR determined that during the exam, a countdown clock on the complainant's computer monitor reflected the extended time (2.5x), and counted down the remaining time for each of the four modules of the exam. The complainant received a score of 72, below the minimum 79 passing score required by the University. The complainant emailed University personnel on July 5, 2016, stating that she was "extended an accommodation that was better than the previous ones" but complained

---

[7] The University informed OCR that no student has ever been allowed to take Step 2 of the USMLE without first earning a passing score on the CCSE.
[8] OCR determined that the complainant was academically withdrawn from the University on June 11, 2015, for failing to maintain satisfactory academic progress, as defined by the University's May 2015 Student Handbook, and was readmitted on June 17, 2015, subject to several conditions. These are discussed in greater detail in connection with Allegation 2, below.
[9] On June 14, 2016, the registrar notified the complainant that because of technical issues, the complainant's extra time would be increased from 2.25x to 2.5x.

Page 5 – President Neal Simon

that because of the length of the exam, she was unable to fully concentrate for the last blocks[10] and suffered headaches/aches and pain. She also asserted that when she returned from the breaks, the exam would disappear from the computer screen, causing her to panic.[11]

Based on the foregoing, OCR determined that the University approved the complainant to receive 2.25x extended time for the CCSE exam administered on July 1, 2016, which included the 2x extended time her clinical psychologist recommended, and an additional .25x extended time for breaks to be taken at the complainant's discretion. OCR further determined that the complainant actually received 2.5x extended time, more than the 2.25x extended time for which she had been approved. Accordingly, OCR determined that there was insufficient evidence to substantiate that the University failed to provide the complainant with any testing modifications for which she had been approved. Therefore, OCR determined that there was insufficient evidence to substantiate the complainant's allegation that the University discriminated against the complainant, on the basis of her disability, by failing to provide her with appropriate test modifications on the CCSE administered on July 1, 2016.

With respect to Allegation 2, the complainant alleged that in retaliation for complaining to the University on July 5, 2016 about the provision of testing modifications on the CCSE, the University academically dismissed her on July 8, 2016.

In analyzing whether retaliation occurred, OCR must first determine whether the three prima facie elements of retaliation can be established: (1) whether the complainant or alleged injured party engaged in a protected activity; (2) whether the complainant or alleged injured party experienced a materially adverse action by the recipient; and (3) whether there is a causal connection between the protected activity and the materially adverse action. When the evidence demonstrates a prima facie case of retaliation, OCR then determines whether the recipient has a legitimate, non-retaliatory reason for the challenged action or whether the reason adduced by the recipient is a pretext to hide its retaliatory motivation.

OCR determined that the complainant most recently engaged in a protected activity when she complained about the testing modifications she received for the administration of the CCSE July 1, 2016. The complainant had also previously complained to the University about her testing modifications, after taking the Family Medicine Clinical Core Subject Shelf Exam (CCSSE) on October 4, 2013, without receiving her approved 1.5x extended time.[12] OCR determined that the complainant suffered an adverse action when she was academically dismissed from the

[10] The University provided documentation indicating that the complainant actually performed better in module 4, the final module, than in modules 2 and 3.
[11] The complainant advised OCR that during the exam, she informed the proctor who was present of her issues and the proctor helped her by showing her how to log back into the exam; the proctor also let her turn her monitor sideways so she could adjust her seating and stretch her legs. In her email to the University on July 5, 2016, the complainant wrote "I was a little concerned if all my answers were recorded but the proctor reassured me that everything should be fine." The University stated that if there had been a computer failure, or a claim of one, or if the complainant was restricted in her ability to take the exam, the University would have received an incident report from Prometric and a report from NBME. The University did not receive any such reports.
[12] In response, the University allowed the complainant to discard the score from the exam administered on October 4, 2013, and to retake the CCSSE with her approved 1.5 extended time.

Page 6 – President Neal Simon

University, the temporal proximity of which to the protected activity establishes an inference of a causal connection.

The University denied that it dismissed the complainant from the University for complaining about her testing modifications. Rather, the University asserted that the complainant was dismissed because she failed to achieve a passing score on the CCSE, one of several conditions for her readmission to the University on June 17, 2015. Specifically, the complainant's readmission letter, dated June 17, 2015, stated that failure to meet the following conditions would result in dismissal from the program: (1) contacting the clinical coordinator in order to resume the complainant's remaining 20 weeks of clinical rotations, and starting the first rotation no later than August 3, 2015; (2) contacting the Clinical Educational Enhancement Department (EED), for advice regarding study and test taking skills; (3) taking the NBME CCSE and scoring at least 79 in order to be certified to take the USMLE Step 2 CK; (4) once the complainant passed the CCSE, registering for the Clinical Skills (CS) prep program in order to get certified for Step 2 CS; and (5) passing both the USMLE Step2 CK and CS no later than March 31, 2016. In an email dated March 20, 2016, the executive dean extended the deadline for the complainant to pass the CCSE and USMLE Step 2 CK to July 30, 2016, and the deadline to pass the USMLE Step 2 CS to September 30, 2016.

