UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBBIE ANN BROMFIELD-THOMPSON,

    Plaintiff,

    v.

AMERICAN UNIVERSITY OF
ANTIGUA/MANIPAL EDUCATION
AMERICAS, LLC A/K/A GCLR, LLC, AND
NBME,

    Defendants.

Civil Case No.: 19-CV-6078

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY AMERICAN UNIVERSITY OF ANTIGUA & MANIPAL EDUCATION AMERICAS, LLC

HUGHES HUBBARD & REED LLP
    Robb W. Patryk
    Amina Hassan
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendants Manipal Education Americas, LLC and American University of Antigua*

96432585

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

I. THE OPPOSITION UNDERSCORES THAT PLAINTIFF DID NOT SERVE AUA...................................................................................................................................1

II. THE OPPOSITION FAILS TO OVERCOME THE COURT'S LACK OF PERSONAL JURISDICTION OVER AUA ......................................................................4

III. THE OPPOSITION DOES NOT OVERCOME DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS ................................................8

IV. THE FAC DOES NOT STATE ANY CLAIM AGAINST MEA ....................................8

V. THE FAC DOES NOT STATE A BREACH OF CONTRACT CLAIM .........................9

VI. THE FAC DOES NOT STATE A CLAIM OF BREACH OF GOOD FAITH AND FAIR DEALING .....................................................................................................10

CONCLUSION................................................................................................................................10

96432585

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bates v. Long Island R.R. Co.*, 997 F.2d 1028 (2d Cir. 1993)..........................................................4

*Daimler AG v. Bauman,* 571 U.S. 117 (2014)..........................................................................4, 5

*Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382
    (S.D.N.Y. 2002) ......................................................................................................................2

*Doe v. George Washington Univ.*, 366 F. Supp. 3d 1 (D.D.C. 2018) ........................................10

*Gerena v. Korb*, 617 F.3d 197 (2d Cir. 2010) ................................................................................3

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915 (2011) ..............................................6

*In re Herald*, 540 F. App'x 19 (2d Cir. 2013) ...............................................................................4

*Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475 (3d Dept 2012).....................................................9

*Labarbera v. Giacomelli Tile, Inc.*, No. CV-08-3385 CPS, 2009 WL 1875766
    (E.D.N.Y. June 26, 2009) .......................................................................................................2

*Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) .........................................6

*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).......................................................5

*Persaud v. New York City Health & Hosps. Corp.*, 183 A.D.2d 705 (2d Dept
    1992)........................................................................................................................................3

*Romandette v. Weetabix, Co., Inc.*, 807 F.2d 309 (2d Cir. 1986)....................................................3

*SPV Osus Ltd. v. UniCredit Bank Austria*, 18-cv-3497(AJN), 2019 WL 1438163
    (S.D.N.Y. Mar. 30, 2019) .......................................................................................................6

*Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643 (S.D.N.Y. 2018) .................................................8

*Walden v. Fiore*, 571 U.S. 277 (2014) ..........................................................................................6

**Statutes and Rules**

CPLR § 311 ....................................................................................................................................2

CPLR § 302(a)(1) ..........................................................................................................................6

Fed. R. Civ. P. 4 ........................................................................................................................... 2, 3

The Americans with Disabilities Act ............................................................................................ 1

Rehabilitation Act, 29 U.S.C. § 794 ......................................................................................... 1, 8

96432585

Defendants American University of Antigua ("AUA") and Manipal Education Americas, LLC ("MEA," together the "Defendants") respectfully submit this Reply in further support of their Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion," ECF 55-59).

