UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBBIE ANN BROMFIELD-THOMPSON,<br><br>       Plaintiff,<br><br>  v.<br><br>AMERICAN UNIVERSITY OF ANTIGUA/<br>MANIPAL EDUCATION AMERICAS, LLC,<br>aka GCLR, LLC et al.,<br><br>       Defendant. | No. 19-CV-06078 (JMF) |

**REPLY BRIEF IN SUPPORT OF THE
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
<u>BY THE NATIONAL BOARD OF MEDICAL EXAMINERS</u>**

## TABLE OF CONTENTS

Page

I. PLAINTIFF FAILS TO SHOW THAT THE COURT HAS PERSONAL JURISDICTION OVER NBME ................................................................................................ 1

II. PLAINTIFF DOES NOT HAVE STANDING TO PURSUE HER ADA CLAIM .......... 7

III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST NBME ....................................... 9

    A. Ms. Thompson Fails to State a Claim Under the ADA ......................................... 9

    B. Ms. Thompson Fails to State a Claim for Breach of Contract ............................... 9

    C. NBME Is Not "Jointly and Severally Liable" to Ms. Thompson Under the Rehabilitation Act .................................................................................................. 9

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158 (2d Cir. 2010) ................................................................................................... 6

*Clasen v. Nat'l Bd. of Osteopathic Medical Exam'rs, Inc.,*
  No. 4:15-cv-625, 2015 WL 9489507 (E.D. Tex. 2015) ........................................................... 2

*Daimler v. Bauman,*
  571 U.S. 117 (2014) ..................................................................................................... 1, 2, 3, 4

*Deutsche Bank Securities, Inc. v. Montana Bd. of Investments,*
  7 N.Y.3d 65 (2006) ................................................................................................................. 7

*Doe v. NCBE,*
  No. 1:16-cv-264, 2017 WL 74715 (E.D.N.Y. 2017) .............................................................. 2

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) ............................................................................................................ 3, 4

*Gucci Amer., Inc. v. Bank of China,*
  768 F.3d 122 (2d Cir. 2014) ................................................................................................... 4

*Hill v. HSBC Bank PLC,*
  207 F. Supp. 3d 333 (S.D.N.Y. 2016) .................................................................................... 6

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................................... 3

*Knight-McConnell v. Cummins,*
  2005 WL 1398590 (S.D.N.Y. 2005) ...................................................................................... 6

*Kruetter v. McFadden Oil Corporation,*
  71 N.Y.2d 460 (1988) ............................................................................................................ 6

*Simon v. New York,*
  No. 14-cv-8391 (JMF), 2015 WL 4092389 (S.D.N.Y. 2015) ................................................ 7

*Sonera Holding B.V. v. Cukurova Holding A.S.,*
  750 F.3d 221 (2d Cir. 2014) ................................................................................................... 4

*Walden v. Fiore,*
  571 U.S. 277 (2014) ............................................................................................................... 6

**Statutes**

42 U.S.C. § 12189 ............................................................................................................. 9

**Other Authorities**

N.Y. C.P.L.R. § 302(a)(1) ............................................................................................ 5, 6

The bulk of Ms. Thompson's opposition to the motions to dismiss filed by AUA and MEA (who filed a joint brief) and NBME is focused on her claims against AUA. *See* Consolidated Mem. of Law in Supp. of Pl.'s Opp. to AUA and MEA and NBME's Mot. to Dismiss Pl.'s First Amended Complaint (ECF No. 61) ("Pl. Br.") at 5-29. In the few pages she devotes to NBME, she insists that the Court has personal jurisdiction over NBME and that she has standing to pursue an ADA claim against NBME. *See id.* at 29-33. She barely touches on the fundamental issue of whether she has raised any viable claim against NBME.

Ms. Thompson has failed to show that the Court has personal jurisdiction over NBME, that she has standing to pursue her ADA claim against NBME, or that she has stated any claim against NBME for which relief can be granted. Her claims against NBME should be dismissed.