OCR determined that as of the date of her dismissal, the complainant had failed to earn a passing score on the CCSE administered on July 1, 2016, and there was insufficient time for the complainant to sit for the CCSE a sixth time and receive certification to take the Step 2 CK, much less earn a minimum passing score on the USMLE Step 2 CK, by the July 30, 2016 deadline. Specifically, the complaint would have needed to repeat the registration process in order to retake the CCSE. Because the NBME requires that students register at least four weeks prior to the beginning of the three-month test-taking window, the complainant would not have been able to sit for the test a sixth time until August 1, 2016, at the earliest; which assumes that space was available for the next test-taking window and that the test date could be scheduled toward the beginning of the three-month period. Furthermore, students are unable to initiate the registration process for the USMLE Step 2 CK until a passing score on the CCSE is earned. Upon receipt of the verification of the passing score, students must complete and submit a test application to the NBME for the Step 2 CK. After the NBME receives the application, the applicant's school is contacted to verify that she has been certified by the school to schedule a test date. If an applicant has received the prior approval of their school, the NBME will issue the applicant a "scheduling permit." The scheduling permit allows the applicant to select a three-week window of time in which to take the exam. Students receive the results of the Step 2 CK in "three to four weeks" after completing the test; however, the USMLE advises that "delays are possible" and that students "should allow at least eight weeks" for scores to be made available. Based on the foregoing, the complainant would have been unable to take and pass the CCSE and the USMLE Step 2 CK by the July 30, 2016 deadline.

OCR determined that during academic year 2015-2016 the University dismissed 27 other students who violated the University's readmission criteria and who had not engaged in any protected activities.

Page 7 – President Neal Simon

Based on the foregoing, OCR determined that the University proffered a legitimate, non-retaliatory reason for dismissing the complainant on July 8, 2016; namely, the complainant had not satisfied the terms her of readmission to the University. OCR did not find evidence that this reason was a pretext for retaliation, as the complainant's failure to meet the terms of readmission was well-documented, the University acted in accordance with its written policies, the University did not treat the complainant differently from other students who violated the University's readmission criteria and who had not engaged in any protected activities, and the complainant had previously complained to the University regarding her testing modifications, and was not dismissed from the University at that time. Therefore, OCR determined that there was insufficient evidence to substantiate the complainant's allegation that in retaliation for complaining to the University on July 5, 2016, about the provision of testing modifications on the CCSE, the University academically dismissed her on July 8, 2016. Accordingly, OCR will take no further action with respect to the complainant's allegations and has closed this complaint as of the date of this letter.

This concludes OCR's investigation of this complaint and should not be interpreted to address the University's compliance with any other regulatory provision or to address any issues other than those addressed in this letter. This letter sets forth OCR's determination in an individual OCR case. This letter is not a formal statement of OCR policy and should not be relied upon, cited, or construed as such. OCR's formal policy statements are approved by a duly authorized OCR official and made available to the public. The complainant may have the right to file a private suit in federal court whether or not OCR finds a violation.

Please be advised that the University may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process. If this happens, the complainant may file another complaint alleging such treatment.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

If you have any questions regarding OCR's determination, please contact Amy Randhawa, Compliance Attorney, at (646) 428-3781 or sandeep.randhawa@ed.gov, or Gary Kiang, Senior Compliance Attorney, at (646) 428-3761 or gary.kiang@ed.gov.

Sincerely,

Félice A. Bowen
Compliance Team Leader

**United States Department of Education**
**Office for Civil Rights**

## OCR NOTICE OF WITNESS RIGHTS

The U.S. Department of Education, Office for Civil Rights (OCR), is responsible for enforcing Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of 1990, and the Age Discrimination Act of 1975, which prohibit discrimination on the bases of race, color, national origin, sex, disability, and age. OCR is also responsible for enforcing the Boy Scouts of America Equal Access Act of 2001.

You have been identified as an individual who may have information relevant to a case OCR is investigating. Prior to initiating the interview with you, OCR will provide you with the following information:

1. The general purpose of the interview, including OCR's role, what law or laws may be pertinent to the investigation and, where appropriate, a brief explanation of what is under investigation.

2. A general explanation of the potential uses of the information that OCR obtains from you during the interview. This explanation will include information about the Freedom of Information Act.

3. You have the right to personal representation during the interview by a person of your choice.

4. If you are an employee of the school district, postsecondary institution, or other entity that is the subject of this investigation, you may refuse to have anyone else present during the interview. You also have the right to refuse to reveal what you said during an interview. If, however, you are in an upper level position of such authority that you speak for the institution (e.g., superintendent, college president), in most cases, the institution's counsel will be allowed to be present during your interview. If you are not an upper level employee and you identify the institution's legal counsel as your personal representative, OCR will inform you that such a person may have a conflict of interest between his or her responsibilities to the institution and his or her responsibilities as your personal representative.

5. A school district, postsecondary institution, or other entity that is the subject of an investigation may not intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by the civil rights laws enforced by OCR or because an individual has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing conducted pursuant to the laws enforced by OCR. If you believe that you are being retaliated against, you may file a complaint with OCR.

Any individual who will need reasonable accommodations due to a disability in order to participate in the interview should notify Paige Wallace, Compliance Team Attorney, at (646) 428-3830, or Genara C. Necos, Compliance Team Attorney, at (646) 428-3828 as far in advance of the interview as possible. For further information about OCR, please visit our website at: http://www.ed.gov/ocr/ or contact the Office at *(646) 428-3800.*

*January 2010*