## PRELIMINARY STATEMENT

Plaintiff's Opposition to the Motion does not address the bulk of Defendants' arguments supporting dismissal of the First Amended Complaint (the "FAC"); rather, it simply repeats the insufficient allegations in the FAC; misconstrues the law; or relies, like the FAC, on conclusory allegations that cannot survive Defendants' motion to dismiss. Although Plaintiff has properly withdrawn her claims of negligent and intentional infliction of emotional distress against the Defendants, Plaintiff's remaining claims – violation of the Americans with Disabilities Act; violation of the Rehabilitation Act; breach of contract; and breach of the duty of good faith and fair dealing – are equally unavailing. For the reasons set forth more fully in Defendants' Opening Brief ("Op. Br." (ECF 56)) and below, each of Plaintiff's remaining claims ought to be dismissed against both AUA and MEA.

### I.  THE OPPOSITION UNDERSCORES THAT PLAINTIFF DID NOT SERVE AUA

As explained in Defendant's Motion, AUA has neither an office in New York nor a designated agent to accept service of process in New York, and both facts easily could have been ascertained by Plaintiff from the New York Department of State website. (ECF 56 at 26; ECF 58 ¶¶ 4, 8; ECF 59-1.) Plaintiff was required to serve AUA, a foreign entity, in accordance with Federal Rules of Civil Procedure 4(h)(2) and 4(f). Plaintiff failed to do so, and Plaintiff's Opposition likewise fails to rebut the insufficiency of service on AUA. The Opposition relies on the declaration of the process server, Augustus Wilson, which states as follows:

> On October 8, 2019 I entered the building where American University of Antigua/MEA was located (1 Battery Plaza, New York, NY 10004). I told the person in the lobby entrance that I had legal documents to serve. I was allowed to

> go upstairs to the authorized department. When I went upstairs I was met by a receptionist. I told her I had legal documents for American University of Antigua/MEA. She said let me go get someone who can accept those for you. That is when Anita O'Brien came out to the desk. The documents I gave to her were clearly captioned as court documents. She said nothing to the effect that she was not authorized to accept the documents. She accepted the documents and gave her name as Anita O'Brien.

(ECF 61-1 at 4.) The declaration is insufficient to overcome Plaintiff's failure to serve AUA.

First, the process server's conclusory statement that AUA is located at 1 Battery Plaza, New York, NY 10004 does not make it so. *See, e.g.*, *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served."). In fact, the photograph allegedly taken by the process server (Plaintiff's Ex. 3 (ECF 61-1 at 5)) shows that the New York office is MEA's office, not AUA's. Moreover, basic diligence by Plaintiff, *e.g.*, checking the New York Department of State website, would have put Plaintiff on notice that AUA does not have an office in New York, and more importantly, that it does not have any person or entity designated to accept service of process in New York.

Second, even assuming that MEA's offices in New York can be treated as AUA's offices *for purposes of serving legal process* – a proposition for which Plaintiff has offered no legal basis – Plaintiff's service of process was insufficient. To tender service on a corporation in New York, Plaintiff was required to effect service on an officer, director, managing or general agent, cashier or assistant cashier of AUA, or to any other agent authorized by appointment or by law to receive service. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A)-(B); CPLR § 311. While a process server may rely on the employees of a corporation to identify, *e.g.*, themselves as the proper persons to serve, that reliance must be reasonable. That reliance is not reasonable where the process server does not make the necessary inquiries to ensure service is on a proper person. *See, e.g.*, *Labarbera v. Giacomelli Tile, Inc.*, No. CV-08-3385 CPS, 2009 WL 1875766, at *2 (E.D.N.Y.

June 26, 2009) (deficient service where the process server "made no attempt to ascertain the title or corporate position of the individual who accepted the papers or even to inquire whether the individual was actually an employee of the defendant corporation.").