**I.   PLAINTIFF FAILS TO SHOW THAT THE COURT HAS PERSONAL JURISDICTION OVER NBME**

Ms. Thompson concedes that it is her burden to show that the Court has personal jurisdiction over NBME. *See* Pl. Br. at 20. She has not met this burden.

First, Ms. Thompson has not established general jurisdiction over NBME in New York. She acknowledges that under *Daimler v. Bauman*, 571 U.S. 117 (2014), a corporation is subject to general jurisdiction only in the state where it is incorporated and the state where its principal place of business is located, absent "exceptional circumstances." *See* Pl. Br. at 29 ("Thus, aside from an exceptional case, a corporation is generally at home and is subject to general jurisdiction, consistent with due process in its home state."). She also acknowledges that NBME's principal place of business is in Pennsylvania, not New York. *See id.*[1] There are no "exceptional circumstances" here that would support subjecting NBME to general jurisdiction

---

[1] As set forth in NBME's opening brief, it is incorporated in Washington, D.C., *see* NBME Br. at 9-10 (citing Kershen Decl. ¶ 3), and Ms. Thompson does not contest this fact.

outside its home state. *See* Mem. of Law in Supp. of Mot. to Dismiss Pl.'s FAC by NBME (ECF No. 52) ("NBME Br.").

Ms. Thompson complains that "[i]f NBME's argument against general jurisdiction were to be accepted there would be no scenario under which a court could ever make a finding of general jurisdiction with respect to a corporate entity." *Id.* This argument is plainly incorrect. Under *Daimler*, a corporation is subject to general jurisdiction in the state where it is incorporated and the state where its principal place of business is located. "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Daimler*, 571 U.S. at 137.

As discussed in NBME's opening brief, a New York federal court following *Daimler* held that the National Conference of Bar Examiners (NCBE) is not subject to general jurisdiction in New York simply because it develops and administers bar-related examinations that are used in New York, noting that "this argument … would subject the NCBE to limitless general jurisdiction across the country, a result the Supreme Court directly cautioned against in *Daimler*." *Doe v. NCBE*, No. 1:16-cv-264, 2017 WL 74715, at *6 (E.D.N.Y. 2017); *see also Clasen v. Nat'l Bd. of Osteopathic Medical Exam'rs, Inc.*, No. 4:15-cv-625, 2015 WL 9489507, at *5 (E.D. Tex. 2015) (following *Daimler* and *Goodyear* and finding "the administration of NBOME examinations in Texas (as well as in all 50 states) does not constitute the requisite 'substantial, continuous, and systematic[ ] contacts' necessary for a finding of general jurisdiction") (citation omitted), *adopted by* 2016 WL 890675 (E.D. Tex. 2016). Ms. Thompson attempts to distinguish *Doe v. NCBE* by arguing that NCBE "schedules a few exams yearly in states around the country," Pl. Br. at 30, but that is a distinction without a difference. She suggests that NBME "sells its exams to all medical schools in New York City," arranges with

Prometric, schools, and research hospitals for exams to be taken in New York, and makes arrangements with doctors who have relocated from foreign countries to sit for examination around New York. *Id.* She cites no support for these contentions, but even if they were true, they are immaterial. The *Doe* court's concern was that subjecting NCBE to general jurisdiction in New York based on its administration of tests in New York would necessarily subject the NCBE to jurisdiction across the country, contrary to the due process concerns addressed in *Daimler*. As the *Daimler* Court stated, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." 571 U.S. at 139 n.20.

That reasoning applies equally to NBME's nationwide testing-related activities. In both *Daimler* and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), the U.S. Supreme Court emphasized that "[a] corporation's 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Goodyear*, 564 U.S. at 927 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)); *Daimler*, 571 U.S. at 137-38 ("Plaintiffs would have us look beyond the exemplar bases *Goodyear* identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'…. That formulation, we hold, is unacceptably grasping.").