Here, the process server, based on his own declaration, made no inquiries whatsoever from Ms. O'Brien to ascertain whether she was an employee of AUA; if so, what position she held with AUA; and whether she was otherwise authorized to accept service of process on behalf of AUA. (*See* Plaintiff's Ex. 2 (ECF 61-1 at 4).) Had the process server asked any of those basic questions, it would have been obvious that process could not be served on AUA by serving Ms. O'Brien. Such threshold inquiries were especially pertinent here because service had to be effected on two different entities, AUA and MEA. *See, e.g.*, *Persaud v. New York City Health & Hosps. Corp.*, 183 A.D.2d 705, 706 (2d Dept 1992) (no service on corporate defendant where process server left the summons and complaint with an administrative assistant, who accepted the process papers, but the process server "made no inquiry to determine the relationship of the administrative assistant to the [defendant], what duties she performed, or whether she was authorized to accept service of process," which she was not).[1] Plaintiff is turning the law on its head by arguing that Ms. O'Brien "did not reject being served on behalf of AUA nor indicate that she is not authorized to accept service on AUA's behalf." (Opp. at 29.) The burden lies with Plaintiff to effect proper service, not on a defendant to avoid improper service.[2]

---

1. Plaintiff's argument that Rule 4's service requirements should be interpreted "liberally" where the defendant otherwise received "notice" of the action (Opp. at 28) is contrary to the law. Notice is not a substitute for proper service. *See Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010). Plaintiff cites for her argument *Romandette v. Weetabix, Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986). But *Romandette* is entirely distinguishable. In *Romandette*, the court held that plaintiff's complaint should not have been dismissed for failure to affect proper service, where plaintiff was incarcerated, had timely asked the U.S. Marshal to effect service and the U.S. Marshal had simply not served the complaint. *Id*. The court specifically noted that "Romandette had done everything in his power to effect personal service through the Marshal's Service." *Id*. That is not the case here.
2. As raised in the Opening Brief, and unaddressed by Plaintiff's Opposition, Plaintiff is not entitled to a further opportunity to cure its deficient service on AUA given that: (1) Plaintiff did not conduct the due diligence in the first instance to effect proper service on AUA, and (2) then, despite being on clear notice of the deficient

3

## II.   THE OPPOSITION FAILS TO OVERCOME THE COURT'S LACK OF PERSONAL JURISDICTION OVER AUA

As explained in Defendant's Opening Brief, the Court does not have general or specific jurisdiction over AUA.  Plaintiff's Opposition fails to demonstrate otherwise.

First, contrary to Plaintiff's assertion (Opp. at 21), the fact that the U.S. Department of Education, Office of Civil Rights ("OCR") has jurisdiction over AUA does not mean that AUA is "judicially estopped" from challenging personal jurisdiction of the Court.  Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding."  *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993).  Plaintiff has alleged no inconsistency in any factual position that AUA took before the OCR and is now taking before the Court.  Moreover, the grounds on which OCR obtains jurisdiction over an institution – primarily federal funding – are entirely different from the grounds for a court obtaining personal jurisdiction over a defendant.[3]

Second, Plaintiff ignores Supreme Court precedent in arguing that the Court should exercise general jurisdiction over AUA because "AUA has engaged in 'purposeful availment' of the benefits and privileges of New York Law," and "it is reasonable, fair and just for this court to exercise general jurisdiction over their activities since its affiliations with the State are so continuous and systematic as to render them at home."  (Opp. at 25-26.)  Even if Plaintiff's factual assertions are credited as true for the purposes of this motion to dismiss, Plaintiff has simply not alleged facts sufficient to support the exercise of general jurisdiction over AUA.

As explained in the Opening Brief, under the Supreme Court's decision in *Daimler AG v.*

---

service since at least December 9, 2019 (when AUA and MEA filed their original motion to dismiss (ECF 37 at 16-17)), has purposefully done nothing to cure the deficiency in service.  *See In re Herald*, 540 F. App'x 19, 25 (2d Cir. 2013) (affirming dismissal of claims for insufficient service of process where the plaintiff had notice of failure to complete service by a given deadline but failed to do so).

3.   *See* U.S. DEPT. OF EDUCATION, OFFICE OF CIVIL RIGHTS, CASE PROCESSING MANUAL, https://www2.ed.gov /about/offices/list/ocr/docs/ocrcpm.pdf (11.19.2018) (explaining grounds of the OCR's jurisdiction).