Ms. Thompson argues that she does not know whether NBME "has employees within the state, agents, offices, bank accounts, property, joint ventures with other entities, the volume of business, and whether it pays state income or property taxes," and suggests that jurisdictional discovery is warranted. Pl. Br. at 30. These factors were identified in the pre-*Daimler* case cited by Ms. Thompson, *Hutton v. Priddy's Auction Galleries, Inc.*, as relevant to determining "whether a foreign corporation is doing business in New York" within the meaning of the New

York long-arm statute. 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003). This "doing business" test, however, is not the proper focus for determining whether the exercise of general jurisdiction comports with constitutional due process post-*Daimler*. *See Daimler*, 571 U.S. at 133 n.11 ("As the Court made plain in *Goodyear* and repeats here, general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum state.'… *i.e.*, comparable to a domestic enterprise in that State.") (internal quotation mark and citation omitted); *see generally Gucci Amer., Inc. v. Bank of China*, 768 F.3d 122, 136 (2d Cir. 2014) (explaining change in applicable law from New York's "doing business" test post-*Daimler*); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224-25 and n.2 (2d Cir. 2014) (declining to reach general jurisdiction issue under New York long arm statute because general jurisdiction was not consistent with due process under *Daimler*).[2] There is no reason to conduct "general jurisdiction" discovery or assess the factors listed by Ms. Thompson given that she has not shown that a New York court could assert general personal jurisdiction over NBME consistent with due process limitations. *Cf. Daimler*, 571 U.S. at 132-33 ("As the Court has increasingly trained on the 'relationship among the defendant, the forum, and the litigation,' … *i.e.*, specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the statutory scheme.").

---

[2] The example provided in *Daimler* and *Goodyear* of a foreign corporation properly subject to general jurisdiction outside its place of incorporation and principal place of business is *Perkins v. Benguet Consol. Mining Co.*, where a Philippine mining company had ceased conducting activities in the Philippines during World War II, and to the extent it was doing any business, was doing so in Ohio, where the corporation's president maintained his office, kept the company files, and supervised the company's activities. *See Goodyear*, 564 U.S. at 928; *Daimler*, 571 U.S. at 129. NBME is not operating any aspect of its business out of New York. NBME has offices only in Pennsylvania. It has no employees, agents, or offices in New York.

Ms. Thompson's arguments with respect to specific jurisdiction are also flawed. She appears to rely on N.Y. C.P.L.R. § 302(a)(1), *see* Pl. Br. at 30, which provides that a defendant may be subject to jurisdiction in New York if it transacts any business within the state or contracts to supply goods or services in the state ***and*** the cause of action arises from such acts. Ms. Thompson's complaint against NBME, however, is a "narrow" claim that NBME "agreed to fashion accommodation for plaintiff that NBME knew was not reasonable." Pl. Br. at 32. It is based on NBME's alleged "knowledge" that the accommodations AUA provided her were not "reasonable." *Id.* at 31-32. Ms. Thompson does not—and cannot—allege that NBME's acts or "knowledge" occurred anywhere other than in Pennsylvania, where NBME's offices are located. Apart from that, Ms. Thompson tested in Virginia, and she is a resident of Washington, D.C. Ms. Thompson's "narrow" claim against NBME cannot be litigated in New York.

Mr. Thompson argues that "one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the [defendant's] activities were purposeful and there is a substantial nexus between the transaction and the claim asserted." Pl. Br. at 30. She cites cases for the propositions that a defendant's telephone, internet, or other electronic contacts may establish jurisdiction under N.Y. C.P.L.R. 302(a)(1). *See id.* at 30-31. The problem with Ms. Thompson's argument, however, is that her claim against NBME is not related to NBME transacting business in New York or contracting to supply goods or services in New York. At most, she alleges that NBME communicated with AUA representatives in New York with respect to the accommodations that AUA agreed to provide her on the Comprehensive Clinical Science Examination ("CCSE"). *See* Pl. Br. at 32. Any such alleged communications with AUA in New York (as opposed to Antigua, where the school is located, or any other location) were fortuitous and are insufficient to show that NBME

purposefully availed itself of the privilege of conducting activities in New York with respect to the claims asserted by Ms. Thompson against NBME. *See Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 338-40 (S.D.N.Y. 2016); NBME Br. at 12-13. NBME's alleged suit-related conduct does not create a "substantial connection" with New York. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). There is no basis for the Court to exercise specific jurisdiction over NBME consistent with the long-arm statute or due process considerations.