*Bauman*, a corporation is subject to general jurisdiction, consistent with constitutional due process, only (1) in its place of incorporation, (2) its principal place of business, or (3) in the very narrow "exceptional case," where the corporation's contacts with another forum are "so substantial . . . as to render the corporation at home in that State." 571 U.S. 117, 139 n.19 (2014).[4] AUA is incorporated under the laws of Antigua and its principal place of business is in Antigua. (Op. Br. at 5-6, 19.) And tellingly, Plaintiff has not addressed *Daimler* in her Opposition, nor why this case falls within the very narrow scope of the "exceptional case" – which it does not. Rather, Plaintiff relies on a conclusory statement that AUA's connections with New York "render [it] at home" in the state. (Opp. at 26.) Such conclusory assertions are insufficient to create general jurisdiction, which would open a defendant to any and all claims within a state. *See Daimler*, 517 U.S. at 137-38 ("[S]ubstantial, continuous, and systematic course of business," in and of itself, is insufficient to render a corporation "at home" in a state).

<u>Third</u>, Plaintiff insists that the Court must have personal jurisdiction over AUA because AUA has "an office" (*i.e.*, MEA's office) in New York. (Opp. at 24.) Although that is not the case, and is supported by sworn declarations (*see* Op. Br. at 20), even assuming that AUA has "an office" or branch in New York, that is insufficient to warrant the exercise of general or specific jurisdiction over AUA in this case. One, a court cannot exercise general jurisdiction over a defendant simply because the defendant has an office in the state (which is not its principal place of business). (*See id*. (citing Second Circuit case law for this proposition).) Again, Plaintiff has simply not addressed this legal precedent in her Opposition. Two, nor does the presence of "an office" in New York alone confer the Court specific jurisdiction over AUA

---

4. As also noted in the Opening Brief (at 29), the Second Circuit has identified only one example of an "exceptional case" referred to by the Supreme Court in *Daimler*: *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). In that case, a foreign company's principal place of business was determined to be Ohio because its headquarters had temporarily moved there from the Philippines due to wartime Japanese occupation. *See Daimler*, 517 U.S. at 129-30.

5

96432585

because specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted); *see also* Opening Br. at 21-25.

Fourth, while the Opposition repeats the same laundry list of alleged connections with New York as included in the complaint (*see* FAC ¶¶ 13, 16, 25, 29, 30, 31, 51 & Opp. at 21-25), it fails to demonstrate that those connections have the requisite relationship with her claims to allow the Court to exercise specific jurisdiction over those claims. In her Opposition, Plaintiff relies on CPLR 302(a)(1) of the New York Long Arm Statute, under which, to exercise specific jurisdiction, the claims must "arise from" defendant's transaction of business in the state. *See* CPLR § 302(a)(1). In addition, to comport with constitutional due process "the defendant's suit-related conduct must create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In this Circuit, courts require "either proximate or but-for causation" depending on the extent of "the relationship among the defendant, the forum, and the litigation." *SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18-cv-3497(AJN), 2019 WL 1438163, at *6 (S.D.N.Y. Mar. 30, 2019).

Citing *Licci*, Plaintiff argues that the "arise from" requirement does not require a "causal link," but rather a "relatedness between the transaction and the legal claim." (Opp. at 25 (citing *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013).) Yet, *Licci* does not sanction any kind of link between the transaction and the legal claim as a basis for specific jurisdiction. The "relatedness" must still be "an articulable nexus" or "substantial relationship," and not "merely coincidental." *Licci* at 168.[5] Plaintiff alleges that "AUA from its NYC office" (which as noted above is incorrect) "made the accommodation arrangements with NBME, paid

---

5. *Licci* involved the repeated use by defendants of a New York bank account to effect the transfer of funds to support the very terrorist activity that was the actionable conduct in the case. *Id.* at 168-69. The use of the bank account, therefore, was not simply ministerial or "coincidental" to the actionable conduct, as is the case here with the New York conduct alleged by Plaintiff.