The cases cited by Ms. Thompson do not support a different conclusion. *Kruetter v. McFadden Oil Corporation* explains that N.Y. C.P.L.R. § 302(a)(1) is a "'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." 71 N.Y.2d 460, 467 (1988) (emphasis added). As previously discussed, any alleged communications from NBME to staff at AUA in New York were not "purposeful" within the meaning of the long-arm statute, nor is there a "substantial relationship" between such communications and Ms. Thompson's claim against NBME. Ms. Thompson cites *Knight-McConnell v. Cummins* for the proposition that "a defendant's internet contacts may establish jurisdiction under 302(a)(1)," Pl. Br. at 30, but *Knight-McConnell* was a case dealing specifically with whether certain internet postings were unlawful, which is not remotely the issue here. No. 03-5035, 2005 WL 1398590, at *3 (S.D.N.Y. 2005). She cites *Chloe v. Queen Bee of Beverly Hills, LLC*, for the proposition that the "shipment of one handbag into the state combined with employer's extensive contacts with New York sufficed to confer personal jurisdiction," Pl. Br. at 31, but in *Chloe*, that one shipment of a counterfeit item into New York was itself unlawful. 616 F.3d 158, 167 (2d Cir. 2010). Even if NBME did communicate with AUA in New York, those communications were

not unlawful and Ms. Thompson does not allege otherwise.  Finally, Ms. Thompson cites *Deutsche Bank Securities, Inc. v. Montana Bd. of Investments* to argue that "[t]he New York Court of Appeals has upheld long-arm jurisdiction where commercial actors have used electronic and telephone means to 'project' themselves into New York to conduct business transactions." Pl. Br. at 31.  *Deutsche Bank* found specific personal jurisdiction, however, because the defendant there was "a sophisticated institutional trader that entered New York to transact business here by knowingly initiating and pursuing a negotiation with a DBSI employee in New York…"  7 N.Y.3d 65, 71-72 (2006).  Nothing like that happened here.  NBME cited numerous decisions in its opening brief explaining that limited electronic or telephone communications to New York are not sufficient, standing alone, to establish specific personal jurisdiction.  *See* NBME Br. at 12-13.

Finally, NBME notes that Ms. Thompson does not address her "bulge jurisdiction" argument in her opposition brief.  Therefore, in addition to being wrong, *see* NBME Br. at 14, this alleged basis for personal jurisdiction should be deemed abandoned.  *See Simon v. New York*, No. 14-cv-8391 (JMF), 2015 WL 4092389, at *2 (S.D.N.Y. 2015) ("[W]hether or not Defendants' arguments had merit, it was Plaintiffs' obligation to address the issue, on pain of their claim being deemed abandoned.") (citations omitted).[3]

## II. PLAINTIFF DOES NOT HAVE STANDING TO PURSUE HER ADA CLAIM

In its opening brief, NBME explained that Ms. Thompson is only entitled to preventive injunctive relief under Title III of the ADA, and she has not made, and cannot make, a showing

---

[3] AUA and MEA have moved to dismiss on forum non conveniens grounds "in favor of Antigua." Mem. of Law in Supp. of Mot. to Dismiss by AUA and MEA (ECF No. 56) ("AUA/MEA Br.") at 11.  NBME understands this argument to be relevant only if NBME is dismissed as a party. *See id.* at 15.  NBME is not subject to jurisdiction in Antigua and does not consent to jurisdiction or proceedings there.

of certainly impending future injury with respect to the CCSE exam and NBME to support standing in this case. *See* NBME Br. at 15-17.