the fees, and prescribed the nature of the accommodation." (Opp. at 25.) Even if assumed to be true, the administrative or ministerial actions described by Plaintiff are "merely coincidental" to the decision of what accommodations to provide Plaintiff, which per Plaintiff's *own* complaint and Opposition papers, had to be made by Dr. Rice, based in Antigua. (*See, e.g., id*. at 15 ("Dr. Rice [was] the person who was responsible for making accommodation decisions."), 6 (AUA "had no department or personnel on board in the United States to handle accommodation requests," therefore, all of Plaintiff's requests for accommodation were reviewed and decided upon by Dr. Rice).) Moreover, the connections alleged by Plaintiff do not meet the "proximate" or "but-for" requirements for constitutional due process – a point that Plaintiff's Opposition simply does not address. It cannot be said that an MEA employee making the arrangement for an accommodation which was considered and granted by AUA's Dr. Rice in Antigua was the "but-for" cause of Plaintiff's alleged injury of not being provided a reasonable accommodation.

The Opposition does not even address AUA's arguments that the Court does not have specific jurisdiction over Plaintiff's breach of contract and breach of good faith and fair dealing claims regarding her discharge from the M.D. program. (*See* Op. Br. at 22-24.) In addition, as explained in the Opening Brief, all the other connections with New York alleged in the FAC (*e.g.*, Plaintiff attended an orientation session in New York), have nothing to do with her claims and cannot confer specific jurisdiction over those claims. (*Id*. at 13-14.) Nor does Plaintiff's claim that she has hundreds of emails with AUA's alleged New York office (Opp. at 23, 24) help her. Plaintiff's claims do not "arise from" any of these emails. Nor are these emails the "proximate" or "but-for" cause of Plaintiff's alleged injuries. (*See* Op. Br. at 24.)[6]

Finally, there are no grounds for the jurisdictional discovery that Plaintiff requests in

---

6. Plaintiff also contends that a forum selection clause (designating New York as the forum for resolution of dispute) in the services agreement between MEA and AUA confers general jurisdiction over AUA. (*See* Opp. at 25-26.) However, Plaintiff is not a party to the services agreement and cannot enforce the forum selection claims. Tellingly, Plaintiff provides no legal authority for her broad assertion.

7

order to serve FOIA requests on the federal and state governments to obtain AUA's applications for FAFSA loans for its students and for accreditation for clinical clerkships from the New York State Department of Education. (Opp. at 23-24.) Plaintiff speculates that these applications will show that AUA has "an office" in New York – which as noted above is not dispositive on the issue of personal jurisdiction in this case – or some other "nexus" to the state. However, a speculative, and unidentified "nexus" to the state with regard to federal loans and accreditation, neither of which has anything to do with Plaintiff's claims, cannot be the basis of specific jurisdiction over Plaintiff's claims. Nor is jurisdictional discovery a tool for an "unfounded fishing expedition." *See Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018).

### III. THE OPPOSITION DOES NOT OVERCOME DEFENDANTS' MOTION TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS

Plaintiff's Opposition fails to address the critical facts which compel the finding that Antigua, not New York, is the proper forum for this dispute. Although Plaintiff claims that New York is a convenient forum (Opp. at 26), she does not deny, nor can she, that the actual decisions giving rise to her claims—namely, whether and what accommodations to provide her and the decision to discharge her from the M.D. program—were all made in Antigua, where AUA and the decision-makers themselves are located. (*See* Op. Br. at 11-13.) In particular, the decisions concerning Plaintiff's accommodation and discharge were made by Dr. James Rice and AUA's Promotions Committee, both based in Antigua. (*Id*. at 13.) The fact that Plaintiff's clinicians may reside in D.C. and that Plaintiff may designate a witness who works in NBME's Philadelphia office (Opp. at 26) does not tip the balance in favor of a New York forum.