In response, Ms. Thompson argues that her dismissal from medical school is "traceable" to "NBME's conduct in approving the taking of the CCSE exam without requiring accommodation that was 'reasonable,'" and suggests that NBME "could have chosen not to release the exam until AUA came up with an alternative that was reasonable." Pl. Br. at 33. This is a new theory of liability, but in any event, she offers no reason why NBME would be legally obligated to not "release" the exam, and this argument has no merit. NBME does not decide whether a medical student is entitled to accommodations on the CCSE exam or supervise a school's accommodation process. Ms. Thompson concedes that it was AUA who made the testing accommodation decision, not NBME. *See, e.g.,* Pl. Br. 9-10, 17 ¶ 6; FAC ¶¶ 1, 22.[4] Ms. Thompson's argument against NBME also focuses on past events, not on any future administrations of the CCSE, and she is not entitled to relief under Title III of the ADA against NBME for any alleged past injuries. *See* NBME Br. at 15-16.

Ms. Thompson's only remaining argument is that, if NBME were dismissed with prejudice as a defendant in this lawsuit and the court were to subsequently enter a judgment against AUA, then "plaintiff would have no recourse against NBME under principles of *res judicata* and issue preclusion." Pl. Br. at 33. This argument again misses the point. She cannot obtain "recourse" against NBME for past harm, and has no need for recourse against NBME going forward. If the Court were to issue a final judgment in favor of Ms. Thompson and hold that AUA must provide her with her requested accommodations on the CCSE, then it would be

---

[4] AUA's brief recognizes this as well. *See, e.g.,* AUA/MEA Br. at 14 ("[T]he decision regarding what accommodations Plaintiff would be granted…were all made in Antigua."); *id.* at 16 ("Dr. Rice, who assessed and granted accommodations to Plaintiff, is based in Antigua….").

AUA's responsibility to act in accordance with such a ruling (for example, find a school where Ms. Thompson could test over two days). NBME is not a proper defendant and the claims against NBME should be dismissed.

### III.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST NBME

#### A.   Ms. Thompson Fails to State a Claim Under the ADA

NBME argued in its opening brief that the CCSE is not an examination "used for applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes," NBME Br. at 19 (quoting 42 U.S.C. § 12189), and Ms. Thompson therefore cannot pursue a claim against NBME under Section 12189 relating to the CCSE. Ms. Thompson does not address this argument in her opposition brief.

NBME also showed that—according to Ms. Thompson's own allegations—it was AUA, not NBME, who determined the accommodations she was provided on the CCSE. *See* NBME Br. at 19-20. Ms. Thompson does not dispute this. Her argument that NBME allegedly had "knowledge" that the accommodations provided were unreasonable, *see* Pl. Br. at 31-32, does not support an ADA claim against NBME.

#### B.   Ms. Thompson Fails to State a Claim for Breach of Contract

Ms. Thompson offers only a conclusory statement in support of her purported breach of contract claim against NBME. *See* Pl. Br. at 32 ("[G]iven the conspiratorial nature of the decision NBME is liable under the ADA, the Rehabilitation Act, and under principles of third party beneficiary contract."). This is insufficient to prevent dismissal. *See* NBME Br. at 20-21.

#### C.   NBME Is Not "Jointly and Severally Liable" to Ms. Thompson Under the Rehabilitation Act

As NBME explained in its opening brief, it is not clear whether Ms. Thompson is attempting to assert a claim against NBME under the Rehabilitation Act. *See* NBME Br. at 21.

Ms. Thompson does nothing to defend any such claim in her opposition brief. *See* Pl. Br. at 32 ("Thus, given the conspiratorial nature of the decision NBME is liable under the ADA, the Rehabilitation Act, and under principles of third party beneficiary contract."). Therefore, any purported Rehabilitation Act claim against NBME must also be dismissed.

## CONCLUSION

Ms. Thompson's claims against NBME should be dismissed for lack of jurisdiction, or on the merits with prejudice.

Dated:  March 12, 2020

Respectfully submitted,

/s/ Evelyn Y. Pang
Evelyn Y. Pang
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036-2711
Tel. 212.262.6875
Fax 212.977.1641
EPang@perkinscoie.com

Caroline M. Mew (*pro hac vice*)
PERKINS COIE LLP
700 13th St. NW, Suite 600
Washington, D.C. 20005-3960
Tel. 202.654.1767
Fax 202.654.9551
CMew@perkinscoie.com

*Attorneys for Defendant NBME*