### IV. THE FAC DOES NOT STATE ANY CLAIM AGAINST MEA

The Opposition completely fails to address Defendants' argument that the FAC did not allege <u>any</u> misconduct by MEA. (*See* Op. Br. at 29-30.) The Opposition does not identify any wrongful conduct by MEA either. Nor does Plaintiff deny that the Rehabilitation Act does not

8

even apply to MEA. (*See id.*) Accordingly, Plaintiff's complaint against MEA should be dismissed in its entirety for failure to state a claim.

## V. THE FAC DOES NOT STATE A BREACH OF CONTRACT CLAIM

Plaintiff has not even addressed, much less refuted, Defendant's argument that her breach of contract claim, which challenges academic and administrative decisions made by AUA, is an improperly pleaded and time-barred Article 78 challenge. (*See* Op. Br. at 35-36.) This is sufficient grounds for dismissal with prejudice of Plaintiff's breach of contract claim.

Nor has Plaintiff otherwise cured her failure to state an actionable breach of contract claim. Instead, Plaintiff repeats in her Opposition the allegations from her complaint – that "defendant stated that it had numerous clinical sites all across the United States which [allegedly] was untrue;" that "defendant imposed strict time constraints for the completion of her degree"; and that "after plaintiff failed the [CCSE] exam she was dismissed" – without addressing Defendant's arguments why these allegations fail to state a claim for breach of contract. (*See* Op. Br. at 32-35.) Plaintiff adds in the Opposition two additional allegations. Neither states an actionable breach of contract claim. First, Plaintiff alleges that "Defendant also presented plaintiff with a student handbook which set forth procedures for granting accommodation," and that Plaintiff had "difficulties getting defendant to fulfill its [unidentified] promises." (Opp. at 19.) However, Plaintiff has not identified any particular "procedure" for accommodation that AUA (or MEA) allegedly breached. *See Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475, 477 (3d Dept 2012) (lower court properly determined that plaintiff's failure to identify the specific "internal rule, regulation or code" that the college allegedly breached was "fatal to his [breach of contract] claim"). Second, Plaintiff has contended that "Defendant fabricated a pretextual reason to administratively withdraw plaintiff from the university claiming that she had not commenced a clinical rotation within six months of her last rotation as required by the rules." (Opp. at 19.)

9

Again, Plaintiff has not identified any particular "internal rule, regulation or code" that AUA allegedly breached in administratively withdrawing Plaintiff from the M.D. program. Indeed, Plaintiff does not even refute that she did not commence a clinical rotation within six months of her last rotation prior to the administrative withdrawal. (*See* FAC ¶ 46; Opp. at 7.)

### VI.  THE FAC DOES NOT STATE A CLAIM OF BREACH OF GOOD FAITH AND FAIR DEALING

Plaintiff concedes that, under New York law, her claim for breach of the duty of good faith and fair dealing is duplicative of her breach of contract claim (Opp. at 20), and, therefore, must be dismissed (*see* Op. Br. at 37). Plaintiff attempts to avoid that conclusion by arguing that "whether [the claim] survives or get[s] dismissed will depend on what choice of law the court utilizes," "be it Washington D.C. or New York State." (Opp. at 20.) Plaintiff's argument is unavailing because under both D.C. and New York law, a claim for breach of the duty of good faith and fair dealing should be dismissed if it is duplicative of a breach of contract claim – as Plaintiff concedes it is in this case. *See Doe v. George Washington Univ.*, 366 F. Supp. 3d 1 (D.D.C. 2018) (dismissing claim for breach of the duty of good faith and fair dealing as duplicative of the contract claim).[7]

### CONCLUSION

For the reasons set forth in AUA's and MEA's Opening Brief and above, AUA and MEA respectfully request that the Court dismiss the First Amended Complaint in its entirety as to AUA and MEA, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York  
March 12, 2020

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s *Robb W. Patryk*  
 Robb W. Patryk

---

7. Moreover, Plaintiff did not allege any claims under D.C. law in the FAC – indeed, she explicitly withdrew such claims from her original complaint when she filed the FAC (*compare* ECF 1 ¶ 5 *with* ECF 45 ¶ 8).

10